JUDGE SULLIVAN

12 CIV 0095

COWAN, LIEBOWITZ & LATMAN, P.C.
1133 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-6799
(212) 790-9200

Attorneys for Plaintiff
CAPITOL RECORDS, LLC

RECEIVED
JAN 06 2012
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

CAPITOL RECORDS, LLC,                                    :          Civil Action No.

                                    Plaintiff,           :

            -against-                                    :          **COMPLAINT**

REDIGI INC.,                                             :

                                    Defendant.           :

------------------------------------------------------------ x

Plaintiff Capitol Records, LLC ("Plaintiff"), by and through its undersigned attorneys, as

and for its Complaint, alleges as follows:

## INTRODUCTION

1.      This action is for copyright infringement, contributory copyright infringement,

vicarious copyright infringement, and inducement of copyright infringement under the United

States Copyright Act, as well as common law copyright infringement under the law of the State

of New York, all arising from Defendant's willful and systematic infringement of Plaintiff's

sound recordings.

2.      Defendant owns and operates the "ReDigi" music service, which holds itself out

as the first online marketplace for "used" or "recycled" digital music files.  With a stated purpose

of helping consumers buy and sell "used" digital music files, ReDigi makes and assists its users

in making systematic, repeated and unauthorized reproductions and distributions of Plaintiff's

copyrighted sound recordings. ReDigi's website states that it uploads copies of those recordings to its service for interested "sellers," and then downloads copies for and to interested buyers. During this process, ReDigi builds a user base and earns profit from its infringing conduct.

3.       ReDigi additionally streams 30 second clips of each recording to interested shoppers and allows them to store those clips on their hard drives, all without Plaintiff's authorization or approval. ReDigi also displays throughout its site unauthorized copies of cover artwork Plaintiff owns and uses in connection with its sound recordings.

4.       While ReDigi touts its service as the equivalent of a used record store, that analogy is inapplicable: used record stores do not make copies to fill their shelves. ReDigi is actually a clearinghouse for copyright infringement and a business model built on widespread, unauthorized copying of sound recordings owned by Plaintiff and others. Plaintiff brings this lawsuit to halt Defendant's ongoing infringement of Plaintiff's copyrighted works and to recover damages for the harm caused by Defendant's activities.

## THE PARTIES

5.       Plaintiff Capitol Records, LLC ("Capitol") is a Delaware limited liability company with its principal place of business at 150 Fifth Avenue, New York, New York 10011.

6.       Upon information and belief, Defendant ReDigi Inc. ("Defendant" or "ReDigi") is a Delaware corporation with its principal place of business at Cambridge Innovation Ctr., 14th Floor, 1 Broadway, Cambridge, MA 02142.

## JURISDICTION AND VENUE

7.       This civil action seeks injunctive relief and damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and for common law copyright infringement under New York law with respect to Plaintiff's sound recordings fixed prior to February 15,

1972.

8.      This Court has subject matter jurisdiction over the federal copyright claims under 28 U.S.C. §§ 1331 and 1338(a), and has supplemental jurisdiction over the related state law cause of action under 28 U.S.C. § 1367(a), inasmuch as that claim is so related to the federal claims as to form part of the same case or controversy.

9.      This Court has personal jurisdiction over ReDigi because, on information and belief, ReDigi transacts business in New York State and has committed tortious acts both within and outside New York causing injury in New York.

10.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 1400(a).

## FACTS

### Plaintiff's Business

11.      Plaintiff is a well known record company engaged in the business of producing, manufacturing, distributing, selling, licensing and facilitating the distribution and sale of sound recordings in the United States.  Plaintiff's reputation as a producer of sound recordings of high artistic and technical quality is known in New York, and throughout both the United States and the world.

12.      Plaintiff is the copyright owner or owner of exclusive rights (by way of agreement) with respect to an extensive and diverse catalog of sound recordings, including those of such famous recording artists as Coldplay, Norah Jones, Katy Perry and Lily Allen, to name just some.  Under the Copyright Act, Plaintiff has the exclusive rights, among other things, to "reproduce the copyrighted work[s]," "distribute copies or phonorecords of the copyrighted work[s] to the public," and "perform the copyrighted work[s] publicly by means of a digital

audio transmission," as well as to authorize or license others to engage in such activities.  17 U.S.C. § 106.

13.    Additionally, Plaintiff has entered into various agreements by which it obtained the common law copyrights in sound recordings embodying certain performances that were initially "fixed" prior to February 15, 1972 (the "Pre-1972 Recordings").  These performances are subject to protection under state law rather than federal copyright law, and the Copyright Act cannot be used to "annul[] or limit[]" those rights "until February 15, 2067."  17 U.S.C. § 301(c). Pursuant to these agreements and New York common law, Plaintiff possesses, among other things, the exclusive and complete rights to manufacture, reproduce, distribute, sell and perform the Pre-1972 Recordings.

14.    In addition to manufacturing, distributing, selling and licensing phonorecords in the form of CDs, cassettes and other tangible media, Plaintiff also distributes and licenses its sound recordings in the form of digital audio files, which are marketed and distributed online, and  delivered to the consumer via the Internet.  Legitimate avenues for the digital distribution of music exist through authorized services, such as Apple's iTunes and Amazon's MP3 Music Service, which provide these sound recordings for consumers pursuant to agreements that the services negotiated with Plaintiff.

15.    Plaintiff has invested and continues to invest significant money, time, effort and creative talent to discover and develop recording artists, and to create, manufacture, advertise, promote, sell and license sound recordings embodying the performances of its exclusive recording artists.  Plaintiff, its recording artists and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of their sound recordings to the public, and from other exploitation of such sound recordings.

16. A non-exhaustive, illustrative list of Plaintiff's federally copyrighted sound recordings and associated artwork that have been illegally reproduced, distributed and/or performed or displayed by or for users of Defendant's ReDigi service is attached hereto as Exhibit A. Plaintiff has received Certificates of Copyright Registration from the Register of Copyrights for these copyrighted sound recordings.

17. A non-exhaustive, illustrative list of Pre-1972 Recordings in which Plaintiff holds exclusive rights under New York and other state laws and which have been illegally reproduced, distributed and/or performed by or for users of Defendant's ReDigi service is attached hereto as Exhibit B.

**Defendant and its Illegal Business**

18. Upon information and belief, Defendant owns and operates the ReDigi website and service located at www.redigi.com. Newly launched and apparently still in a test and "inventory build" phase, ReDigi styles itself as "the world's first and only online marketplace for used digital music" and boasts that its service allows users to "buy used digital music from others at a fraction of the price currently available on iTunes."

19. Although the ReDigi website cryptically claims that its "genius" is "to facilitate the transfer of a digital music file from one user to another without copying or file sharing," the entire service and business model are predicated upon making and assisting users in making multiple, unauthorized copies, distributions, and performances of sound recordings owned by Plaintiff and others.

20. ReDigi's pre-launch press release reveals how selling digital music via its service necessarily entails making multiple copies of sound recordings. According to the press release, after downloading ReDigi's proprietary "Music Manager" software, users designate the songs

they wish to sell from their desktop computers. "Eligible" tracks are then allegedly removed from the user's computer and "synced" devices, "stored in the ReDigi cloud and offered for sale on ReDigi's website."

21.    The track "stored" in and offered to consumers from ReDigi's "cloud" is necessarily a *copy* of the user's original file, which ReDigi purportedly deletes from the user's hard-drive.  No tangible, material object is transferred to the ReDigi "cloud"; rather, the user's original file is duplicated and then stored by the ReDigi service, regardless of whether the user's original file remains on his or her computer or is deleted.

22.    A second copy is then made when a ReDigi transaction is consummated.  As the press release continues, "When the song is purchased, the track and license will be instantly transferred to its new owner."  The so-called sale, in other words, can only be accomplished by the creation and transfer of yet another copy of what was once the original user's digital file.

23.    The tutorial video on ReDigi's website homepage similarly highlights the multiple copies that must be made of any sound recording ReDigi either stores or distributes. The video encourages users first to download the "ReDigi Desktop Client" to open a ReDigi account and begin selling "used" digital files.  After the user then chooses and confirms the tracks he or she wishes to sell using the software, "ReDigi will *upload your songs for sale* and clean all of those unwanted files off your computer."  Uploading, by its very nature, can only be accomplished by making an unauthorized copy of the original user's track.  The user does not "sell" that original track but merely agrees to its deletion after it has been copied.

24.    The video then continues that interested purchasers can designate songs they wish to buy from any computer, after which those songs are "safely stored in the ReDigi Cloud." Users are urged, "you'll be able to buy a song from any computer, and *download* it later to your

computer." Both storage and downloading again presuppose the making of additional copies of the file that resided on the original user's computer.

25.     The video betrays another infringing act as well. In promoting the ease of shopping on ReDigi, the tutorial tells users, "To listen to a 30 second clip of a song, drag it to your playbox or click the song. We'll store it in your memory bank, so you know which songs you listened to." In so doing, ReDigi first makes an unauthorized public performance via digital audio transmission and then, upon information and belief, apparently makes yet another copy to "store" in individual users' "memory banks."

26.     Throughout its website, ReDigi also displays numerous unauthorized copies of the cover artwork Plaintiff owns and uses in connection with its sound recordings. In so doing, ReDigi further violates Plaintiff's rights of reproduction and display.

27.     ReDigi offers its users various incentives to encourage and induce them to participate in the unauthorized reproduction and distribution of Plaintiff's sound recordings. For example, the video tutorial explains that for each song uploaded, a user earns "ReDigi coupons" which can be used to buy additional songs for a "discounted price." Likewise, when those uploaded songs sell, the original user earns ReDigi "credits" that can be applied to the purchase of new songs.

28.     Further encouraging infringement, the ReDigi website homepage offers contests and incentives urging users to avail themselves of the service. The homepage promises, "Store or Sell at Least 10 MP3s on the ReDigi Cloud and be Entered to Win" prizes ranging from a Fiat sports car to headphones. Moreover, by simply storing those 10 songs for purposes of later resale, the user is promised, "Get 5 FREE songs just for storing 10 songs on ReDigi."

29.     Upon information and belief, in making and encouraging these various

unauthorized reproductions, distributions and performances, ReDigi hopes to build a large user-base and corresponding profits.  According to a ReDigi spokeswoman quoted in a November 14, 2011 New York Times article, ReDigi sells tracks for approximately 79 cents, and earns a fee of "5 to 15 percent."

30.     In short, ReDigi's business model is to build a customer base and earn profits by infringing and encouraging its users to infringe copyrighted sound recordings, including those owned by Plaintiff.  Without these infringing acts, ReDigi would have no service to offer.

31.     ReDigi seeks to excuse its activities legally in various public statements, but none justify its infringing conduct.

32.     ReDigi promises, for example, that its "Verification Engine" analyzes each file uploaded for sale to ensure that the track was "legally downloaded" by the user in the first instance and thus "eligible for sale."  Given the widespread piracy of sound recordings on the internet, it is questionable whether ReDigi can effectively determine whether files were lawfully obtained in the first instance.

33.     Regardless, many such files, even if lawfully obtained, are restricted from resale, duplication or redistribution by the original vendor.  For example, Amazon.com – a common source and likely the origin of many ReDigi uploads – expressly prohibits users of its MP3 Music Service from any redistribution, transfer, or sale of recordings downloaded via that service.  Whenever it urges users of this popular vendor to upload their content for resale, ReDigi is encouraging those users to breach their agreements and infringe copyrights.

34.     ReDigi's website also boasts that after a file is "verified" for eligibility, ReDigi ensures that the original user will not "willfully use/possess any copies of the sold item," presumably by deleting the original source file from the user's computer and synchronized

devices.   But even ReDigi's founder has acknowledged publicly that there is no way to ensure absolutely that users are not retaining copies of the files they upload to ReDigi's service, perhaps on other devices or media that ReDigi's software cannot reach.   Regardless, even if the source file is effectively deleted from a user's computer, multiple infringing copies of that file must be uploaded and downloaded – copied – for the ReDigi service to function.

35.     Finally, ReDigi protests on its website that its service is protected by the "First Sale Doctrine" codified at 17 U.S.C. § 109, which permits "owners of a particular copy or phonorecord lawfully made under this title … to sell" that copy or phonorecord.   ReDigi, however, is not an "owner" of any such lawfully made copy, nor is ReDigi disposing of the actual "particular copy" purchased by a user.   Rather, ReDigi and its users are making and distributing unauthorized copies of that original file.

36.     The Copyright Act defines "copy" and "phonorecord" as material objects in which a work or sounds are fixed, respectively.   Neither ReDigi nor its users resell the original material object that resided on the original user's computer.   Rather, in violation of Plaintiff's rights of reproduction, ReDigi and its users duplicate digital files both in uploading and downloading discrete copies distinct from the original file that originally resided on a user's computer.

37.     ReDigi compounds that infringement by also performing the digital file publicly via its sound clip feature, storing that sound clip on users' computers, and making unauthorized copies and displays of artwork Plaintiff owns and uses in connection with its sound recordings.

38.     Beyond its own infringing conduct, ReDigi materially contributes to and induces infringing conduct by its users.   ReDigi knowingly and willfully offers them financial incentives for participating in unauthorized reproductions and distributions of Plaintiff's sound recordings.

It encourages those users to violate the terms of certain of their original vendor agreements, such as those imposed by Amazon.com, and essentially creates a marketplace where users engage in widespread infringement.

39.     ReDigi's aggressive promotion of its service has resulted in many of Plaintiff's best-selling, most valuable sound recordings being infringed via ReDigi.  For instance, many of Billboard's "top 100" songs listed as available from ReDigi are owned by Plaintiff.

40.     More generally, inspection of ReDigi's website reveals that it is currently offering for "sale" countless sound recordings owned or controlled by Plaintiff, as well as reproducing certain of Plaintiff's copyrighted artwork associated with those recordings.  A representative list of some of those federally registered, copyrighted sound recordings and the associated artwork is attached as Exhibit A.  A corresponding list of Pre-1972 sound recordings owned by Plaintiff and infringed on ReDigi is attached as Exhibit B.

41.     The Recording Industry Association of America ("RIAA"), a trade association whose members, including Plaintiff, create, manufacture and distribute sound recordings legitimately sold in the United States, notified ReDigi in November 2011 that its service violated Plaintiff's and other RIAA members' copyrights and demanded that ReDigi cease and desist from any further infringement.

42.     ReDigi has to date refused to halt its infringing conduct.

43.     As a result of ReDigi's unlawful actions, Plaintiff has been damaged and has suffered, and continues to suffer, irreparable injury for which it has no adequate remedy at law.

### COUNT 1
### (Copyright Infringement)

44.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-43 above with the same force and effect as if set forth fully herein.

45.     ReDigi has engaged and continues to engage in the unauthorized reproduction, distribution and public performance of Plaintiff's copyrighted sound recordings and distribution and public display of Plaintiff's associated artwork, including but not limited to those recordings and the associated artwork listed in Exhibit A.  As a result, ReDigi is liable for copyright infringement of Plaintiff's exclusive rights of reproduction, distribution and performance under 17 U.S.C. § 106.

46.     The infringement of Plaintiff's rights in each of its copyrighted sound recordings and the associated artwork constitutes a separate and distinct act of infringement.

47.     ReDigi's acts of infringement are willful, intentional and purposeful, in disregard of Plaintiff's rights.

48.     As a direct and proximate result of ReDigi's infringement of Plaintiff's copyrights, Plaintiff is entitled to its actual damages as well as ReDigi's profits from the infringements, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiff is entitled to maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

49.     Unless and until ReDigi's conduct is enjoined by this Court, it will continue to cause irreparable injury that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of its exclusive rights under copyright.

50.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT II
### (Inducement of Copyright Infringement)

51.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-50 above

with the same force and effect as if set forth fully herein.

52.     ReDigi users have engaged and continue to engage in the unauthorized reproduction and distribution of Plaintiff's copyrighted sound recordings and distribution and public display of Plaintiff's associated artwork, including but not limited to those recordings and the associated artwork listed in Exhibit A.  As a result, such users are liable for direct copyright infringement of Plaintiff's exclusive rights of reproduction and distribution under 17 U.S.C. § 106.

53.     Each one of these users' infringing acts has been encouraged and made possible by ReDigi, whose object is to promote the unlawful reproduction and distribution of Plaintiff's and others' sound recordings.

54.     ReDigi's inducement of copyright infringement is apparent from its active promotion of its ability to assist users in making unauthorized copies and sales of Plaintiff's and others' sound recordings and associated artwork, and ReDigi's adoption of a business model that depends upon a high volume of infringement to create a user base and generate sales commissions.

55.     As a result of the foregoing, ReDigi is liable under the Copyright Act for inducing the infringing acts of its users, in violation of Sections 106 and 501 of the Copyright Act.

56.     The infringement of Plaintiff's rights in each of its copyrighted sound recordings and associated artwork constitutes a separate and distinct act of infringement.

57.     Defendant's acts of infringement are willful, intentional and purposeful, in disregard of Plaintiff's rights.

58.     As a direct and proximate result of ReDigi's infringement of Plaintiff's copyrights, Plaintiff is entitled to actual damages as well as Defendant's profits from the

infringements, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiff

is entitled to maximum statutory damages, in the amount of $150,000 per infringement, pursuant

to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

59.     Unless and until ReDigi's conduct is enjoined by this Court, it will continue to

cause irreparable injury that cannot fully be compensated for or measured in money, and Plaintiff

is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further

infringement of its exclusive rights under copyright.

60.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 17 U.S.C. §

505.

## COUNT III
### (Contributory Copyright Infringement)

61.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-60 above

with the same force and effect as if set forth fully herein.

62.     ReDigi users have and continue to engage in the unauthorized reproduction and

distribution of Plaintiff's copyrighted sound recordings and distribution and public display of

Plaintiff's associated artwork, including but not limited to those recordings and the associated

artwork listed in Exhibit A.  As a result, such users are liable for direct copyright infringement of

Plaintiff's exclusive rights of reproduction and distribution under 17 U.S.C. § 106.

63.     ReDigi has actual and constructive knowledge of its users' infringing activity and

materially contributes to that activity by promoting its ability to help users make and sell

unauthorized copies of sound recordings and artwork, including those owned by Plaintiff.

ReDigi provides its users with software to facilitate unauthorized copying, and awards users

"coupons" or "credits" towards future purchases every time they upload a song for "sale" or

succeed in distributing a track, thus urging and contributing to infringing conduct.

64.     Moreover, ReDigi was notified of such infringing conduct by the RIAA, but refused to take the necessary action to halt that conduct.

65.     As a result of the foregoing, Defendant is liable under the Copyright Act for contributorily infringing Plaintiff's copyrights, in violation of Sections 106 and 501 of the Copyright Act.

66.     The infringement of Plaintiff's rights in each of its copyrighted sound recordings and associated artwork constitutes a separate and distinct act of infringement.

67.     ReDigi's acts of infringement are willful, intentional and purposeful, in disregard of Plaintiff's rights.

68.     As a direct and proximate result of ReDigi's infringement of Plaintiff's copyrights, Plaintiff is entitled to actual damages as well as ReDigi's profits from the infringements, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiff is entitled to maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

69.     Unless and until ReDigi's conduct is enjoined by this Court, it will continue to cause irreparable injury that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of its exclusive rights under copyright.

70.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT IV
### (Vicarious Copyright Infringement)

71.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-70 above with the same force and effect as if set forth fully herein.

72.     ReDigi users have and continue to engage in the unauthorized reproduction and distribution of Plaintiff's copyrighted sound recordings and distribution and public display of Plaintiff's associated artwork, including but not limited to those recordings and the associated artwork listed in Exhibit A.  As a result, such users are liable for direct copyright infringement of Plaintiff's exclusive rights of reproduction and distribution under 17 U.S.C. § 106.

73.     ReDigi has the legal right and actual ability to supervise and control the infringing activities that occur through its site and service.  Its website notes that if users are uncertain about the legal origins of their songs, "… don't sweat it.  If you aren't sure where it [the user's music file] came from, we'll help you figure it out."  ReDigi also insists that it can identify and take action against repeat infringers, and explains that it will terminate the account of those who retain files ReDigi believes it has "cleaned" out of sellers' computers.

74.     ReDigi has nevertheless refused to exercise any control over the illegal reproduction of copyrighted music or associated artwork, and as a direct and proximate result of such failure, ReDigi users have infringed and continue to infringe Plaintiff's copyrighted sound recordings and artwork, including those listed in Exhibit A.

75.     ReDigi has derived direct and substantial financial benefits from the infringements of Plaintiff's copyrighted sound recordings and artwork occurring via its service. In addition to attracting a user base, the ReDigi service charges a percentage sales commission when unauthorized recordings are sold and downloaded via the ReDigi site.

76.     As a result of the foregoing, ReDigi is liable under the Copyright Act for vicariously infringing Plaintiff's copyrights, in violation of Sections 106 and 501 of the Copyright Act.

77.     The infringement of Plaintiff's rights in each of its copyrighted sound recordings

and associated artwork constitutes a separate and distinct act of infringement.

78.     ReDigi's acts of infringement are willful, intentional and purposeful, in disregard of Plaintiff's rights.

79.     As a direct and proximate result of ReDigi's infringement of Plaintiff's copyrights, Plaintiff is entitled to actual damages as well as ReDigi's profits from the infringements, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiff is entitled to maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

80.     Unless and until ReDigi's conduct is enjoined by this Court, it will continue to cause irreparable injury that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of its exclusive rights under copyright.

81.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### COUNT V
### (Common Law Copyright Infringement)

82.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-81 above with the same force and effect as if set forth fully herein.

83.     The Pre-1972 Recordings are subject to common law copyright protection under New York law.  As the owner of valid common law copyrights in the Pre-1972 Recordings, Plaintiff possesses the exclusive rights to sell, copy, distribute and perform these recordings.

84.     Plaintiff has not granted or licensed ReDigi the right to copy, distribute or perform the Pre-1972 Recordings in any manner, including by digital transmission.  ReDigi's conduct as described above constitutes infringement of Plaintiff's common law copyrights in the

Pre-1972 Recordings, including without limitation, those recordings listed in Exhibit B hereto.

85.     The infringement of Plaintiff's rights in each of its Pre-1972 Recordings constitutes a separate and distinct act of infringement.

86.     As a direct and proximate result of ReDigi's violation of Plaintiff's rights in and to the Pre-1972 Recordings, Plaintiff has suffered damages in an amount to be proven at trial. Plaintiff is entitled to recover all proceeds and other compensation received or to be received by ReDigi arising from its infringement of Plaintiff's Pre-1972 Recordings, and is entitled to an accounting to ascertain the amount of such profits and compensation.

87.     ReDigi's acts of infringement are willful, intentional and purposeful, in disregard of Plaintiff's rights, and Plaintiff is entitled to punitive damages in addition to actual damages.

88.     Unless and until ReDigi's conduct is enjoined by this Court, it will continue to cause irreparable injury that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction prohibiting ReDigi from further violating Plaintiff's rights in the Pre-1972 Recordings.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendant as follows:

A.     On all Counts, for such preliminary and permanent injunctive relief as is necessary to prevent or restrain infringement of Plaintiff's copyrights, including a preliminary and permanent injunction requiring that ReDigi and its agents, servants, employees, officers, directors, attorneys, successors, assigns, licensees and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing or materially contributing to or participating in the infringement of any of Plaintiff's copyrights or exclusive rights protected by the Copyright Act or common law

(whether now in existence or hereafter created), including without limitation the recordings and associated artwork listed in Exhibits A and B.

B.      On Counts I-IV, for ReDigi's profits attributable to the infringement of Plaintiff's copyrights, including without limitation the recordings and associated artwork listed in Exhibit A, and for Plaintiff's actual damages sustained by reason of ReDigi's wrongful acts in an amount to be proven at trial, or alternatively, at Plaintiff's election, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

C.      On Count V, for compensatory damages, an accounting for all gains, profits and advantages derived from ReDigi's wrongful acts and punitive damages in amounts to be proven at trial.

D.      For Plaintiff's attorneys' fees, costs and disbursements in this action.

E.      For prejudgment and post-judgment interest.

F.      For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 5, 2012

COWAN, LIEBOWITZ & LATMAN, P.C.

By: _____

Richard S. Mandel
Jonathan Z. King
Robert W. Clarida

1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

Attorneys for Plaintiff
Capitol Records, LLC

# EXHIBIT A

EXHIBIT A

| Title | Artist | Album | SR |
|---|---|---|---|
| ATTACK | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| Was It A Dream? | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| A Beautiful Lie | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| The Kill (Bury Me) | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| The Fantasy | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| Savior | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| From Yesterday | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| R-Evolve | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| The Story | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| A Modern Myth | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| Hunter | 30 Seconds To Mars | A Beautiful Lie | SR 377-457 |
| Dedication | Beastie Boys | Hello Nasty | SR 277-731 |
| Flowin' Prose | Beastie Boys | Hello Nasty | SR 277-731 |
| Unite! | Beastie Boys | Hello Nasty | SR 277-731 |
| Just A Test | Beastie Boys | Hello Nasty | SR 277-731 |
| Body Movin' | Beastie Boys | Hello Nasty | SR 277-731 |
| Song For the Man | Beastie Boys | Hello Nasty | SR 277-731 |
| Song For Junior | Beastie Boys | Hello Nasty | SR 277-731 |
| The Move | Beastie Boys | Hello Nasty | SR 277-731 |
| Sneakin' Out The Hospital | Beastie Boys | Hello Nasty | SR 277-731 |
| Three MC's And One DJ | Beastie Boys | Hello Nasty | SR 277-731 |
| The Grasshopper Unit (Keep Movin') | Beastie Boys | Hello Nasty | SR 277-731 |
| Electrify | Beastie Boys | Hello Nasty | SR 277-731 |
| Putting Shame In Your Game | Beastie Boys | Hello Nasty | SR 277-731 |
| Picture This | Beastie Boys | Hello Nasty | SR 277-731 |
| Dr. Lee, PhD | Beastie Boys | Hello Nasty | SR 277-731 |
| Instant Death | Beastie Boys | Hello Nasty | SR 277-731 |
| Shazam | Beastie Boys | To The 5 Boroughs | SR 360-352 |
| Ch-Check It Out | Beastie Boys | To The 5 Boroughs | SR 360-352 |
| 3 The Hard Way | Beastie Boys | To The 5 Boroughs | SR 360-352 |
| Oh, Word? | Beastie Boys | To The 5 Boroughs | SR 360-352 |
| The Brouhaha | Beastie Boys | To The 5 Boroughs | SR 360-352 |
| Against The Wind | Bob Seger & The Silver Bullet Band | Harley-Davidson Cycles (Road Songs) | SR 17-910 |

EXHIBIT A

| | | |
|---|---|---|
| God Put A Smile Upon Your Face | Coldplay | SR 322-958 |
| Clocks | Coldplay | SR 322-958 |
| The Scientist | Coldplay | SR 322-958 |
| Don't Panic | Coldplay | SR 328-762 |
| Yellow | Coldplay | SR 328-762 |
| Trouble | Coldplay | SR 328-762 |
| Shiver | Coldplay | SR 328-762 |
| Spies | Coldplay | SR 328-762 |
| Parachutes | Coldplay | SR 328-762 |
| High Speed | Coldplay | SR 328-762 |
| We Never Change | Coldplay | SR 328-762 |
| Sparks | Coldplay | SR 328-762 |
| Everything's Not Lost | Coldplay | SR 328-762 |
| Viva La Vida | Coldplay | SR 652-909 |
| Speed Of Sound | Coldplay | SR 376-828 |
| Fix You | Coldplay | SR 376-828 |
| Drink In My Hand | Eric Church | SR 681-019 |
| Waking Up In Vegas | Katy Perry | SR 638-214 |
| Thinking Of You | Katy Perry | SR 638-214 |
| Mannequin | Katy Perry | SR 638-214 |
| Ur So Gay | Katy Perry | SR 638-214 |
| Self Inflicted | Katy Perry | SR 638-214 |
| I'm Still Breathing | Katy Perry | SR 638-214 |
| One Of The Boys | Katy Perry | SR 638-214 |
| I Kissed A Girl | Katy Perry | SR 638-214 |
| Hot 'N Cold | Katy Perry | SR 638-214 |
| If You Can Afford Me | Katy Perry | SR 638-214 |
| Teenage Dream | Katy Perry | SR 662-268 |
| Last Friday Night (T.G.I.F.) | Katy Perry | SR 662-268 |
| California Gurls ft. Snoop Dogg | Katy Perry | SR 662-264 |
| Peacock | Katy Perry | SR 662-268 |
| Circle The Drain | Katy Perry | SR 662-268 |
| The One That Got Away | Katy Perry | SR 662-268 |
| Who Am I Living For? | Katy Perry | SR 662-268 |

Katy Perry entries reference album titles "One Of The Boys" and "Teenage Dream" and Coldplay entries reference "A Rush Of Blood To The Head", "Parachutes", "Viva La Vida Or Death And All His Friends", "X&Y", and Eric Church references "Chief".

EXHIBIT A

| | | | |
|---|---|---|---|
| Hummingbird Heartbeat | Katy Perry | Teenage Dream | SR 662-268 |
| Firework | Katy Perry | Teenage Dream | SR 662-268 |
| Not Like The Movies | Katy Perry | Teenage Dream | SR 662-268 |
| I Told You So | Keith Urban | Love, Pain & the whole crazy thing | SR 398-619 |
| Just A Kiss | Lady Antebellum | Just A Kiss | SR 679-267 |
| Long Gone | Lady Antebellum | Lady Antebellum | SR 656-386 |
| Love Don't Live Here | Lady Antebellum | Lady Antebellum | SR 656-388 |
| Lookin' For A Good Time | Lady Antebellum | Lady Antebellum | SR 656-386 |
| All We'd Ever Need | Lady Antebellum | Lady Antebellum | SR 656-386 |
| Love's Lookin' Good On You | Lady Antebellum | Lady Antebellum | SR 656-386 |
| Home Is Where The Heart Is | Lady Antebellum | Lady Antebellum | SR 656-386 |
| Things People Say | Lady Antebellum | Lady Antebellum | SR 656-386 |
| Slow Down Sister | Lady Antebellum | Lady Antebellum | SR 656-386 |
| One Day You Will | Lady Antebellum | Lady Antebellum | SR 656-386 |
| Need You Now | Lady Antebellum | Need You Now | SR 644-543 |
| When You Got A Good Thing | Lady Antebellum | Need You Now | SR 644-543 |
| Stars Tonight | Lady Antebellum | Need You Now | SR 644-546 |
| Our Kind Of Love | Lady Antebellum | Need You Now | SR 644-546 |
| American Honey | Lady Antebellum | Need You Now | SR 644-544 |
| Perfect Day | Lady Antebellum | Need You Now | SR 644-543 |
| Love This Pain | Lady Antebellum | Need You Now | SR 644-542 |
| If I Knew Then | Lady Antebellum | Need You Now | SR 644-543 |
| Something 'Bout A Woman | Lady Antebellum | Need You Now | SR 644-543 |
| Ready To Love Again | Lady Antebellum | Need You Now | SR 644-543 |
| LDN | Lily Allen | Alright, Still | SR 392-060 |
| Smile | Lily Allen | Alright, Still | SR 392-059 |
| Knock 'Em Out | Lily Allen | Alright, Still | SR 392-060 |
| Everything's Just Wonderful | Lily Allen | Alright, Still | SR 392-058 |
| Friday Night | Lily Allen | Alright, Still | SR 392-058 |
| Alfie | Lily Allen | Alright, Still | SR 392-058 |
| Take What You Take | Lily Allen | Alright, Still | SR 392-058 |
| Turn Me On | Norah Jones | Come Away With Me | SR 320-120 |
| Windows Are Rolled Down | Amos Lee | Windows Are Rolled Down | SR 671-434 |
| Draw Me A Map | Dierks Bentley | Up On The Ridge | SR 663-139 |

EXHIBIT A

| | | | |
|---|---|---|---|
| Suddenly I See | KT Tunstall | Eye To The Telescope | SR 388-462 |
| Black Horse And A Cherry Tree | KT Tunstall | Eye To The Telescope | SR 388-462 |
| Under The Weather | KT Tunstall | Eye To The Telescope | SR 388-462 |
| Super Duper Love | Joss Stone | The Soul Sessions | SR 343-788 |
| Fell In Love With A Boy | Joss Stone | The Soul Sessions | SR 343-788 |
| Baby Baby Baby | Joss Stone | Introducing J | SR 642-089 |
| More (2004 Digital Remaster) | Bobby Darin | The Legendary Bobby Darin | SR 367-404 |

# EXHIBIT B

EXHIBIT B

| Title | Artist | Album |
|---|---|---|
| What A Little Moonlight Can Do | Peggy Lee | |
| The Christmas Song (Merry Christmas To You) | Nat King Cole | Ridin' High: The Complete Record Releases 1957-1959 |