UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CAPITOL RECORDS, LLC,

                              Plaintiff,

                - against -

REDIGI INC.,

                              Defendants.
------------------------------------------------------------X

Index No.: 12CV0095 (RJS)

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION AND REARGUMENT

**MEISTER SEELIG & FEIN**
*Attorneys for ReDigi Inc.*
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3580

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD ............................................................................................................ 1

ARGUMENT .......................................................................................................................... 3

   POINT I  REDIGI SHOULD BE PROTECTED FROM DISCLOSURE OF THE
   REQUESTED INFORMATION ...................................................................................... 3

   POINT II  THERE IS NO BENEFIT TO THIS CASE FROM DISCLOSURE OF THE
   REQUESTED INFORMATION ...................................................................................... 7

   POINT III  THE BALANCE OF THESE FACTORS TIPS IN REDIGI'S FAVOR ........ 8

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Ackoff-Ortega v. Windswept Pac. Entm't Co. (Inc.)*,
  130 F. Supp. 2d 440(S.D.N.Y. 2000) *aff'd sub nom. Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 46 F. App'x 663 (2d Cir. 2002) .................................................................................... 2

*Apex Oil Co. v. DiMauro*,
  110 F.R.D. 490 (S.D.N.Y. 1985) ................................................................................................ 3

*Digital Sin, Inc. v. Does 1-176*,
  279 F.R.D. 239 (S.D.N.Y. 2012) ........................................................................................... 4, 5

*Galella v. Onassis*,
  487 F.2d 986 (2d Cir. 1973) ...................................................................................................... 3

*In re Parmalat Sec. Litig.*,
  258 F.R.D. 236 (S.D.N.Y. 2009) ............................................................................................... 2

*In re Terrorist Attacks on September 11, 2001*,
  454 F. Supp. 2d 220 (S.D.N.Y. 2006) ....................................................................................... 2

*Malik v. McGinnis*,
  06 CIV. 3361 (RJS), 2009 WL 1506726 (S.D.N.Y. May 26, 2009) ......................................... 1

*Mitchell v. Fishbein*,
  227 F.R.D. 239 (S.D.N.Y. 2005) ........................................................................................... 3, 8

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ........................................................................................................ 2

**Statutes**

17 U.S.C. §107(1) ........................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................................. 2

Fed. R. Civ. P. 26(c) ....................................................................................................................... 1

## PRELIMINARY STATEMENT

Defendant ReDigi Inc., ("Defendant" or "ReDigi") respectfully submits this memorandum of law in support of its motion for reconsideration and reargument of the June 13, 2012 Order, entered on June 14, 2012 (Docket No. 40) (the "Order"), which decided certain discovery disputes between ReDigi and Plaintiff Capitol Records, LLC ("Plaintiff" or "Capitol"). Specifically ReDigi seeks reconsideration and reargument of the part of the Order compelling ReDigi to comply with Capitol's Request No. 13 (the "Request").[1]

As set forth below the parties were not given an opportunity to fully brief the issues in connection with ReDigi's request for a protective order pursuant to Fed. R. Civ. P. 26(c) forbidding disclosure of documents responsive to Capitol's Request. As such ReDigi respectfully submits that there is new evidence, unavailable at the time the parties jointly presented their disputes to the Court, that is demonstrative of Capitol's improper purpose in requesting the disclosure, which in combination with the facts and data previously presented would reasonably be expected to change the conclusion reached by the Court. For the reasons set forth below, ReDigi respectfully requests that this Court reconsider its Order and forbid disclosure responsive to Capitol's Request.

## LEGAL STANDARD

The standard on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Malik v. McGinnis*, 06 CIV. 3361 (RJS), 2009 WL 1506726 (S.D.N.Y.

---

[1] In accordance with Local Civil Rule 6.3, no affidavits with accompanying exhibits have been submitted herewith. The parties were never given the opportunity to fully brief these issues, thus the underlying record consists solely of the parties joint letter dated June 1, 2012, and the discovery requests annexed thereto which, ReDigi respectfully directs the Court to for reference.

1

May 26, 2009) *citing Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (The moving party must establish: (1) that the court overlooked controlling decisions or data; (2) that there has been a change in controlling law; (3) that new evidence has become available; or (4) that reconsideration is necessary to correct a clear error or prevent manifest injustice).

The standard here is meant to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court,' 'to ensure finality,' and 'to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.' " *Ackoff-Ortega v. Windswept Pac. Entm't Co. (Inc.)*, 130 F. Supp. 2d 440, 443 (S.D.N.Y. 2000) *aff'd sub nom. Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 46 F. App'x 663 (2d Cir. 2002).

Pursuant to Fed. R. Civ. P. 26(b)(2)(C) "[o]n motion . . . the court must limit the frequency of discovery otherwise allowed by these rules . . . if it determines that . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Additionally in accordance with Fed. R. Civ. P.(c)(1)(A) the court may issue an order forbidding disclosure or discovery, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

For purposes of a protective order, "good cause" is established when a party is able to show that a "clearly defined, specific and serious injury" will occur in the absence of such an order. *See In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006); *see also In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). While the burden to show good cause remains on the moving party, the Court must balance the interests of

2

all parties in coming to its decision. *See Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005)("the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectable interests of the party from whom discovery is sought.") (*quoting Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985)). Ultimately, the decision to grant or deny a protective order lies within the sole discretion of the Court. *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973).

## ARGUMENT

Discovery of information responsive to Capitol's Request should be forbidden as the burden of the proposed discovery and the likelihood of embarrassment and misuse of the information requested far outweighs the benefit, if any, it would provide when considering the needs of the instant case and the importance, or in this instance lack thereof, of the issue at stake in the action. The Request seeks, "Documents sufficient to identify each user of the ReDigi Website who has uploaded, offered to sell, purchased, placed an offer to purchase or downloaded any Capitol Recordings." When considered in totality, the balance between Capitol's need for this discovery and the imminent harm that ReDigi will suffer as a result of disclosure, decidedly tips in ReDigi's favor and in favor of forbidding Capitol from disclosure responsive to the Request.

## POINT I

### REDIGI SHOULD BE PROTECTED FROM DISCLOSURE OF THE REQUESTED INFORMATION

ReDigi should be protected from having to disclose responsive information to the Request as it would be embarrassing, oppressive and will damage ReDigi's business. New evidence has become available that is demonstrative of Capitol's true purpose in requesting disclosure of the information outlined in the Request. At the deposition of Alasdair McMullan,

3

on June 20, 2012, it became abundantly clear that Capitol's purpose in making the Request is to use the disclosure to allow Capitol to harass ReDigi's customers, accuse them of being infringers, and potentially threaten them with lawsuits.

To this end at his deposition Mr. McMullan squarely levied the charge that it was Capitol's position that ReDigi's customers were "infringers." Capitol's modus operandi is to boast about its multi-million dollar judgments against file sharing services. Mr. Piibe, Capitols second 30(b)(6) designee, deposed on June 14, 2012, also made a point of mentioning Capitol's successful actions where defendants have been found liable of massive copyright infringement during his deposition in this case. Given the considerable effect that the implied threat of a potential multimillion dollar judgment would have on the average person, and the multitude of Doe suits that are commenced all around the country for the purpose of forced settlements, the embarrassment and fear that would result from public exposure of ReDigi's users is too great. This is especially concerning here, where Capitol would be accusing ReDigi's users of wrongdoing when the threshold issue of the legality of ReDigi's service has yet to be determined by this Court.

The potential harm here is analogous to the risk of potential for coercing unjust settlements from innocent defendants that Courts have recognized and tried to protect against. In a recent decision in *Digital Sin, Inc. v. John Does 1-176*, the Court noted that the "risk of false positives gives rise to 'the potential for coercing unjust settlements from innocent defendants' such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading" films. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012). Courts around the country have recognized that there is cause for concern in connection with how personal information is used by content owners. As noted

by the Court in *Digital Sin,* a court in Virginia recently described the dynamics of these situations as follows:

> According to some of the defendants, [following the Court's grant of expedited discovery compelling the ISPs to turn over the names associated with 85 IP addresses,] the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation . . . This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. *Digital Sin, Inc.*, 279 F.R.D. 239 *citing K–Beech, Inc. v. Does 1–85,* 11–CV–00469 at 4 (E.D.Va. Oct. 5, 2011).

The potential for similar misuse of the information sought by the Request is present here as well.[2] Capitol has clearly stated its position that ReDigi's customers are "infringers." From its inception, ReDigi's entire purpose was to provide a legal service for its users to store and sell their digital property and build a system that operated within the confines of copyright law. ReDigi has marketed its services as such for the express purpose of allowing consumers who have legally purchased digital property to utilize it in a manner so that their digital property has value, so that people will be less inclined to resort to piracy. If Capitol is allowed to embarrass ReDigi customers by accusing them of infringement before its challenge to the ReDigi service is decided, it will inevitably cause embarrassment to users of the ReDigi service who believe, and rightly so, that their actions are legal. This is especially true for individuals who have merely used ReDigi for cloud storage purposes, which there is no dispute is legal.

---

[2] There is some risk of falsely positive identifying information as well. By way of example Coleen Hall, Capitol's own paralegal, testified at her June 15, 2012 deposition, that the information she provided to ReDigi was not hers nor was it used by only one person, instead the email address associated with her account at ReDigi is used by all of the interns at Capitol.

5

Moreover, the potential risk of harm is compounded by the irreparable harm that will be caused to ReDigi's business, if Capitol starts harassing ReDigi users and accusing them of copyright infringement, it would immediately cause all consumers to lose the goodwill that is associated with ReDigi, the effect of which would be catastrophic to a growing business. To this end routinely ordering disclosure of this type of information and giving Capitol unfettered access to ReDigi's customers will also be detrimental to all technological development companies, who seek to create and provide legal services in new areas of technology. If consumers and startup companies, who have made every effort to provide legal services, have fear that their consumers will be subject to harassment and unfounded accusations of infringement, it will inevitably have a chilling effect on innovation of new technologies. This fear will discourage consumers from signing up for new services, and consequentially will ensure that developers will be unable to launch new technologies as a viable business unless they first brought and prevailed in a declaratory judgment action proclaiming their service to be legal. This, of course, is an impossible task given the financial limitations of start-ups and would have its own procedural downfalls, including but not limited to the possibility that developers would have no redress as a result of justiciability requirements.

The likelihood that the above harms will occur if ReDigi is compelled to turn over information responsive to the Request is too great. For this reason alone, the Court should forbid the discovery sought by the Request. As set forth more fully below, in balancing the interests between the parties here and the import of the discovery sought to the issues in dispute in *this litigation*, there is no benefit that would outweigh the harm.

## POINT II

### THERE IS NO BENEFIT TO THIS CASE FROM DISCLOSURE OF THE REQUESTED INFORMATION

Even in the best-case scenario, there is nothing that Capitol could garner from a deposition of any of ReDigi's users that would even come close to outweighing the above described harm that this disclosure will cause. In fact, Capitol could not possibly obtain any information that is relevant to the legal issues of import in this case that is not already available to them through the materials ReDigi has provided and Capitol's own users.

In the joint letter to the Court Capitol stated that its intent was to assess ReDigi's fair use defense pursuant to 17 U.S.C. §107(1), specifically the "purpose and character of use, including whether the use is of a commercial nature." To the extent that ReDigi is used for cloud storage only Capitol does not challenge that use. *See* 2/6/12 Transcript of Oral Argument at 21. Thus, the only inquiry that could be relevant to Capitol's purposes is to see the overall use of the ReDigi system and how many users are storing tracks, which is legal, versus how many users are selling their tracks, which is the use Capitol has challenged in the instant lawsuit.

Even if this is part of Capitol's purpose in making the Request, ReDigi has already produced aggregate data to Capitol showing the number of tracks stored in the cloud, offered for sale and sold on the ReDigi system. ReDigi has similarly provided this information for tracks alleged to be owned by Capitol. To the extent Capitol seeks to ask users what they did with their digital property, this information has been provided to Capitol within the data for all tracks and Capitol tracks. In fact the aggregate data, which was not even requested originally by Capitol, was provided for the express purpose of giving Capitol information to demonstrate how users use the ReDigi system, which as stated above can be the only legitimate inquiry relevant to Capitol's claims here. ReDigi maintains that this data is far more relevant to Capitol's purported purpose

7

of gathering information concerning the intent of individuals who have utilized ReDigi only to store or sell Capitol's tracks and is far more demonstrative of the usage system as a whole than any questions they could ask of a handful people. The potential uses of ReDigi are inherently limited by its design and functionality. Thus the purpose and character of use, is by definition what users have actually done with their tracks on the ReDigi system, all of which has been disclosed to Capitol.

ReDigi has also produced form emails demonstrating the types of communications that the system could generate and send to users. ReDigi has provided all of the information that users could potentially provide.

As a result of the foregoing, the Request is essentially moot, as Capitol has already been provided with discovery that is relevant in proving their intended purpose. There is nothing else Capitol can discovery that will not be duplicative and cumulative of what has already been provided.

## POINT III

### THE BALANCE OF THESE FACTORS TIPS IN REDIGI'S FAVOR

As noted above although the party seeking a protective order has the burden of showing good cause as to why the requested disclosure should be forbidden, which ReDigi has here, the Court must balance the interests of all parties in coming to its decision. *Mitchell*, 227 F.R.D. at 245. Here, the balance of the interests tips decidedly in favor of forbidding disclosure in response to the Request. It is clear based upon the new information that was revealed during the depositions of Capitol's witnesses that Capitol may use this information to implicitly threaten ReDigi's users, which in and of itself will cause embarrassment to those users, harm to ReDigi's

8

business and have a chilling effect on the development of new technologies that strive to operate within the confines of the law that is constantly being re-interpreted in light of new technologies.

The discovery Capitol seeks is duplicative and cumulative of the information ReDigi has already provided. There is no additional evidence that Capitol's Request can lead to that is relevant to the "purpose and character of use."

As such, a protective order should be issued here forbidding this disclosure to prevent the embarrassment to consumers, to protect the goodwill of ReDigi's business, to prevent the oppression of innovation and technology, and to prevent wasting resources by allowing Capitol to pursue cumulative duplicative discovery materials. Attempts to use discovery as a way to make implicit threats of further litigation in an effort to chill a business who strives to operate within the confines of the law cannot be countenanced by this Court.

ReDigi respectfully submits that had all of the above information been available at the time the parties submitted the June 1, 2012 letter to the Court and had ReDigi been able to fully brief the afore described issues, these facts and concerns would reasonably have influenced this Court's Order.

## **CONCLUSION**

For all of the foregoing reasons, and to prevent this litigation from casting any more of a cloud over ReDigi's business than is necessary, ReDigi respectfully requests that this Court reconsider its Order with respect to the Request and grant ReDigi's application for a protective order forbidding the requested information.

Dated: New York, New York
       June 27, 2012

                              Respectfully submitted,

                              MEISTER SEELIG & FEIN LLP

                              _____
                              Gary Adelman, Esq.
                              *Attorneys for ReDigi Inc.*
                              Two Grand Central Tower
                              140 East 45th Street, 19th Floor
                              New York, New York 10017
                              Phone: (212) 655-3580
                              Email: gpa@msf-law.com