UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CAPITOL RECORDS, LLC,

                    Plaintiff,

              - against -

REDIGI INC.,

                    Defendants.
------------------------------------------------------------X

Index No.: 12CV0095 (RJS)

## DEFENDANT'S REPLYMEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION AND REARGUMENT

**MEISTER SEELIG & FEIN**
*Attorneys for ReDigi Inc.*
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3580

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

REDIGI'S MOTION SHOULD BE GRANTED ..................................................................... 1

    POINT I  REDIGI HAD NO OPPORTUNITY TO FULLY BRIEF THE ISSUES CONCERNING THE REDIGI USERS DISCLOSURE AND THUS RECONSIDERATION IS NOT BEING USED TO ADVANCE NEW ISSUES OR ARGUMENTS ........................... 2

    POINT II  CAPITOL'S ARGUMENTS ARE NOT PURSUASIVE ....................................... 3

    POINT III  THE INFORMATION THAT CAPITOL IS SEEKING IS NEITHER RELEVANT NOR DISCOVERABLE BECAUSE THAT INFORMATION IS ALREADY AVAILABLE TO CAPITOL AND THE HARM OUTWEIGHS THE BENEFIT. ................... 6

CONCLUSION ........................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*Ackoff-Ortega v. Windswept Pac. Entm't Co. (Inc.)*,
   130 F. Supp. 2d 440(S.D.N.Y. 2000) *aff'd sub nom. Ackoff-Ortega v. Windswept Pac.
   Entm't Co.*, 46 F. App'x 663 (2d Cir. 2002) ...................................................................... 2

*Digital Sin, Inc. v. Does 1-176*,
   279 F.R.D. 239 (S.D.N.Y. 2012) ........................................................................................ 5

**Rules**

Fed. R. Civ. P. 26(c) ................................................................................................................... 1

## PRELIMINARY STATEMENT

Defendant ReDigi Inc., ("Defendant" or "ReDigi") respectfully submits this reply memorandum of law in further support of its motion for reconsideration and reargument of the June 13, 2012 Order, entered on June 14, 2012 (Docket No. 40) (the "Order"), which decided certain discovery disputes between ReDigi and Plaintiff Capitol Records, LLC ("Plaintiff" or "Capitol"). Specifically ReDigi seeks reconsideration and reargument of the part of the Order compelling ReDigi to comply with Capitol's Request No. 13 (the "Request")

Contrary to Capitol's assertions, ReDigi has demonstrated proper grounds for reconsideration as the parties were not given an opportunity to fully brief the issues in connection with ReDigi's request for a protective order pursuant to Fed. R. Civ. P. 26(c) forbidding disclosure of documents responsive to Capitol's Request and ReDigi respectfully submits that there is new evidence, unavailable at the time the parties jointly presented their disputes to the Court, that is demonstrative of Capitol's improper purpose in requesting the disclosure, which in combination with the facts and data previously presented would reasonably be expected to change the conclusion reached by the Court. For the reasons set forth below, ReDigi respectfully requests that this Court reconsider its Order and forbid disclosure responsive to Capitol's Request.

## REDIGI'S MOTION SHOULD BE GRANTED

There is no dispute between the parties that the legal standard for reconsideration is that reconsideration should only be employed under certain circumstances. Excepting a change of controlling law, all circumstances required to grant ReDigi's motion are present here -- there is newly available evidence and ReDigi was unable to fully present the factual information and

1

legal issues to the Court in the June 1, 2012 joint letter (the "Discovery Letter") due to the limitations of Rule 2.G of Your Honor's Individual Practices.

## POINT I

### REDIGI HAD NO OPPORTUNITY TO FULLY BRIEF THE ISSUES CONCERNING THE REDIGI USERS DISCLOSURE AND THUS RECONSIDERATION IS NOT BEING USED TO ADVANCE NEW ISSUES OR ARGUMENTS

As the Court is aware, Rule 2.G of Your Honor's individual Practices states, in part, "Unless otherwise direct, counsel should describe their discovery disputes in a <u>single letter, jointly composed, not to exceed five pages.</u>" [1]

As there were four (4) discovery disputes that the parties could not come to an agreement on, and taking into account the information required to demonstrate the parties' efforts to resolve their disputes, each side had approximately one-half (1/2) of a page to "describe" each dispute. ReDigi did, in fact, describe its position as to the Request in approximately one-half (1/2) of a page on page three of the Discovery Letter. ReDigi was only able to make limited arguments within that one-half (1/2) page.

As noted in Plaintiff's moving papers, the stringent legal standard for a motion for reconsideration, is meant to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court,' 'to ensure finality,' and 'to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.' " *Ackoff-Ortega v. Windswept Pac. Entm't Co. (Inc.)*, 130 F. Supp. 2d 440, 443 (S.D.N.Y. 2000) *aff'd sub nom. Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 46 F. App'x 663 (2d Cir. 2002).

---

[1] ReDigi is in no way trying to imply that Your Honor's Individual Practices, are problematic as ReDigi believes joint letters are an efficient method of presenting certain disputes to the Court, however in some circumstances, as this circumstance, the letter did not allow ReDigi to fully present its arguments prior to a decision being made by the Court.

2

The half-page submission in the Discovery Letter, could in no way be considered "an identical factual or legal record" to the facts and legal arguments presented in ReDigi's instant motion because here was no previous opportunity for ReDigi to present its full arguments to the Court so that the Court could thoroughly consider them. Essentially here there was not a complete record, because the ReDigi, was unable to present its legal arguments in the half a page allotted to us in the Discovery Letter.

Defendant is not "plugging the gaps of [a] lost motion with additional matters." *Id.* Here ReDigi's first opportunity to present its position to the Court in its factual and legal entirety.

In this unique circumstance where ReDigi was not given a previous opportunity to fully brief its argument for thorough consideration by the Court, it is not now making repetitive arguments that were thoroughly considered by the Court.

## POINT II

### CAPITOL'S ARGUMENTS ARE NOT PURSUASIVE

Capitol's argument that ReDigi is "inventing 'new evidence'" is similarly without merit. While ReDigi previously suspected that Capitol's purpose for wanting the ReDigi User information was improper, it was not confirmed until Mr. McMullan's statements made during his deposition, which took place on June 20, 2012, after the Discovery Letter was submitted to the Court.

Capitol has argued ReDigi knew its purpose because a predicate act infringement by ReDigi users was and remains a necessary element to its claims. ReDigi does not dispute that an act of infringement is a prerequisite to all of Capitol's claims, however the purpose of this lawsuit is to decide whether use of the ReDigi system causes infringement. Now it has become

clear that Capitol seeks information about use wholly outside the ReDigi system that is irrelevant to these claims.

In the Discovery Letter, Capitol stated that they sought the ReDigi user identifying information in response to ReDigi's argument "that it's User's are engaging in fair use of their song files." Further Capitol espoused the view that "[w]here ReDigi purports to assert the alleged fair use rights of it users, Capitol is entitled to question those users on the 'purpose and character' of their use of ReDigi to sell Capitol Recordings for personal gain and their practices in retaining such infringing copies." *See* Discovery Letter p. 3.

Capitol's request as to what users do wholly outside of the ReDigi system and in violation of ReDigi's Terms of Service, which require users to agree not to retain additional copies offered for sale, is tantamount to a fishing expedition to find potential copyright 'infringers.' As Capitol made clear in its opposition, "it would be premature for Capitol to make any such determination about naming individual users as defendants at this stage, where Capitol has no information regarding …the extent to which users may have abused the ReDigi system by retaining copies…. It is precisely ReDigi's refusal… that has kept Capitol in the dark about how individuals are using the ReDigi system to infringe Capitol's copyrights."

Capitol's purpose obviously is not to discover relevant information about the character and purpose of use of the ReDigi system that would be helpful in the instant matter. In fact their entire opposition is very telling as to Capitol's planned use of the ReDigi user information. *First*, as Capitol admits the information it seeks is in connection as to user "abuse of the ReDigi system by retaining copies." Just because someone may use a product to infringe, does not mean the product is infringing. The fact that a user may have burned a copy of a file to a CD prior to selling that file and keeps that burned copy unlawfully, has nothing to do with use of the ReDigi

4

system. To this end, users who wish to commit infringement of that type can already do so prior to re-selling physical goods i.e. any individual *could*, albeit perhaps not lawfully, burn a copy of a CD they bought and then re-sell the original CD the user purchased. Re-selling the original CD would not make the used CD store liable, under any theory of copyright infringement.

To this end, ReDigi's Terms of Service, require ReDigi users to agree not to keep any copies and the ReDigi software takes affirmative steps to prevent such misuse. However, Capitol's argument seems to be that an individual illegal act, by a rogue seller who purposely decides to break the law, outside of the ReDigi system, is the person Capitol seeks to identify as a potential infringer. However this lawsuit, should not be used as a vehicle to conduct that fishing expedition, where ReDigi's system provides a service to allow people to legally re-sell legally purchased music and has taken steps to prevent misuse.

Not only is identification of users for this purpose irrelevant to the claims here, allowing this discovery is abusive to ReDigi's users who have chosen to sell their legally purchased downloaded files and have not abused the system, because they will be subject to the scrutiny of Capitol because Capitol thinks some of them *may* have, though not likely, kept a copy on the side.

Use of discovery to accuse innocent persons of infringement is the exact type of abuse that Judge Nathan was concerned about in the Digital Sin decision. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012). Capitol has tried to argue that ReDigi's reliance on this case was misplaced, but ReDigi has never taken the position that the *Digital Sin* decision wholly prevented disclosure. The importance of the decision and others like it, is that it is demonstrative of the point that the Court must consider the possibility of misuse as a factor, in making decisions concerning the disclosure of user information, as Capitol is requesting here. In fact the

5

importance of this factor is arguable more so here than in Digital Sin, because at least in Digital Sin the disclosure had the possibility of leading to the identification of named doe defendants. *Id.* Here the ReDigi users are non-parties and any claim for infringement by virtue of their alleged possible abuse outside of the ReDigi system is largely irrelevant to the claims Capitol has made here.

Plaintiff has in essence confirmed that their purpose is not what was originally stated and exposed that it is their true intention to go on a fishing expedition for copyright 'infringers,' rather than utilize resources to discover relevant information relating to this case.

## POINT III

### THE INFORMATION THAT CAPITOL IS SEEKING IS NEITHER RELEVANT NOR DISCOVERABLE BECAUSE THAT INFORMATION IS ALREADY AVAILABLE TO CAPITOL AND THE HARM OUTWEIGHS THE BENEFIT.

As described above, and in the motion papers, ReDigi users only have two (2) options in using the ReDigi Service. Capitol has not challenged the use of cloud service for storage. Capitol has failed to explain how ReDigi Users will provide relevant information as to the fair use and essential step defenses other than to restate the law.

Further, there is no explanation as to how ReDigi user information would be helpful as to the alleged "host of other key issues." Capitol has failed to explain how the information it could potentially garner from users would have any impact on fair use or essential step outside of the information ReDigi has provided. Capitol has further failed to explain how knowing whether one user or one hundred users are offering their recordings for sale will be relevant to this lawsuit.

Capitol touts that it is entitled to discovery so the Court can look at the system in its entirety. Capitol has the aggregate data for use of its tracks and the system as a whole. None of

6

the information Capitol has suggested it could illicit has any impact on the questions of the fair use or essential step defenses, beyond the information that has been provided. Capitol never explains how the real word facts it seeks impact its case.

Even if a ReDigi User did, in fact, burn a copy of a track and then placed that copy in a locked drawer and then sold the original on the ReDigi, this would not be information that has any relevance or bearing on ReDigi's fair use or essential step defense, because the issue here is whether the ReDigi system enables copyright infringement, not whether users *could use it* to infringe Capitol's copyrights outside of the ReDigi system. This is a clear example of the overreaching of Capitol. To this end, Capitol has failed to explain how any information gained from a ReDigi user could have any more relevant information beyond what Capitol's own user paralegal Ms. Hall, has already has gathered, as it relates to any of ReDigi's defenses.

Capitol's statement that the aggregate data also provides no insight into how or whether users are ordering Capitol recordings not currently available as "used tracks"' is correct. However, to see how a user could order a Capitol recording that is not available, Capitol can go up on the ReDigi website and order a track not available. More importantly it is difficult to fathom how a Capitol track not being available on ReDigi could have any relevance to this case.

Capitol's statement that the "aggregate data" does not sufficiently provide them with the information that they need is disingenuous, as it demonstrates what the ReDigi users are actually doing with the ReDigi system.

The discovery Capitol seeks is duplicative and cumulative of the information ReDigi has already provided. There is no additional evidence that Capitol's Request can lead to that is relevant to the "purpose and character of use."[2]

## CONCLUSION

For all of the foregoing reasons, and those set forth in ReDigi's motion, ReDigi respectfully requests that this Court reconsider its Order with respect to the Request and grant ReDigi's application for a protective order forbidding the requested information.

Dated: New York, New York
       July 11, 2012

                                  Respectfully submitted,

                                  MEISTER SEELIG & FEIN LLP

                                  */s/ Gary Adelman*

                                  Gary Adelman, Esq.
                                  *Attorneys for ReDigi Inc.*
                                  Two Grand Central Tower
                                  140 East 45th Street, 19th Floor
                                  New York, New York 10017
                                  Phone: (212) 655-3580
                                  Email: gpa@msf-law.com

---

[2] In response to Capitol's Footnote 1, their offer was made within the context of a global agreement on other issues, which ultimately failed and lead to Capitol's letter to the court for an extension of time to complete discovery. Capitol had not made any further offers to limit the response and nevertheless, while the concerns of "embarrassment" are curtailed somewhat, it doesn't change the fact that there will be embarrassment for all users identified, just not as acute.

8