Gary P. Adelman, Esq.
MEISTER SEELIG & FEIN LLP
*Attorneys for Defendant ReDigi Inc.*
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3580

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, Plaintiff, - against - REDIGI, INC., Defendant. | DEFENDANTS STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1<br>Civil Action No: 12 CIV 0095 (RJS) |

Defendant, REDIGI, INC. ("Defendant") by its undersigned counsel, submits this statement pursuant to Local Rule 56.1(a) in support of its motion for summary judgment.

The following are material facts as to which Defendant, as movants, contend there is no genuine issued to be tried:

1. Ownership of digital music can be transferred without copying. A digital music track can be moved from one hard drive to another without a copy or a reproduction being made. *See* Rogel Decl. ¶¶ 5-12, 25-32, Lin Decl. ¶¶16-24, Worth Decl. ¶¶25-27.[1]

[1] The "Adelman Decl." shall refer to the Declaration of Gary Adelman dated July 20, 2012 together with the exhibits annexed thereto. The "Rogel Decl." shall refer to the Declaration of Lawrence S. Rudolph (Rogel) dated July 20, 2012. The "Worth Decl." shall refer to the Declaration of Colin Worth dated July 20, 2012. The "Lin Decl." shall refer to the Declaration of Jonathan Lin dated July 20, 2012. The "Ossenmacher Tr." Shall refer to the Deposition Transcript of John Ossenmacher as taken on June 19, 2012. The "Rogel Tr." shall refer to the Deposition Transcript of Lawrence S. Rudolph (Rogel) as taken on June 18, 2012. The "McMullan Tr." shall refer to the Deposition Transcript of Alasdar McMullan as taken on June 20, 2012.

2. The Redigi system DOES NOT copy and delete to migrate its files to the ReDigi Cloud Locker. *See* Rogel Decl. ¶¶ 5-12, 25-32, Worth Decl. ¶25, Lin Decl. ¶24.

3. ReDigi was founded to find a way for people to lawfully gift their digital music to people in need who could not afford to buy music, and to provide a donation service so that people would not steal digital music. *See* Adelman Decl., Ex. 11, Ossenmacher Tr. Pp. 25-28; Adelman Decl., Ex. 10, Rogel Tr. 30:1-19. As its founders began delving into whether their idea would fit within the confines of copyright law, they discovered the first sale doctrine. *See* Adelman Decl., Ex. 11, Ossenmacher Tr., 29:21-30:20.

4. Ossenmacher and Rogel quickly realized that technology that could effectuate transfers within the parameters of the law was not readily available, and they set out to develop a technology that would be compliant with copyright law. *See* Adelman Decl., Ex. 11, Ossenmacher Tr., 31:5-14.

5. As ReDigi developed it quickly grew into a service that would provide a marketplace for individuals to re-sell their legally purchased digital goods. *See* Adelman Decl., Ex. 11, Ossenmacher Tr., 67:2-25-68:2-4.

6. ReDigi's founders thought extensively about the boundaries of copyright law, looked at other legally existing technologies and transfer methods, researched existing case law and tried to create a legally compliant system, which would also help prevent piracy. *See* Adelman Decl., Ex. 11, Ossenmacher Tr., at 75-78.

7. ReDigi's software allows individuals to legally re-sell their legally purchased digital goods. *See* Adelman Decl., Ex. 11, Ossenmacher Tr. 67:2-25-68:2-4.

8. In order to use the ReDigi system for storage or sale, the user must download a software called Media Manager. Media Manager's first step is to perform a validation process on



9. Only music files that have been validated as Eligible Files can be uploaded for storage or sale on the Redigi system. *See* Rogel Decl. ¶¶5, 18-19.



12. Once a user requests to place a legally acquired phonorecord in the Cloud Locker, the file is migrated to the Cloud Locker so that it is no longer on the user's local device. *See* Adelman Decl., Ex. 10, Rogel Tr. 57:20 -58:2.

13. ReDigi's "Cloud Locker" refers to a remote storage server that consists of file pointers, or keys that in essence associate that file with a user's account and indicate where in the cloud locker each phonorecords is located. *See* Rogel Decl. ¶¶5, 22, 36.

14. The file transfer process is analogous to a train, where the file itself is divided up in to many packets and each packet is a car. Upon reaching the Cloud Locker, those packets are re-assembled into a complete file. Unlike the standard file transfer process, ReDigi's system completes the file transfer without reproducing or copying the file along the way and without sending a reproduction of the file to the Cloud Locker. *See* Adelman Decl., Ex. 11, Ossenmacher Tr. 85-87.

15. The standard practice for file transfers is to make copies or reproductions of the file and send those reproductions to the destination. *See* Adelman Decl., Ex. 10, Rogel Tr. 13:16-25. In other words standard processes "copy a copy to the cloud." *See* Adelman Decl., Ex. 11, Ossenmacher Tr. 75:2-15.

16. The reason those copies or reproductions are created and sent, is to ensure that if there is ever a failure during the transfer process, or a disruption in connectivity, the process can always backup to the reproduction so the file is not lost. *See* Adelman Decl., Ex. 10, Rogel Tr. 58:22-25 – 59:2-25.

17. Software designers use the standard practice to make reproductions of the file during the transfer process because it is more efficient, in that it is simpler and more cost effective. *See* Rogel Decl.

18. The ReDigi system never makes a copy or reproduction to transfer files to the Cloud. *See* Adelman Decl., Ex. 10, Rogel Tr. 65:2-9.

[redacted]



27. In most cases, there are multiple Personal Use copies on any given user's hard drive already in existence, and in those cases no duplicate archival copy was made. *See* Rogel Decl. ¶30.

[redacted]

29. Any other instances of the file previously existing on the user's hard drive and connected devices would also be deleted. *See* Rogel Decl. ¶¶10, 11, 30.

[redacted]

31. The Eligible File, of course, is never deleted because it had already migrated to the Cloud Locker and was no longer present on the user's hard drive. *See* Rogel Decl. ¶25-32.

[redacted]

36. The Eligible File is never in existence in two places at the same time. *See* Rogel Decl. ¶¶31, 26-30.

37. The ReDigi system does not in any way facilitate "reproduction" or duplication of Capitol's copyrighted content during [redacted] (ii) the process of downloading a new iTunes purchase directly to the Cloud Locker on ReDigi 2.0; or (iii) the transfer of ownership. The essence of duplication and/or reproduction is that more than one of that particular phonorecord could exist at the same time. With reference to the three aforementioned steps, there is never an instance when a Eligible File could exist in more than one place or be accessed by more than one user. Thus no reproduction has occurred. *See* Rogel Decl. ¶¶5-12, 25-36.

38. ReDigi deletes all previously existing duplicate copies that were resident on the user's hard drive or connected devices upon successful migration to the Cloud Locker. *See* Lin Decl. ¶26, Worth Decl. ¶26.

[redacted]

41. Once a user has installed the ReDigi client software on his or her computer, all music files purchased thereafter on iTunes are downloaded directly to the ReDigi server by the ReDigi software. *See* Worth Decl., ¶¶ 11-16, Lin Decl. ¶¶10-15.

[redacted]



48. With the Redigi system, there is never a point in time that two users could simultaneously own a phonorecord. *See* Rogel Decl. ¶36.

49. After ownership is transferred the selling user no longer has access to the phonorecord that was sold, only the purchasing user has access to it because the purchasing user has the Key. *See* Rogel Decl. ¶¶22, 36.

[redacted]

51. Money or credit is transferred between the buyer and seller, but the phonorecord itself is untouched, and is not duplicated or reproduced, and only one user has ownership at a time. *See* Rogel Decl. ¶36.

52. After ownership of any given phonorecord has been transferred, the new owner of that phonorecord can stream the file to themselves or can download the file to his or her computer. *See* Adelman Decl., Ex. 10, Rogel Tr. 52:7-14, 146:20-25.

53. When a ReDigi user opts to download a purchased track, he or she requests the download. The original Eligible File is maintained in the Cloud Locker so that the user can continue to stream or play that phonorecord for their own personal use, but if they choose to later

[redacted]

54. This feature also encourages users to utilize ReDigi as a cloud storage service so that they can access their music anywhere and/or prevent loss in the event that their personal computer is lost or destroyed. *See* Rogel Decl. ¶¶ 20-24.

55. Based on consumers' experiences with other music services, consumers expect to be able to use their digital phonorecords on their computers so that their music library service, whether it be iTunes or something else, will automatically sync their library with their portable devices. *See* Adelman Decl., Ex. 10, Rogel Tr. 111-112 (describing iCloud advertisement "music you download to one device automatically appears on all your devices."); Adelman Decl. Ex. 7.

56. Such personal use copies ("Personal Use Copy") are authorized by ReDigi's terms of service which limit use of downloads and streaming and provide that any such

purchased music can only be "downloaded or streamed for [the user's] personal use." *See* Adelman Decl. Ex. 5.

57. To the extent any discrete acts by users on the ReDigi system even implicate any of Capitol's exclusive rights, those acts are not infringements.

58. The only reproductions of phonorecords that are allowed to be made by users on the ReDigi system are Personal Use Copies. *See* Rogel Decl. ¶¶11, Worth Decl. ¶¶26, 11-16, Lin Decl. ¶¶ 8, 26, 10-15.

59. A Personal Use Copy that is downloaded from the Eligible File in the Cloud Locker is for personal use only. *See* Worth Decl. ¶26, Lin Decl. 8, 26.

60. Cloud storage, as such term is understood by the public, storing digital files in the cloud, is legal for personal use. *See* Adelman Decl., Ex. 4, at 21:4-23.

61. On ReDigi when a user chooses to download a Personal Use Copy of a phonorecord purchased through the ReDigi system, the user is making the Personal Use Copy so he or she can use it at a later time or in a different place, such as on a portable music player. This enables users to listen to their legally purchased music at their convenience, in any place, and without an internet connection, which consumers have come to expect through almost every service available to them. *See* Adelman Decl., Ex. 7.

62. ReDigi has made part of its terms of service that digital media purchased through ReDigi can only be "downloaded or streamed for [the user's] personal use." *See* Adelman Decl. Ex. 5.

63. By virtue of the overwhelming number of products that are sold and promoted for the purpose of allowing and encouraging users to listen to their music anywhere, consumers expect to be able to store and use their Personal Use Copies of their purchased music in their

portable devices. This is true for iTunes users as this practice is expressly authorized by the Terms of Service, which *inter alia* authorize use on other devices and burning playlists. *See* Adelman Decl. Ex. 3 pg. 5.



70. "[P]honorecord" is a defined term in the Copyright Act. *See* 17 U.S.C. §101.

71. Capitol is claiming that it owns exclusive rights as enumerated in Section 106 of Title 17 of the United States Code, in digital music files, or as defined in the Copyright Act phonorecords, which are in digital form. *See* Adelman Decl., Ex. 1, Compl. ¶¶ 13-16.



73. At the time of ReDigi's launch and thereafter, ReDigi had licenses for performance of 30 second clips.



76. ReDigi's licenses allowed the display of that artwork. *See* Adelman Decl., Ex. 10, Rogel Tr. at 189-90.



78. ReDigi itself does not display artwork or publicly perform clips of the songs. *See* Rogel Decl. ¶17.

79. ReDigi's website links to sites that have the authority to display and perform the [redacted]

80. In order for a song to be available for purchase on ReDigi another user has to have offered that song for sale. *See* Rogel Decl., ¶17.

Dated: New York, New York
July 20, 2012

Respectfully submitted,

MEISTER SEELIG & FEIN LLP

Gary Adelman, Esq.
*Attorneys for Defendant ReDigi Inc.*
140 East 45th Street, 19th Floor
New York, New York 10017
Telephone: (212) 655-3580
E-mail: gpa@msf-law.com