UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

CAPITOL RECORDS, LLC,                                 :

                                Plaintiff,            :        12 Civ. 0095 (RJS)

               -against-                              :

REDIGI INC.,                                          :

                                Defendant.            :

                                                      :
------------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# [REDACTED]


COWAN, LIEBOWITZ & LATMAN, P.C.
Attorneys for Plaintiff Capitol Records, LLC
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

TABLE OF CONTENTS

I.   REDIGI REPRODUCES CAPITOL'S SOUND RECORDINGS...................................1

     A  ReDigi Unequivocally Admitted Copying .................................................................1

     B.  ReDigi Has No Answer To the Copyright Act's
         Definition of the Reproduction Right...........................................................................4

II.  REDIGI DISTRIBUTES CAPITOL'S RECORDINGS .................................................6

III. REDIGI IS A DIRECT INFRINGER ...........................................................................7

IV.  REDIGI EFFECTIVELY CONCEDES SECONDARY LIABILITY...........................8

V.   REDIGI'S IMMATERIAL ADDITIONAL STATEMENT OF FACTS ......................10

## I.   REDIGI REPRODUCES CAPITOL'S SOUND RECORDINGS

### A.   ReDigi Unequivocally Admitted Copying

While the plain language of the Copyright Act proscribes ReDigi's system no matter how ReDigi chooses to characterize it, ReDigi's judicial admissions provide powerful confirmation of infringement. The semantic gymnastics ReDigi goes through to escape those binding admissions only underscore how fatal they are. ReDigi cannot simply unsay what it unambiguously said, nor can it create issues of fact by flatly contracting its own prior sworn declarations, deposition testimony, and pleadings. See, e.g., Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).

ReDigi concedes that statements in its preliminary injunction brief constitute judicial admissions of fact if "clear and unambiguous." See ReDigi Opp. Br. at 4-5. The statement regarding copying is precisely that: "The only copying which takes place in the ReDigi service occurs when a user uploads music files to the ReDigi Cloud, thereby storing copies thereof in the user's personal Cloud Locker." See ReDigi PI Opp. Br. (Docket No. 14) at 9 (emphasis added). ReDigi made this statement as a prelude to a lengthy fair use argument asserted to excuse what was otherwise admitted to be copying: "Such copying is paradigmatic noncommercial personal use excepted from copyright infringement liability under by (sic) the Fair Use Doctrine." Id. (emphasis added). The only plausible reading of this statement, on its face and in the context of a discussion about why the copying was excused, is that uploading delivers a copy of a music file to the ReDigi cloud.

The statement is so unequivocally damning that Larry Rudolph, ReDigi's 30(b)(6) witness on its technical operations, admitted its plain meaning and sought only to disavow it:

> Q. Okay. So you would agree with me that that sentence suggests that indeed uploads and downloads do involve copying, correct?

1

A. Yes.
MR. ADELMAN: Objection to form. Go ahead.
BY MR. KING:
Q. Okay. Do you disavow that sentence?
MR. ADELMAN: Objection to form.
A. Yes, I disavow that sentence.

Rudolph Dep. at 77 (Appendix Excerpts). When asked why ReDigi now had a "change of view" about what was previously admitted to be copying, Rudolph could only fumble that ReDigi's technology is "sophisticated" and that it was "easier to explain things this way." Id. at 78.

Rather than acknowledge what it previously admitted, ReDigi now offers two contrary and nonsensical interpretations. First, it cites Mr. Ossenmacher's explanation that the statement

**REDACTED**                                                  ReDigi Opp.

Br. at 5. Apart from the fact that ReDigi never mentioned **REDACTED** anywhere in its preliminary injunction opposition, the statement is also clear on its face that the identified copy resides not on the user's hard drive, but on the ReDigi cloud server: copying "occurs when a user uploads music files to the ReDigi Cloud, thereby storing copies thereof in the user's personal Cloud Locker." ReDigi PI Opp. Br. at 9 (emphasis added). Indeed, when pressed about his explanation, Mr. Ossenmacher reluctantly conceded that point in testimony ReDigi ignores. See Ossenmacher Dep. at 52 (Appendix Excerpts). Notably, Mr. Rudolph did not even try to make this completely implausible distinction.

ReDigi's second subterfuge is to protest that the word "copy" was used "colloquially," without attention to its legal import. ReDigi even suggests, without support, that such casual usage is "commonplace in the industry." See ReDigi Opp. Br. at 5-6; ReDigi Counter Statement Pursuant to Local Rule 56.1 (Docket No. 83) ("ReDigi 56.1 CS") I ¶ 38. But of course there was nothing "colloquial" about this statement, made in the context of a substantive legal discussion whose sole purpose was to explain why the admitted act of reproduction was otherwise excused

as a fair use.  The statement means what it says, and confirms that uploading recordings to the ReDigi server necessarily involves reproduction.

ReDigi offers, if possible, an even more irrational and contradictory explanation for its other judicial admission that "[u]pon the upload of an Eligible File to a User's Cloud Locker, such file and all copies thereof residing on the user's computer, and on attached synchronization and storage devices, are deleted therefrom."  Answer (Docket No. 6) ¶ 47 (emphasis added); Rudolph PI Decl. (Docket No. 11) ¶ 6.  ReDigi now insists that "such file" refers to "the archival copy that could have previously been created for recovery purposes" and "does not refer to the Eligible File."  ReDigi Opp. Br. at 6.

Even the most tortured logic cannot support ReDigi's construction of this sentence, in which the phrase "such file" specifically modifies "Eligible File."  Moreover, the entire notion of an "archival copy" was never mentioned in the Answer, Mr. Rudolph's preliminary injunction declaration, in any document ReDigi produced in discovery, or at any time in this case until a deposition two days before the discovery cutoff, so there is no basis to import that meaning into a declaration and pleading submitted six months earlier.  While Mr. Rudolph now submits a new declaration stating that         **REDACTED**          see Rudolph SJ Opp. Decl. (Docket No. 80) ¶ 4, he stated precisely the opposite when examined specifically on this very issue:

> Q. Okay. And that original file and those additional copies will all be deleted upon upload to the ReDigi cloud, correct?
> MR. ADELMAN: Objection to form.
> A. Those files would be deleted, yes.
> Q. Okay. **But we need to be precise.  When you say the files, it means the original source file and then any other additional copies, correct**?
> MR. ADELMAN: Asked and answered. You can answer if you'd like.
> A. **Yes**.

<center>*     *     *</center>

<center>3</center>

Q. So in that sentence you state that upon the upload of an eligible file, **that file itself, put aside the other copies, but that file is deleted, correct**?
A. **Correct**.
Q. And that statement is accurate, correct?
A. Correct.

See Rudolph Dep. at 132, 236 (Appendix Excerpts) (emphasis added).   The law is clear; a party may not create an issue of fact by submitting a declaration to contradict prior sworn testimony, but Mr. Rudolph's declaration does exactly that when he seeks to retract the above testimony.

Finally, where ReDigi changed its theory at the eleventh hour and denied its own prior admissions at the close of discovery, it is ill-situated to criticize Capitol for having taken inadequate discovery.  From the filing of this case, through the preliminary injunction motion, document exchanges and written discovery, ReDigi breathed not one word about

**REDACTED**       ReDigi's new, completely undocumented theories of

**REDACTED** emerged for the first time in depositions two days before discovery closed.  Before that time, the parties submitted two Case Management Plans (Docket Nos. 31 and 37) that deferred expert disclosures and discovery, precisely because the parties always understood that ReDigi's technology was not in dispute, but rather whether that technology constituted infringement as a legal matter.  ReDigi later awoke to the consequences of its admissions, and chose to sandbag Capitol with a series of denials, falsifications and revisionist history.  None of this subterfuge matters, for the definitions of the Copyright Act control, but if the Court needs confirmation that ReDigi unlawfully copies sound recordings, it need only look to what ReDigi judicially admitted before it realized the ramifications of actually telling the truth.

**B.**       **ReDigi Has No Answer To the Copyright Act's Definition of the Reproduction Right**

As has now been extensively briefed, the Copyright Act reserves to Capitol the exclusive right to "fix" or embody its sound recordings in the "material objects" of "phonorecords."  See

Pl. SJ Br. at 5-6; Pl. SJ Opp. Br. at 3. There is no dispute that ReDigi creates such fixations on

its own servers, and even ReDigi is compelled to admit that "at first blush" this reading of the

Copyright Act "may seem attractive." ReDigi Opp. Br. at 8.

Rather than suggesting any alternative interpretation (because none exist), ReDigi resorts

to the reductio ad absurdum argument that the statutory definitions lead to "irrational"

consequences: "If Capitol were right, by moving a file from one segment of someone's hard

drive to another segment of the same hard drive a new phonorecord would be made in violation

of Capitol's reproduction right." Id. But this case has nothing to do with the irrelevant question

of whether moving files between "segments" of a single hard drive is a reproduction, or ReDigi's

pointless examples of "defragmenting" one's computer or relocating files between "directories"

on a hard drive. This case targets ReDigi's process of copying a music file from a user's home

computer and delivering that reproduction to ReDigi's server, located in Arizona, and managed,

controlled and operated by ReDigi for its own profit. That process clearly embodies Capitol's

recordings on a new material object. To the best of Capitol's knowledge, no lawsuit has ever

challenged "defragmenting" or changing directories on a single drive, likely because such

activities of a single user on her own machine are both commercially benign and potentially

subject to defenses inapplicable to the instant set of facts.[1]

---

[1]For example, depending upon the circumstances, reproductions on a single device of the type ReDigi invokes, even if deemed reproductions, might in any case be excused as too transitory to be fixed, see Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 130 (2d Cir. 2008); noncommercial and thus a fair use under 17 U.S.C. § 107; or "noncommercial use by a consumer" of a "digital audio recording medium" under the Audio Home Recording Act. See 17 U.S.C. § 1008.  Clearly, such defenses have no bearing on what ReDigi does – delivering copies of files on users' hard drives to its own server for purposes of sale to third parties.

5

ReDigi concludes its discussion of the reproduction right with a confusing policy argument about the freedom to distribute phonorecords and "the purpose of the law." It invokes the decision in London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153 (D. Mass. 2008) – which determined only that digital transfers violate the distribution right – to press the view that Congress would never have "intended to prevent movement of a singularly purchased copyrighted good whether tangible or intangible" and to reprise its concern that infringement is not simply "a matter of definition." ReDigi Opp. Br. at 9-10. What these views have to do with the reproduction right remains unclear, as Congress surely never intended for an interloper like ReDigi to profit by copying and selling others' copyrighted works. What is clear is that ReDigi cannot come to terms with what the Copyright Act actually says and prohibits – ReDigi's practice of creating unauthorized phonorecords.[2]

## II.   REDIGI DISTRIBUTES CAPITOL'S RECORDINGS

ReDigi adds little to its defective first sale defense, so only a few additional points warrant comment. ReDigi cites London-Sire for the proposition that "there is no requirement … that a material object exist throughout a sales transaction" to support its contention that ReDigi users dispose of "the particular phonorecord" when they sell a song via ReDigi. ReDigi Opp. Br. at 16. London-Sire holds that a digital transmission is an infringing distribution regardless of whether the same material object is distributed from the sender to the recipient. 542 F. Supp. 2d at 173, 174 (for purposes of distribution, "[w]hat matters in the marketplace is not whether a material object 'changes hands,' but whether, when the transaction is completed, the distributee has a material object"). It does not address a first sale defense, and the Court's

---

[2] ReDigi's irrelevant detour about "archival duplicates" and "personal use" downloads have already been addressed in Capitol's opposition to ReDigi's own motion for summary judgment. See Pl. SJ Opp. Br. at 9 n.3, 8-19.

acknowledgement that no material object "changes hands" highlights why a first sale defense

cannot apply in the case of digital transfers.

ReDigi next suggests that the DMCA Report "supports" its novel application of the first

sale doctrine to digital transfers where it discusses a "forward and delete" functionality, whereby

digital files are forwarded to recipients and concomitantly deleted. See ReDigi Opp. Br. at 17.

Again, ReDigi misses the entire point of the DMCA Report, which first concluded that the

Copyright Act did not allow a digital first sale defense, and then rejected legislative proposals

based on such "forward and delete" options. See DMCA Report at 79 n.272, 81-82. The fact

that it was assumed that a Congressional amendment was necessary for any digital first sale

defense hardly supports the view that existing law embraces a "forward and delete" equivalent.

## III.    REDIGI IS A DIRECT INFRINGER

To escape direct copyright liability, ReDigi likens itself to the defendant in Cartoon

Networks. The Court there held, "There are only two instances of volitional conduct in this case:

Cablevision's conduct in designing, housing, and maintaining a system that exists only to

produce a copy, and a customer's conduct in ordering that system to produce a copy of a specific

program." Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d Cir. 2008).

However, ReDigi does much more than "house" a system used for copying.

ReDigi actively scans users' individual hard drives, analyzes their music libraries, and

presents them with lists of recordings eligible for upload; runs software continuously to discover

newly added songs and gives them a "thumbs up" for upload; walks users through the process of

uploading and offering recordings for sale; reanalyzes each file once uploaded to the ReDigi

server; offers numerous incentives for users to buy and sell music files, including personal

emails; looks for matches for any purchase orders for songs not immediately available; and

acknowledges that it is

# REDACTED <span style="float:right">See Pl. 56.1</span>

¶¶ 11-13, 16-17, 31-48.  ReDigi did not contest these facts, see ReDigi 56.1 CS ¶¶ 11-13, 16-17,

31-48, which are now admitted pursuant to Local Rule 56.1(c).  Thus, ReDigi does much more

than passively "allow[] a user to command the system to upload files," ReDigi Opp. Br. at 19,

but rather urges and walks users through every stage of its infringing system.  In so doing, it

directly infringes Capitol's copyrights.

## IV.    REDIGI EFFECTIVELY CONCEDES SECONDARY LIABILITY

ReDigi does not answer Capitol's claim for vicarious liability.  It only argues that it

should not be held responsible for infringements "outside of the ReDigi system," when users

circumvent its software to keep copies of files they sell.  ReDigi Opp. Br. at 22.  While Capitol

disagrees with ReDigi's argument, it is largely beside the point.  ReDigi concededly has the right

and ability to supervise, and a direct financial interest in, the infringing activity that occurs

"inside" its system, when users upload and sell copies of Capitol's sound recordings using

ReDigi for its intended purpose.  See Gershwin Publishing Corp. v. Columbia Artists

Management, Inc. 443 F.2d 1159, 1162-63 (2d Cir. 1971).  ReDigi admits that

# REDACTED

<div style="padding-left:4em">See Pl. 56.1 and ReDigi 56.1 CS ¶¶ 35, 54-55 (admitting allegations).</div>

It further admits that it has the technical ability to block users from employing its system.  Id. ¶

15.  These admissions satisfy the elements of vicarious liability as a matter of law.

With regard to contributory infringement and inducement liability, ReDigi likewise

concedes the key elements of these claims.  It does not dispute its material contribution to, and

active encouragement of, the uploading and sales activity on its site, see Pl. 56.1 and ReDigi 56.1

<div style="text-align:center">8</div>

CS ¶¶ 11-13, 16-17, 31-48 (admitting allegations), but only protests that it acted in good faith in setting up a system it believed complied with copyright law. See ReDigi Br. at 21, 24.   There are two fatal errors in ReDigi's reasoning.

First, ReDigi is barred from its repeated refrain that it "researched copyright law, consulted with attorneys" and concluded that it was on firm legal footing. ReDigi Opp. Br. at 21; ReDigi 56.1 CS I ¶¶ 5, 7.  ReDigi refused to disclose any legal advice it received on privilege grounds; it did not provide **REDACTED** in response to document requests specifically calling for such **REDACTED**

See Mandel Reply Decl. ¶¶ 2-4 and Exs. 1-2.  Having done so, it cannot now boast of its good faith belief in the lawfulness of its conduct.  A party "may not assert that it believed its conduct was lawful, and simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief." See Arista Records LLC v. Lime Group LLC, 2011 WL 1642434, at *2 (S.D.N.Y.  April 20, 2011) (citing United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)).  This bar applies even if ReDigi attempts to divorce its own legal views and research from advice it received from counsel.  See id. at *2-3 (rejecting defendant's suggestion that belief it was not copyright infringer derived from "some innate knowledge of copyright law, and not from advice of counsel").  Having chosen to withhold any legal advice it received, ReDigi is precluded from relying on its legal "research" and conversations with lawyers as a basis for its purported good faith.

There is, moreover, nothing objectively reasonable about ReDigi's assessment of its legal position.  ReDigi's view that there is "no clear authority" forbidding its conduct ignores the plain language of the Copyright Act and the DMCA Report unequivocally rejecting the arguments ReDigi now asserts.  More accurately, there is no authority authorizing ReDigi's conduct, which

implicates the rights of copyright owners from whom ReDigi obtained no license. ReDigi invented a new and faulty concept of "used" digital files and tried to force it into existing law without any basis. That ReDigi made an ill-advised calculation and poor legal judgment does not somehow absolve it of the knowledge sufficient to establish secondary liability.

## V.  REDIGI'S IMMATERIAL ADDITIONAL STATEMENT OF FACTS

ReDigi supports its opposition papers with 44 paragraphs of purportedly "material" additional facts in dispute (even though ReDigi separately moves for summary judgment based on the theory that there are no material facts in dispute). Local Rule 56.1 does not contemplate a paragraph-by-paragraph response to such additional statements, nor does it deem any such facts admitted if not controverted. See Local Rule 56.1(c) (only facts asserted by moving party deemed "admitted" if not controverted by opposing party). Capitol points out, nevertheless, that ReDigi's supplementary "facts" are entirely immaterial to either party's motion. They are either duplicative of matters previously submitted, compare ReDigi 56.1 CS I ¶¶ 1-7, 9, 11, 30 to ReDigi 56.1 ¶¶ 3-7, 10, 38; mere characterizations of ReDigi's policy views rather than statements of fact supported by admissible evidence, see ReDigi 56.1 CS I ¶¶ 12, 14-17, 24, 27-28; inadmissible hearsay or demonstrably false, see ReDigi 56.1 CS I ¶¶ 19-21 (reporting on views of other record labels, which in any case objected via the RIAA); or legal arguments seeking to explain away ReDigi's judicial admissions, see ReDigi 56.1 CS I ¶¶ 37-44. They have no bearing on the instant motions and should be disregarded.

Dated: New York, New York
      August 24, 2012

COWAN, LIEBOWITZ & LATMAN, P.C.

By: _____
    Richard S. Mandel
    Jonathan Z. King
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

10