## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, CAPITOL CHRISTIAN MUSIC GROUP, INC., and VIRGIN RECORDS IR HOLDINGS, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>REDIGI INC., JOHN OSSENMACHER, and LARRY RUDOLPH a/k/a LAWRENCE S. ROGEL,<br><br>    Defendants. | 12-CV-00095 (RJS) |

## INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW
## REGARDING THE APPLICATION OF
## <u>RES JUDICATA, COLLATERAL ESTOPPEL, AND LAW OF THE CASE</u>

# TABLE OF CONTENTS

I. PROCEDURAL HISTORY ................................................................................................ 1

    A. THE INITIAL COMPLAINT AND ANSWER. .................................................................. 1

    B. THE MOTION FOR PRELIMINARY INJUNCTION. .......................................................... 2

    C. INDIVIDUAL DEFENDANT DEPOSITIONS ................................................................... 2

    D. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT ................................................... 3

    E. THE FILING OF THE FIRST AMENDED COMPLAINT ................................................... 3

    F. THE FILING OF THE SECOND AMENDED COMPLAINT .............................................. 5

II. THE DISCOVERY DISPUTE ...................................................................................... 7

    A. PRE-MOTION TO DISMISS RESOLUTION .................................................................. 7

    B. POST-MOTION TO DISMISS RESOLUTION .............................................................. 10

III. ARGUMENT ................................................................................................................ 11

    A. RES JUDICATA DOES NOT APPLY .......................................................................... 12

    B. COLLATERAL ESTOPPEL DOES NOT APPLY ........................................................... 14

    C. LAW OF THE CASE DOES NOT APPLY .................................................................... 18

    D. DENYING INDIVIDUAL DEFENDANTS DISCOVERY AND TO DISPUTE THEIR LIABILITY WOULD VIOLATE THEIR DUE PROCESS RIGHTS ...................................................... 19

    E. THE DISCOVERY REQUESTS AT ISSUE ARE APPROPRIATE. .................................... 22

        1. Requests for Production Numbers 10, 17, & 18 ........................................... 22

        2. Interrogatory Number 19. ............................................................................ 23

IV. CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Stock Exch., LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) ..........................................................................18

*Arista Records LLC v. Lime Grp. LLC*,
    No. 06 CV 5936, 2010 WL 4720338 (S.D.N.Y. Nov. 19, 2010) ...........................23

*Arizona v. California*,
    460 U.S. 605 (1983)........................................................................................11, 19

*Avondale Shipyards, Inc. v. Insured Lloyd's*,
    786 F.2d 1265 (5th Cir. 1986) ............................................................................16

*Ball v. A.O. Smith Corp.*,
    451 F.3d 66 (2d Cir. 2006)..................................................................................15

*Benavidez v. Piramides Mayas Inc.*,
    No. 09 Civ. 5076, 2013 WL 2357527 (S.D.N.Y. May 24, 2013).........................22

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
    334 F. Supp. 2d 197 (N.D.N.Y. 2004)................................................................19

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
    No. 01 Civ. 11295, 2004 WL 169746 (S.D.N.Y. Jan. 28, 2004)..........................19

*CBS Inc. v. Creed Taylor et al.*,
    No. 17421/83, slip op. (N.Y. Sup. Ct. Oct. 15, 1984)..........................................17

*Creed Taylor, Inc. v. CBS, Inc.*,
    718 F. Supp. 1171 (S.D.N.Y. 1989)................................................................16, 17

*Davis v. Lenox Hill Hosp.*,
    No. 03 Civ. 3746, 2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004) ...........................6

*Eugene v. 3Don & Partner Estate Grp., LLC*,
    No. 07-80439-CIV, 2009 WL 1810735 (S.D. Fla. June 24, 2009)........................21

*Flynn v. Best Buy Auto Sales*,
    218 F.R.D. 94 (E.D. Pa. 2003)...........................................................................21

*H.R. Bushman & Son, Corp. v. Spud Packers, Inc.*,
    No. 4:06CV1638, 2008 WL 625023 (E.D. Mo. Mar. 4, 2008)..............................21

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
    722 F. Supp. 998 (S.D.N.Y. 1989) *aff'd in part, rev'd in part sub nom. Harris Trust
    & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138 (2d Cir. 1992) *aff'd
    sub nom. John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86
    (1993) ........................................................................................................................17

*Holzsager v. Valley Hosp.*,
    482 F. Supp. 629 (S.D.N.Y. 1979) ........................................................................14

*Hudson v. Universal Studios Inc.*,
    235 F. App'x 788 (2d Cir. 2007) ...........................................................................12

*In re Hyman*,
    335 B.R. 32 (S.D.N.Y. 2005) *aff'd on other grounds,* 502 F.3d 61 (2d Cir. 2007)................13

*In re re Teltronics Servs., Inc.*,
    762 F.2d 185 (2d Cir. 1985)....................................................................................13

*Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*,
    23 F.3d 55 (2d Cir. 1994) .......................................................................................16

*Kreager v. General Electric Co.*,
    497 F.2d 468, 470 (2d Cir. 1974) ...........................................................................13

*L M Ericsson Telecomms., Inc. v. Teltronics Servs., Inc.*
    18 B.R. 705 (E.D.N.Y.1982) ..................................................................................13

*Liberty Mut. Ins. Co. v. Wetzel*,
    424 U.S. 737 (1976) ................................................................................................16

*Lummus Co. v. Commonwealth Oil Ref. Co.*,
    297 F.2d 80 (2d Cir.1961).......................................................................................16

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002)....................................................................................11

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)....................................................................................19

*McNabb v. Riley*,
    29 F.3d 1303 (8th Cir. 1994) ..................................................................................19

*Mei v. City of N.Y.*,
    No. 06 Civ. 00296, 2006 WL 2997111 (S.D.N.Y. Oct. 5, 2006) .............................1

*Metromedia Co. v. Fugazy*,
    983 F.2d 350 (2d Cir. 1992)....................................................................................16

*Moezinia v. Damaghi,*
   544 N.Y.S.2d 8 (1st Dep't 1989) ...........................................................................13

*Monahan v. New York City Dep't of Corr.,*
   214 F.3d 275 (2d Cir. 2000) ............................................................................12, 14

*Moran v. City of New Rochelle,*
   346 F. Supp. 2d 507 (S.D.N.Y. 2004) ..................................................................15

*Nelson v. Adams USA, Inc.,*
   529 U.S. 460 (2000) .....................................................................................20, 21

*Netherby Ltd. v. Jones Apparel Grp., Inc.,*
   No. 04 Civ. 7028, 2005 WL 1214345 (S.D.N.Y. May 18, 2005) ...........................12

*Novick v. AXA Network, LLC,*
   642 F.3d 304 (2d Cir. 2011) ..................................................................................16

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978) ...............................................................................................22

*PenneCom B.V. v. Merrill Lynch & Co.,*
   372 F.3d 488 (2d Cir. 2004) ..................................................................................17

*Perez v. Nationwide Mut. Fire Ins. Co.,*
   No. 01 Civ. 2135, 2001 WL 716924 (S.D.N.Y. June 25, 2001) ...........................17

*Pescatore v. Pan Am. World Airways, Inc.,*
   97 F.3d 1 (2d Cir. 1996) ........................................................................................19

*Pike v. Freeman,*
   266 F.3d 78 (2d Cir. 2001) ....................................................................................11

*Quatraro v. Vill. of Kenmore Zoning Bd. of Appeals,*
   716 N.Y.S.2d 508 (4th Dep't 2000) .......................................................................11

*Quern v. Jordan,*
   440 U.S. 332 (1979) ...............................................................................................18

*Rezzonico v. H & R Block, Inc.,*
   182 F.3d 144 (2d Cir. 1999) .......................................................................12, 13, 18

*Semple v. Eyeblaster, Inc.,*
   No. 08 Civ. 9004, 2009 WL 1748062 (S.D.N.Y. June 19, 2009) ...........................18

*Smith v. Cafe Asia,*
   256 F.R.D. 247 (D.D.C. 2009) ...............................................................................24

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
 407 F.3d 34 (2d Cir. 2005)......................................................................................19

*Teltronics Servs., Inc. v. L M Ericsson Tel. Co.*,
 No. 79 Civ. 1233, slip op. (S.D.N.Y. May 9, 1979) .............................................13

*Teltronics Servs., Inc. v. L M Ericsson Telecomms., Inc.*,
 486 F. Supp. 836 (S.D.N.Y. 1980), *on reargument,* 491 F. Supp. 538 (S.D.N.Y.1980), *aff'd,* 642 F.2d 31 (2d Cir. 1981), *cert. denied,* 452 U.S. 960 (1981) ....................13

*U.S. Dep't of Justice v. Hudson*,
 No. 1:06-CV-763, 2007 WL 2461783 (N.D.N.Y. Aug. 24, 2007) *opinion vacated in part on reh'g sub nom. U.S. Dep't of Justice, Tax Div. v. Hudson*, No. 1:06-CV-763 FJS, 2009 WL 7172812 (N.D.N.Y. July 8, 2009) .................................................17

*United States v. Alfano*,
 34 F. Supp. 2d 827 (E.D.N.Y. 1999) .....................................................................1

*Vardon Golf Co. v. Karsten Mfg. Corp.*,
 294 F.3d 1330 (Fed. Cir. 2002)...............................................................................16

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
 877 F.2d 1120 (2d Cir. 1989)...................................................................................23

*Werking v. Andrews*,
 526 F. App'x 94 (2d Cir. 2013) ...............................................................................19

*Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*,
 263 F.3d 196 (2d Cir. 2001)....................................................................................14

*Zomba Recording Corp. v. MP3.Com, Inc.*,
 No. 00 Civ. 6831, 2001 WL 770926 (S.D.N.Y. July 10, 2001) ...............................6

**STATUTES**

Fed. R. Civ. P. 26.............................................................................................................22

Pursuant to this Court's instruction at the November 6, 2014 hearing and the November 12, 2014 minute entry, Mr. John Ossenmacher and Prof. Larry Rudolph (the "Individual Defendants") file this memorandum of law on the application of *res judicata*, collateral estoppel, and law of the case doctrine to the Individual Defendants. For the reasons outlined herein, none of these doctrines apply, and the Individual Defendants are permitted to assert, seek discovery on, and litigate defenses that this Court did not actually decide in the earlier phases of the litigation between just Capitol Records, LLC ("Capitol") and ReDigi, Inc. ("ReDigi").[1]

## I.   PROCEDURAL HISTORY

Although the Court is well aware of the history of this action, Individual Defendants repeat some of it herein for its relevance to this current dispute.

### A.   The Initial Complaint and Answer.

Capitol filed its initial complaint on January 6, 2012. Compl., ECF No. 1. This first complaint only named ReDigi as a defendant and alleged claims for (1) copyright infringement under 17 U.S.C. § 106; (2) inducement of copyright infringement under 17 U.S.C. §§ 106 and 501; (3) contributory copyright infringement under 17 U.S.C. §§ 106 and 501; (4) vicarious copyright infringement under 17 U.S.C. §§ 106 and 501; and (5) common law copyright infringement. *Id.*

ReDigi filed an answer to this complaint on January 19, 2012. Ans., ECF No. 6. This answer asserted fourteen affirmative defenses, including (1) the applicability of the safe harbor

---

[1] The Court need not reach the privity issue because Individual Defendants are only seeking to assert, obtain discovery, and litigate defenses not already decided by the Court. Privity would only be relevant, if at all, if the Individual Defendants were seeking to relitigate the issues already decided in the partial summary judgment order. *See* Part III, *infra*. In any event, Capitol has not produced any evidence that Individual Defendants controlled the prior litigation, which is its burden to carry as the party asserting these doctrines. *See, e.g.*, *Mei v. City of N.Y.*, No. 06 Civ. 00296, 2006 WL 2997111, at *7 (S.D.N.Y. Oct. 5, 2006); *United States v. Alfano*, 34 F. Supp. 2d 827, 833 (E.D.N.Y. 1999).

defense of the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 512), Ans. ¶¶ 62-63; (2) the fair use doctrine, Ans. ¶¶ 64, 68; (3) the essential step doctrine, Ans. ¶¶ 65, 69; (4) the exhaustion doctrine, Ans. ¶¶ 66, 70; (5) the first sale doctrine, Ans. ¶ 67; and (6) that Capitol's distribution rights were not implicated by the ReDigi system, Ans. ¶ 71.

### B.   The Motion for Preliminary Injunction.

On January 26, 2012, Capitol filed a motion for a preliminary injunction. Mot. for Prelim. Inj., Order to Show Cause, ECF No. 8. In responding to the injunction, ReDigi argued that the ReDigi system did not infringe on Capitol's copyrights under the fair use and essential step doctrines, that there was no infringement of Capitol's distribution rights, and that Capitol failed to comply with the notice requirements of DMCA. Defs. Mem. of Law in Opp. to Pl.'s Mot. for a Prelim. Inj., ECF No. 14 (filed Jan. 27, 2012). Capitol's reply brief argued that these defenses were inapplicable. Reply Mem. in Further Supp. of Pl.'s Mot. for Prelim. Inju., ECF No. 21 (filed Feb. 1, 2012).

On February 6, 2012, the Court denied the motion for a preliminary injunction "[f]or the reasons stated on the record at [that day's] conference." Order, ECF No. 25. In particular, this Court stated that "the lack of irreparable harm is one that really is the issue that cause[d] [it] to deny the motion." Transcript 60:20-21, ECF No. 26 (field Feb. 9, 2014). The Court did not discuss any of the defenses asserted by ReDigi in the briefing.

### C.   Individual Defendant Depositions

As part of fact discovery, Capitol deposed each of the Individual Defendants twice. Mr. Rudolph was first deposed pursuant to Federal Rule of Civil Procedure 30(b)(6) on June 18, 2012 and again on July 12, 2013. The combined transcripts of Mr. Rudolph's depositions run more than 400 pages. Mr. Ossenmacher was first deposed pursuant to Federal Rule of Civil Procedure 30(b)(6) on June 19, 2012 and again on July 11, 2013. The combined transcripts of

Mr. Ossenmacher's depositions run just under 400 pages. Because the Individual Defendants were not parties to the action, ReDigi's counsel defended each of these depositions. The roughly 800 pages of deposition transcripts is devoid of a single question regarding the control (or lack thereof) the Individual Defendants were exercising over the ReDigi-Capitol litigation or of their supposed personal interest in the allegedly infringing conduct.

### D.   The Cross-Motions for Summary Judgment

In the amended scheduling order, the Court ordered Capitol and ReDigi to file motions for summary judgment by July 20, 2012. Am. Case Management Plan and Scheduling Order, ECF No. 37. Consistent with the Court's scheduling order, on July 20, 2012, Capitol and ReDigi cross-moved this Court for partial summary judgment. *See* Notice of Mot. ECF No. 48 (filed July 20, 2012); Notice of Mot. for Sum. J. ECF No. 54 (filed July 20, 2012).

The Court granted Capitol's motion for summary judgment against ReDigi on March 30, 2013. Mem. and Order, ECF No. 109. The Court's order began by stating that the issues presented by the cross-motions were "narrow, technical, and purely legal," *id*. at 1, before noting that "ReDigi's arguments in this round of briefing differ markedly from those it asserted in opposition to Capitol's motion for preliminary injunction." *Id*. at 3, n.4. The Court remarked that ReDigi did not assert the essential step defense, that "copying" to ReDigi's cloud locker fell under the fair use defense, or that DMCA applied. *Id*. Instead, the Court reviewed the affirmative defenses asserted by ReDigi in its motion for partial summary judgment - fair use and first sale – and conclude that on the record before it, that neither applied to shield ReDigi from copyright infringement liability. *Id*. at 9-13.

### E.   The Filing of the First Amended Complaint

After entering the partial summary judgment order, the Court entered a Joint Amended Case Management Plan and Scheduling Order, ECF No. 111 (filed May 6, 2013. This order

3

provided that (1) "[a]ll remaining discovery shall be completed by August 2, 2013," (2) that "[n]o additional parties may be joined or amended pleadings served except with the opposing party's written consent or leave of the Court . . .", (3) that "the list of plaintiff's sound recordings allegedly infringed will have to be supplemented prior to final adjudication in the case based on information obtained through discovery," and (4) that the Court would "conduct a post-discovery conference on August 9, 2013 . . . ."

On August 2, 2013, the day all discovery was to be completed, Capitol's counsel submitted a letter requesting leave to amend its complaint. Declaration of James J. Pizzirusso, Ex. 1 (hereinafter "Pizzirusso Declaration"). In relevant part, Capitol sought, for the first time to "join the principals of defendant ReDigi, Inc. . . . as additional defendants." In support of this request, Capitol asserted adding the Individual Defendants to the action would "require no further discovery, and will not delay the case schedule" and that this amendment was proper because "[d]iscovery has confirmed that both are personally liable as a legal matter and . . . ReDigi itself has insufficient funds to satisfy even a modest damage award in this case."

Because Individual Defendants had not yet retained counsel (there had been no need prior to August 2, 2013), on August 7, 2013 ReDigi's counsel responded on ReDigi's behalf opposing Capitol's request to add the Individual Defendants to the action; ReDigi's counsel did not and could not respond on the Individual Defendant's behalf as such counsel did not represent those individuals for such purposes.[2] Pizzirusso Decl., Ex. 1. ReDigi's counsel responded by arguing that the cases cited by Capitol regarding the Individual Defendants' alleged liability were inapposite and that the request "seems motivated by an intention to harass and exert pressure and stress on ReDigi's officers."

---

[2] The ABA Model Rules of Professional Conduct and New York Rules of Professional Conduct both provide that an attorney retained by a corporation represents the entity and not the individuals connected with the entity. *See* ABA Model Rule 1.13(a); New York Rule 1.13(a).

On August 9, 2013, the Court held the contemplated post-discovery conference and discussed Capitol's letter seeking to add the Individual Defendants to the action. In relevant part, the Court stated: "[I]f amending to add [the Individual Defendants] is not going to require any additional discovery, then I think I probably will allow it. But if it's going to require additional discovery, then I'm not so sure." Pizzirusso Decl., Ex. 2 at 3:15-18. ReDigi's counsel, which again did not represent the Individual Defendant's or their interests, when asked whether he thought that the Individual Defendants would require additional discovery, responded, "No, I do not." *Id*. at 4:1-3. Thus, this Court permitted Capitol to add the Individual Defendants to this action, *id*. at 4:4-6, and Capitol filed its Amended Complaint on August 30, 2013. First Am Compl., ECF No. 118.

On September 16, 2013, after Individual Defendants were added to this action and retained their own separate counsel, counsel for all of the parties submitted a joint letter to the Court. Pizzirusso Decl., Ex. 3. In relevant part, this letter notified the Court of the Individual Defendants' intention to move to dismiss the Amended Complaint and of their need to receive additional discovery should they remain in the case. *Id*. Capitol opposed this request, arguing that no additional discovery was needed. *Id*.

On September 19, 2013, the Court entered an order permitting the Individual Defendants to file a motion to dismiss and ordered the parties to submit a revised case management plan "that amend[ed] the existing discovery deadlines to allow for the completion of all discovery by November 8, 2013." Order, ECF No. 124. Consistent with this order, the Second Amended Joint Case Management Plan and Scheduling Order, which extended the deadline for completion of all discovery to November 8, 2013 was entered on September 25, 2013. ECF No. 129.

### F.    The Filing of the Second Amended Complaint

On October 21, 2014, Capitol submitted a letter requesting leave to file a second

amended complaint adding Capitol Christian Music Group, Inc. and Virgin Records IR

Holdings, Inc., allegedly companies affiliated with Capitol, as plaintiffs to this action because

they "are the owners of certain of the sound recordings infringed by Defendants." Pizzirusso

Decl., Ex. 4. ReDigi, together with Individual Defendants, filed a letter responding to the request

on October 24, 2014. Letter, ECF No. 157 (attached hereto as Pizzirusso Decl., Ex. 4), arguing

that the proposed amendment should not be permitted because of Capitol's undue delay in

seeking the amendment and the prejudice it would cause to ReDigi and the Individual

Defendants. Following communications between the Court and Capitol, Capitol emailed a

redline of the proposed second amended complaint to the Court on October 28, 2014. Pizzirusso

Decl., Ex. 5.

The Court entered an order permitting Capitol to file its second amended complaint on

October 29, 2014. Order, ECF No. 158. In relevant part, without briefing, the Court found that

the second amended complaint "involves mostly technical changes that are not the result of

undue delay or bad faith and would not require additional discovery." Capitol filed the second

amended complaint on October 30, 2014, Second Am. Compl., ECF No. 161, and Individual

Defendants filed their answer on November 11, 2014. Answer to Second Am. Compl., ECF No.

162.

Notably, Individual Defendants dispute the Court's assertion that the addition of the new

Plaintiffs does "not require additional discovery." While the discovery dispute at issue in this

brief is between Capitol and the Individual Defendants, the Individual Defendants are also

clearly entitled to factual discovery of the two, newly added Plaintiffs.[3] *See Davis v. Lenox Hill*

---

[3] Individual Defendants may also be entitled to reimbursement from Plaintiffs "for the reasonable costs (including attorneys' fees) of preparing for and taking all such additional 30(b)(6) depositions" of the newly added Plaintiffs. *Zomba Recording Corp. v. MP3.Com, Inc.*, No. 00 Civ. 6831, 2001 WL 770926, at *1 (S.D.N.Y. July 10, 2001).

*Hosp.*, No. 03 Civ. 3746, 2004 WL 1926086, at *4 (S.D.N.Y. Aug. 31, 2004) (denying leave to amend to add new plaintiffs to an action because, in part, the request was made after the close of discovery and the defendants had not had an opportunity to take discovery of the new named plaintiffs). At the very least, such discovery will likely include requiring the newly named Plaintiffs to answer interrogatories, to produce documents related to ownership (among other things), and to sit for depositions.

## II.   THE DISCOVERY DISPUTE

On October 9, 2013, without the benefit of Capitol's prior document production[4] and after investing substantial time and resources into briefing their motion to dismiss[5] and familiarizing themselves with the pertinent facts and procedural history, Individual Defendants served their (a) initial disclosures, (b) first set of interrogatories, and (c) first set of requests for production of documents and things.[6] Pizzirusso Decl., Ex. 6. These are the same requests, though significantly narrowed, *see infra*, that are *still* at issue.

### A.   Pre-Motion to Dismiss Resolution

On October 14, 2013, Capitol sent a letter opposing these discovery requests. Pizzirusso

---

[4] Individual Defendants did not receive this prior production until October 24, 2013, or 15 days before the November 8, 2013 discovery deadline. Pizzirusso Decl., Ex. 13.

[5] *See* ECF Nos. 126 (filed Sept. 20, 2013), 127 (filed Sept. 20, 2013). By the time the motion to dismiss briefing was completed, Individual Defendants only had 31 days (18 of which were week days) to plan, serve, and complete all of their anticipated discovery. *Id.*

[6] Thereafter, on October 22, 2013, Individual Defendants served a 30(b)(6) deposition notice on Capitol; on October 25, 2013, Individual Defendants attempted to serve deposition notices on one current and three former Capitol employees; and on October 29, 2013, Individual Defendants served a subpoena to testify at a deposition and produce documents on the Recording Industry Association of America ("RIAA"). Pizzirusso Decl., Ex. 14. These proposed depositions are not principally before the Court in the ongoing discovery dispute, but the Court's ruling on the issue presented by this memorandum – the scope of discovery Individual Defendants will be permitted to engage – will have obvious implications on whether Individual Defendants will be permitted to pursue these noticed depositions.

Decl., Ex. 7. In relevant part, Capitol insisted that the discovery requests were untimely[7] and that because "ReDigi ha[d] already been found to be an infringer and its affirmative defenses rejected as a matter of law, the only remaining subjects for adjudication [were] whether the individual defendants participated in the infringing acts and the amount of statutory damages . . . ." Capitol did not articulate the legal basis for the latter claim made in this letter.

After the disagreements could not be resolved through several meet and confers, the parties submitted a joint letter to the Court on October 25, 2013. Pizzirusso Decl., Ex. 8. In this letter, Capitol opposed these requests on the same grounds it articulated in its October 14 letter, and finally articulated the legal basis for its position that Individual Defendants were barred from litigating their liability: "Because they are in privity with ReDigi, IDs are barred by collateral estoppel and the law of the case doctrine from relitigating issues already determined" in the Court's prior partial summary judgment order. Capitol did not assert that *res judicata* applied in this letter.[8] Individual Defendants responded that the requests were timely and that collateral estoppel did not apply to bar any defenses because the doctrine only applies in subsequent actions, and even if it did apply, that it would only bar those defenses actually decided by the Court (and many for which Individual Defendants were seeking discovery were not so decided).

Following a series of pre-summary judgment motion letters mandated to be filed by the case management order, most of which raised the same issues regarding the application of legal doctrines that Capitol contends bar Individual Defendants from engaging in discovery into their liability, Pizzirusso Decl., Ex. 9, the Court scheduled a status conference for December 2, 2013 to discuss whether the Individual Defendants "should be permitted to seek discovery for legal defenses that could have been raised, but were not, by Defendant ReDigi." Order, ECF No. 143

---

[7] Capitol no longer appears to be asserting these initial requests were untimely.

[8] Capitol did not make their res judicata assertion until their November 6, 2013 letter.

(filed Nov. 21, 2013).[9]

      At the December 2 hearing, the Court discussed the parties' dispute:

> There are some additional defenses that plaintiffs argue ReDigi could have raised earlier and did not and that the individual defendants should be foreclosed from brining those. And you [Capitol] cite cases from the Second Circuit and elsewhere, principally the Second Circuit, *In re Teltronics* and *Kreager*. I think the posture of those cases was a little different in that there was already was a judgment in those cases as opposed to here where we don't have a final judgment. . . . I think those cases are different. I think that the reasoning might apply, but those are cases which involve collateral estoppel where there has been a judgment. So that's my reason for suggesting that probably had I started from scratch and known this is where we are going, I would have denied the motion to amend. You could have then filed against the individual defendants, and we would have then gone forward on two tracks. But I think the track against Redigi would be almost done by now as opposed to us being kind of mired in discovery disputes and motions practice. . . . The fact that one defendant thinks little of a defense and another thinks better of it is not dispositive. I think if it's a frivolous motion, then I guess there are repercussions that flow from that. At this point I am not sure I'm prepared to say that.

Pizzirusso Decl., Ex. 10 at 4:19-5:15; 6:3-7.[10] At the end of the hearing, the Court decided to hold off on deciding the discovery dispute until it resolved the pending motion to dismiss. *Id.* at 34:10-19. The Court also stayed discovery until it decided the pending motion to dismiss unless the parties voluntarily agreed to exchange information. *Id.* at

---

[9] This order appears to be focused on the res judicata argument raised for the first time in Capitol's November 6, 2013 letter, which argued that "because the IDs are in privity with ReDigi, they are barred under principals of res judicata from now asserting such defenses" that ReDigi could have asserted but chose not to omit. Put differently, *res judicata* is the only doctrine that would apply to bar the assertion of defenses not actually litigated by Capitol and ReDigi in the prior partial summary judgment order. At the November 7, 2014 conference, the Court was also focused on whether *res judicata* applied.

[10] As discussed herein, *In re Teltronics* and *Kreager* are actually *res judicata* cases, not collateral estoppel cases as Capitol has repeatedly claimed. Individual Defendants have continually pointed out that Capitol is mis-citing the holdings of these cases, but Capitol continues to press forward with its misleading argument. That difference is pertinent as discussed herein.

36:2-10.

### B.    Post-Motion to Dismiss Resolution

The Court eventually decided the Individual Defendants' motion to dismiss on September 2, 2014. Opinion and Order, ECF No. 148. In its Order, the Court required the parties to submit a joint letter by "September 19, 2014 advising the Court of the need for additional discovery and whether the parties contemplate post-discovery motions for summary judgment as to the Individual Defendants." *Id*. The parties then submitted a joint letter on September 19, 2014 stating that the parties would "make a good faith effort to resolve as many of [the discovery] issues by agreement and then report back to the Court by October 22, 2014, regarding any disputes that remain. . . ."

After further discussing the discovery requests in good-faith, Individual Defendants substantially narrowed their requests,[11] and Capitol responded to the first set of discovery requests on October 15, 2014. Pizzirusso Decl., Ex. 11. Of the remaining discovery requests, Capitol agreed to respond to 9 of the 12 remaining requests for production and 18 of the 20 remaining interrogatories.[12] Put differently, there are only 3 requests for production and 2 interrogatories that are still in dispute: Requests for Production Nos. 10, 17, & 18 and Interrogatory Nos. 4 & 19.[13] Individual Defendants now withdraw Interrogatory No. 4.[14]

---

[11] Individual Defendants agreed to withdraw Requests for Production Nos. 7, 8, 11, 12, 13, 14, 15, 16 & 20 and Interrogatory Nos. 21 and 22.

[12] Capitol has agreed to respond (or has stated that it has already responded) to Requests for Production Nos. 1-5, 9, 16, & 19 and Interrogatory Nos. 1-3, 5-18, & 20. The parties disagree on Requests for Production Nos. 6, 10, 17, & 18 and Interrogatory Nos. 4 & 19. Individual Defendants reserve their right to challenge the adequacy of Capitol's responses.

[13] Individual Defendants have explicitly reserved their right to seek additional factual discovery and to challenge the adequacy of Capitol's responses. Pizzirusso Decl., Ex. 15.

[14] As explained herein, the discovery requests in dispute encompass a small universe of legal issues but raise the dispute really at issue in this memorandum: whether Individual Defendants are entitled to seek discovery and dispute liability as to defenses that ReDigi raised

On October 22, 2014, the parties submitted a joint letter outlining the discovery requests still in dispute and requesting a conference to discuss these disputes. Pizzirusso Decl., Ex. 12. While the letter delved into the propriety of the specific document requests, the significant issue underlying the entire letter was whether Individual Defendants were barred by *res judicata*, collateral estoppel or law of the case from asserting any defenses. The Court held a hearing on these discovery issues on November 7, 2014 and ordered the parties to submit briefing on this issue. Individual Defendants submit this brief in compliance with this order.

## III.    ARGUMENT

Capitol contends that the doctrines of *res judicata* (claim preclusion), collateral estoppel (issue preclusion), and law of the case each apply to bar the Individual Defendants from litigating – and seeking discovery on – defenses that ReDigi could have raised prior to Capitol adding the Individual Defendants to the action.[15] Pizzirusso Decl., Ex. 12. As explained below, "the principles of *res judicata*, as well as the doctrine[] of collateral estoppel . . . are not applicable" where "the original determination and the determination upon a rehearing [arose] from the same proceeding." *Quatraro v. Vill. of Kenmore Zoning Bd. of Appeals,* 716 N.Y.S.2d 508, 509 (4th Dep't 2000) (applying New York law) (citations omitted);[16] *see c.f.*, *Arizona v. California,* 460 U.S. 605, 619 (1983) (observing that the law "is clear that *res judicata* and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to

---

or could have raised in the partial summary judgment motion papers.

[15] The Court has not decided at least 20 defenses raised by the Individual Defendants, including DMCA, the essential step defense, unclean hands, waiver, innocent intent, and laches. This Court explicitly stated that it was not considering the essential step and DMCA defenses in its partial summary judgment order. *See* Mem. and Order, ECF No. 109 at n.4.

[16] "[T]here is no discernible difference between federal and New York law concerning *res judicata* and collateral estoppel." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002); *see also Pike v. Freeman,* 266 F.3d 78, 91 n.14 (2d Cir. 2001) ("[T]here appears to be no significant difference between New York preclusion law and federal preclusion law. . . .").

correct or modify its judgment"). And as to law of the case, this doctrine only applies to issues

actually decided by the Court in the partial summary judgment order: fair use on the download

incident to sale and the first sale doctrine. Moreover, Capitol's argument, if accepted, raises

serious due process concerns, ensuring that the Individual Defendants would have no ability to

defend themselves from the accusations in the complaint. *See* Part III-D, *infra*.

Capitol's position should therefore be rejected, and Individual Defendants should be

permitted to assert, seek discovery, and litigate, all defenses for which they have a good faith

basis to pursue that this Court has not already decided.

### A.  *Res Judicata* **Does Not Apply.**

Putting aside the fact that "the discovery process is an inappropriate place to assess

[Capitol's] substantive arguments that some of [Individual Defendants'] [defenses] are barred by

*res judicata*," *Netherby Ltd. v. Jones Apparel Grp., Inc.*, No. 04 Civ. 7028, 2005 WL 1214345, at

*1 (S.D.N.Y. May 18, 2005), the doctrine is clearly inapplicable here. As the Second Circuit has

explained, "[t]he doctrine of *res judicata,* or claim preclusion, holds that 'a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in [a prior] action.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d

275, 284-85 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 (1980); *Burgos v.

Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994)). "*Res judicata* applies when: (1) the previous action

involved an adjudication on the merits; (2) the previous action involved the same parties or those

in privity with them; and (3) the claims asserted in the subsequent action were, or could have

been, raised in the prior action." *Hudson v. Universal Studios Inc.*, 235 F. App'x 788, 790 (2d

Cir. 2007) (citing *Monahan*, 214 F.3d at 285).

As the above makes clear, "[r]es judicata does not speak to direct attacks in the same

case, but rather has application in subsequent actions." *Rezzonico v. H & R Block, Inc.*, 182 F.3d

144, 148 (2d Cir. 1999).[17] For instance, *In re Teltronics Servs., Inc.*, a case repeatedly cited by Capitol (albeit incorrectly for collateral estoppel), begins by noting that "[t]he facts underlying these consolidated appeals are set forth in the numerous prior determinations in this matter," and citing to no fewer than three district court decisions, a district court decision on rehearing, a Second Circuit opinion affirming the district court, and a denial of *certiorari* by the Supreme Court. 762 F.2d 185, 187 (2d Cir. 1985).[18] The *Teltronics* court then went on to quote the Supreme Court for the fundamental precept that "'[t]he general rule of *res judicata* applies to repetitious suits involving the same cause of action.'" *Id.* at 190 (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948)). Similarly, *Kreager v. General Electric Co.*, another case repeated relied upon by Capitol (again incorrectly for collateral estoppel), begins by noting that the appeal involved the dismissal of one action and the filing, on the same day as the dismissal of the prior action, of "a second action [that] asserted essentially the identical claims as those in the action dismissed earlier that day." 497 F.2d 468, 470 (2d Cir. 1974). The court, relying on a Second Circuit decision from 1964, stated that one of the requirements of *res judicata* was that "identical issues sought to be raised in the second action must have been decided in the prior action. . . ." *Id.* at 472 (citing *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 955 (2d Cir. 1964), *cert. denied*, 377 U.S. 934 (1964)). Because *res judicata*, by binding Second

---

[17] *In re Hyman*, 335 B.R. 32, 37 (S.D.N.Y. 2005) *aff'd on other grounds,* 502 F.3d 61 (2d Cir. 2007) ("The case law Debtor cites fails to establish the applicability of res judicata to claims adjudicated in the same action, as opposed to those adjudicated in previous actions."); *Moezinia v. Damaghi,* 544 N.Y.S.2d 8, 11 (1st Dep't 1989) (applying New York law and stating that "principles of *res judicata* are inapplicable when . . . the two determinations arise in the same action.").

[18] *Teltronics* cites to the following prior adjudications: *L M Ericsson Telecomms., Inc. v. Teltronics Servs., Inc. (In re Teltronics Servs., Inc.)*, 18 B.R. 705 (E.D.N.Y.1982); *Teltronics Servs., Inc. v. L M Ericsson Telecomms., Inc.*, 486 F. Supp. 836 (S.D.N.Y. 1980), *on reargument*, 491 F. Supp. 538 (S.D.N.Y.1980), *aff'd,* 642 F.2d 31 (2d Cir. 1981), *cert. denied,* 452 U.S. 960 (1981); and *Teltronics Servs., Inc. v. L M Ericsson Tel. Co.,* No. 79 Civ. 1233, slip op. (S.D.N.Y. May 9, 1979).

Circuit precedent, only applies in *later* suits and this is the *same* suit, *res judicata* does not apply to bar the Individual Defendants from asserting any of their anticipated defenses.[19]

Under binding Second Circuit precedent, because *res judicata* does not apply in the same action (as is the case here), Individual Defendants are not barred by this doctrine from asserting, obtaining discovery on, and litigating *any* of the defenses ReDigi could have raised in the partial summary judgment briefing.

### B.      Collateral Estoppel Does Not Apply

For the same reason, collateral estoppel does not bar the Individual Defendants from asserting any defense ReDigi could have asserted at the partial summary judgment stage of this litigation. As the Second Circuit explained in *Monahan*, "collateral estoppel, or issue preclusion, . . . 'bars a party from relitigating *in a second proceeding* an issue of fact or law that was litigated and actually decided in a prior proceeding if that party had a full and fair opportunity to litigate the issue in the prior proceeding . . . .'" 214 F.3d at 284 n.5 (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), *cert. denied*, 508 U.S. 952 (1993)) (emphasis added).[20] That is, just as is the case with *res judicata*, collateral estoppel has no application in the *same action*. *See Holzsager v. Valley Hosp.*, 482 F. Supp. 629, 633 (S.D.N.Y. 1979) ("But this is not a subsequent action; it is the same action, and neither *res judicata* nor collateral estoppel has any application here.").

As the Second Circuit made clear, a party must meet four requirements for a court to invoke collateral estoppel: "(1) the identical issue was raised in a previous proceeding; (2) the

---

[19] It is not clear what might have happened had Capitol decided to file a separate action against Individual Defendants, but that is of no moment − Capitol chose not to do so for strategic reasons that have not been revealed. Capitol has to live with the consequences of its legal strategy.

[20] *See also Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 202 n.7 (2d Cir. 2001) (applying New York law for the same).

issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 514 (S.D.N.Y. 2004) (quoting *Cent. Hudson Gas & Elec. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir. 1995)).[21] This doctrine is inapplicable for failure to satisfy two requirements: the lack of a prior proceeding and the lack of the issues actually being litigated and decided.

The lack of a prior proceeding is self-evident. And *Moran* – the only collateral estoppel case on which Capitol relies in its letters – does not alter the "prior-proceeding requirement" or somehow make collateral estoppel applicable here. There, the court explicitly discussed the prior proceeding: a New York state court that proceeded to a judgment as to some of the same issues sought to be litigated in federal court. 346 F. Supp. 2d at 514. The court determined that the parties were barred from re-litigating the issues actually determined by the state court but could litigate those issues which the state court did not reach. *Id*. at 515. Here, there is no subsequent proceeding, and as such, collateral estoppel does not apply.

The law is equally clear that partial summary judgment orders in and of themselves are ***not*** final judgments for collateral estoppel purposes. Rather, there must be a "prior adjudication of an issue ***in another action*** that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982) (emphasis added). Whether a prior judgment is "sufficiently final" depends on "such factors as the nature of the decision (i.e. that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review."

---

[21] *See also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes,* 337 F.3d 253, 258 n.5 (2d Cir. 2003)).

15

*Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir.1961).[22] The opportunity

for review is paramount, as it ensures "'the quality of decisions offered as a basis for

preclusion."' *Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 59 (2d Cir. 1994)

(quoting 8 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice &*

*Procedure* § 4432 at 299 (1981)). Thus, partial summary judgment orders that are not rendered

in a prior action and do not become final – that is, appealable – generally do not have preclusive

effect. *See Vardon Golf Co. v. Karsten Mfg. Corp.*, 294 F.3d 1330, 1333-34 (Fed. Cir. 2002)

(applying Seventh Circuit case law and vacating the dismissal of patent infringement claims

based on the collateral estoppel affect of a partial summary judgment order in a prior suit

because, in part, the partial summary judgment order was interlocutory and never certified under

Rule 54(b); *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1270 (5th Cir. 1986)

("We have likewise throughout the years on several occasions recognized that such partial

summary judgment orders lack the finality necessary for preclusion.") (citing cases).[23]

Consequently, the Court's prior partial summary judgment order has no preclusive effect as to

the Individual Defendants.

   Indeed, Capitol has yet to provide this Court with a case in which collateral estoppel

effect was given to a partial summary judgment order (let alone any order) rendered in the same

action. Each case Capitol has cited in its letter to the Court affirms Individual Defendants'

position. For instance, in *Creed Taylor, Inc. v. CBS, Inc.*, the court gave preclusive effect to a

partial summary judgment entered in a ***prior state court action*** involving the same parties. 718 F.

---

[22] *See also Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2d Cir. 1992) (listing the
same).

[23] *See c.f.*, *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (concluding that a
partial summary judgment order that determined a party's liability but reserved damages issues
was not "final" under 28 U.S.C. § 1291 and not certifiable under Rule 54(b)); *Novick v. AXA*
*Network, LLC,* 642 F.3d 304, 314 (2d Cir. 2011) (holding that a partial summary judgment order
is an interlocutory decision).

Supp. 1171, 1176-78 (S.D.N.Y. 1989) (discussing the collateral estoppel effect to be given to the partial summary judgment order rendered in *CBS Inc. v. Creed Taylor et al.,* No. 17421/83, slip op. at 8 (N.Y. Sup. Ct. Oct. 15, 1984)).[24]

In any event, even if collateral estoppel were to apply, it would only bar those issues actually decided by the Court in the partial summary judgment order: fair use and first sale. Put differently, Individual Defendants are permitted to assert and obtain discovery on their other defenses, including DMCA and essential step. *See PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (reversing district court order barring a party from obtaining discovery under collateral estoppel, finding that the party "must be allowed discovery to collect evidence which might support a finding" that collateral estoppel should not have been invoked); *Perez v. Nationwide Mut. Fire Ins. Co.*, No. 01 Civ. 2135, 2001 WL 716924 (S.D.N.Y. June 25, 2001) (rejecting the plaintiff's collateral estoppel argument that the defendant was barred from making certain arguments as to "issues not actually litigated," and holding that the defendant was "necessarily entitled to discovery on [these] issues" reasoning that "[b]ecause [the defendant] has raised . . . defenses that have not been litigated previously, and because this Court has not yet ruled on any waiver argument that may preclude certain defenses, [the defendant] must be

---

[24] *See also U.S. Dep't of Justice v. Hudson*, No. 1:06-CV-763, 2007 WL 2461783, at *1 (N.D.N.Y. Aug. 24, 2007) *opinion vacated in part on reh'g sub nom. U.S. Dep't of Justice, Tax Div. v. Hudson*, No. 1:06-CV-763 FJS, 2009 WL 7172812 (N.D.N.Y. July 8, 2009) (deciding the preclusive effect to be given to a partial summary judgment order in *Hudson v. IRS,* 1:03-CV-172 (N.D.N.Y. Mar. 25, 2004); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 722 F. Supp. 998, 1006 (S.D.N.Y. 1989) (considering the collateral estoppel effect to be given to the "a decision rendered in *Jacobson v. John Hancock Mut Life Ins. Co.,* Civ. No. N-84-663 (PCD): Ruling on Motion for Summary Judgment, 655 F. Supp. 1290 (D. Conn.), *judgment withdrawn and vacated pursuant to settlement,* 662 F. Supp. 1103, 1112-13 (1987)") *aff'd in part, rev'd in part sub nom. Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138 (2d Cir. 1992) *aff'd sub nom. John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86 (1993).

allowed to take discovery" on these defenses).[25]

In short, collateral estoppel does not operate to bar Individual Defendants from asserting and seeking discovery at all, but particularly as to defenses which the Court has not actually decided.

## C.    Law of the Case Does Not Apply.

"Under the law-of-the-case doctrine, once a court has ruled on an issue, that decision generally should be adhered to in subsequent stages of the same action, unless cogent or compelling reasons militate otherwise." *Semple v. Eyeblaster, Inc.*, No. 08 Civ. 9004, 2009 WL 1748062, at *2 (S.D.N.Y. June 19, 2009) (citing *United States v. Crowley,* 318 F.3d 401, 420 (2d Cir. 2003). Even though this is the ***only*** doctrine that would arguably apply in the same action, Capitol has repeatedly failed to point this Court to a single law of the case decision, let alone one that supports its position. *See Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) ("The doctrine of law of the case is similar to the issue preclusion prong of *res judicata* in that it limits relitigation of an issue once it has been decided. However, law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. *Res judicata* does not speak to direct attacks in the same case, but rather has application in subsequent actions.").

Indeed, the law of the case doctrine, like collateral estoppel, only serves to bar re-litigation of issues actually decided by the Court. *See Quern v. Jordan*, 440 U.S. 332, 348 n.18 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously

---

[25] *See, c.f., Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 95 (S.D.N.Y. 2002) ("Clearly, a party has a right to conduct discovery on the claims brought against it, even if it already has some information on such claims") (citing *Devlin v. Scardelletti*, 536 U.S. 1 (2002)).

determined.") (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895)).[26] For instance, in a recent Second Circuit decision, the court concluded that the law of the case doctrine did not apply to an issue that was not "squarely presented" to the court. *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 44 (2d Cir. 2005). Similarly, the doctrine does not apply to issues explicitly left open by the court, such as was the case here. *See McNabb v. Riley*, 29 F.3d 1303, 1305 (8th Cir. 1994) (finding that an issue explicitly left open was "not part of the law of the case . . . .").

Because Individual Defendants are seeking only to assert, obtain discovery on, and litigate defenses not actually decided by the Court, the law of the case doctrine also does not apply.[27]

### D.   Denying Individual Defendants Discovery and to Dispute their Liability Would Violate Their Due Process Rights.

While the Individual Defendants should have never been added to this action in the first instance,[28] if this Court accepts Capitol's position and denies Individual Defendants' the ability

---

[26] *See also Arizona*, 460 U.S. at 618; *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7-8 (2d Cir. 1996).

[27] In any event, this doctrine is discretionary, and courts have refused to invoke it where new discovery has been sought or obtained such that the "interests of justice militated against [blind] application of the law of the case doctrine." *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d 197, 243 (N.D.N.Y. 2004). Such interests are present here inasmuch as Individual Defendants' due process rights would be violated if Capitol's argument were accepted. *See* Part III-D, *infra*.

[28] *See generally Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) ("We are particularly likely to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment.") (citing cases); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (finding that the district court did not abuse its discretion in denying a motion to amend when "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01 Civ. 11295, 2004 WL 169746, at *2-3 (S.D.N.Y. Jan. 28, 2004) (denying the plaintiffs an opportunity to replead their complaint to add individual corporate defendants because of concern of the corporate defendant's ability to pay any judgment against it as unduly prejudicial, reasoning that "[t]he factual possibility that a corporate defendant will not be able to satisfy a money judgment attends every litigation" and

to also contest their liability through meaningful discovery, the Court will have both violated Federal Rule of Civil Procedure 15 and the Individual Defendants' due process rights. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000).

In *Nelson*, the plaintiff-corporation sued the defendant-corporation for patent infringement. *Id*. at 462. The district court dismissed the case and ordered the plaintiff to pay the defendant's costs and attorney fees. *Id*. Fearing that the plaintiff "might be unable to pay the fee award," the defendant "sought a means to recover from . . . [the] president and sole shareholder of [the plaintiff], in his individual capacity" by moving to amend the pleading to add the president to the action under Federal Rule of Civil Procedure 15. *Id* at 462-63. In support of this motion, the defendant argued that the president "was the flesh-and-blood party behind [the plaintiff], the person whose conduct . . . precipitated the fee award, and a person with funds sufficient to satisfy that award." *Id*. at 463.

The district court granted this motion and also simultaneously amended the judgment to subject the president "to liability as soon as he was made a party . . ."*Id* at 464. The Federal Circuit affirmed, reasoning that although adding a party after entry of a judgment was "uncommon," that the president "had not been prejudiced by the postjudgment joinder" because he had failed to show that "'anything different or additional would have been done' to stave off the judgment had [the president] been a party, in his individual capacity, from the outset of the litigation." *Id*. (quoting *Ohio Cellular Prods. Corp. v. Adams USA, Inc.,* 175 F.3d 1343, 1351 (1999)).

The Supreme Court reversed, finding that the district court had violated the president's due process rights (as well as Rules 15 and 12) by adding him to the action and denying him the

---

"the theory for relief against the proposed defendants that plaintiffs advocate for was known to them at the time they filed their initial and first amended complaints.").

"opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him." *Id*. at 463. The Supreme Court explained that "[t]he Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees," *id*. at 465, and that "[t]he propriety of allowing a pleading alteration depends not only on the state of affairs prior to amendment *but also on what happens afterwards*." *Id* at 461. (emphasis added). Because the president had been denied an opportunity to respond and be heard regarding his liability, his due process rights had been violated. *Id*.[29]

Capitol's argument, if accepted by this Court, would have the same effect on the Individual Defendants as the district court's actions in *Nelson* had on the corporation's president: Individual Defendants would be barred from developing defenses and litigating their liability. And because the Individual Defendants are only liable, if at all, by virtue of ReDigi's liability, Individual Defendants have the right to raise, obtain discovery, and litigate at least those defenses pertaining to ReDigi's liability that the Court has not actually decided (*i.e.*, the DMCA defense). Due process requires that new defendants to an action – even those allegedly in privity with prior defendants – be given the opportunity to respond and contest their personal liability and because Capitol's argument seeks to deprive the Individual Defendants of that opportunity, if

---

[29] *See also Flynn v. Best Buy Auto Sales*, 218 F.R.D. 94, 97 (E.D. Pa. 2003) (denying leave to amend individual defendants to an action after a default judgment had been entered because "the addition of these parties would be constitutionally suspect in relation to the due process rights of these individuals"); *Eugene v. 3Don & Partner Estate Grp., LLC*, No. 07-80439-CIV, 2009 WL 1810735, at *4 (S.D. Fla. June 24, 2009) ("Plaintiff does not merely seek to amend the complaint by adding a new party and proceed with the litigation. Rather, Plaintiff seeks to amend the complaint to add a new defendant, simultaneously expose him to a money judgment months after the judgment has been entered, and enjoin him from transferring real property without allowing the newly added defendant any chance to contest liability or any other issue. . . . Granting Plaintiff's motion under the present circumstances would not only violate Rule 15, but would also violate the basic requirements of due process.") (citations omitted); *H.R. Bushman & Son, Corp. v. Spud Packers, Inc.*, No. 4:06CV1638, 2008 WL 625023, at *2 (E.D. Mo. Mar. 4, 2008) ("If the amendment were allowed at this point due process would require that the trial be postponed, that the new parties be properly served under Rule 4, and that they be given an opportunity for discovery.").

the Court were to accept Capitol's argument, the Individual Defendants' due process rights would be violated.[30] Thus, the Court should permit the Individual Defendants' the right to assert and ability to obtain discovery as to any defense on which they have a good-faith basis to assert.[31]

### E.      The Discovery Requests At Issue Are Appropriate.

Because *res judicata*, collateral estoppel, and law of the case do not bar Individual Defendants from seeking discovery on defenses not actually decided by the Court, Individual Defendants are permitted to seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery under Rule 26 is broad. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (holding that "relevant" for the purposes of Rule 26(b) means "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). As demonstrated below, the requests in issue more than meet this standard, and therefore, the Court should compel Capitol to respond.

#### 1.      *Requests for Production Numbers 10, 17, & 18*

Requests for Production 10, 17, and 18 seek information related to Capitol's plans to

---

[30] *See c.f.*, *Benavidez v. Piramides Mayas Inc.*, No. 09 Civ. 5076, 2013 WL 2357527, at *4 (S.D.N.Y. May 24, 2013) (denying a motion for reconsideration of an order vacating a partial summary judgment order in conjunction with the filing of an amended complaint because not vacating the partial summary judgment order would have resulted in manifest injustice on the defendant inasmuch as the defendant "would be prejudiced if the partial summary judgment order, imposing liability on him based on the prior complaints, remained in effect, while at the same time, the amended complaints, which he would be entitled to answer, were permitted to go forward.").

[31] Even if the Court is disinclined to believe that the Individual Defendants' due process rights would be violated if they are denied the right to pursue their asserted defenses, their requested discovery is nonetheless appropriate because neither res judicata, collateral estoppel, nor law of the case preclude them from asserting, seeking discovery, and litigating defenses not actually decided by the Court in the partial summary judgment order. *See supra*.

develop its own ReDigi-like service for the resale of digital music.[32] Capitol objected to these requests "on the grounds that [they] [are] vague and ambiguous, overbroad and unduly burdensome and seek[] documents which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."

These requests are relevant, in part, as to the amount of actual damages suffered by Capitol inasmuch as Capitol's own projections on the amount of money they stood to make (or lose) through the development and/or use of a ReDigi-esque system bears on the amount of damages that ReDigi supposedly inflicted on Capitol (as well as other labels). While it is true that Capitol has purported to elect a statutory damages award in this case, "it is well-settled that the amount of actual damages is one factor that courts take into account when setting statutory damages." *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936, 2010 WL 4720338, at *4 (S.D.N.Y. Nov. 19, 2010) (citing authorities).[33]

### 2. Interrogatory Number 19.

Interrogatory number 19 seeks information related to the amount of money that Capitol contends the Individual Defendants have made through ReDigi.[34] Capitol objected to this

---

[32] Request for Production No. 10 seeks "YOUR POLICY or POLICIES, including drafts thereof, that refer or relate to the use of the PRE-1972 SONGS or the ALLEGEDLY COPYRIGHTED SONGS for DIGITAL EXPLOITATION."

Request for Production No. 17 seeks "All DOCUMENTS relating to YOUR plans or intentions to develop SOFTWARE ARCHITECTURE for reselling of songs originally purchased from DIGITAL CONTENT PROVIDERS."

Request for Production No. 18 seeks "All DOCUMENTS relating to RECORD LABELS' plans or intentions to develop SOFTWARE ARCHITECTURE for reselling of songs originally purchased from DIGITAL CONTENT PROVIDERS."

[33] *See also Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989) ("In making a statutory award, the court may consider the likelihood of profits and losses and may take into account the attitude and conduct of the parties.").

[34] Interrogatory No. 19 asks Capitol to "[s]tate all facts that YOU contend demonstrate that the INDIVIDUAL DEFENDANTS have made money from REDIGI's resale of the ALLEGEDLY COPYRIGHTED SONGS and PRE-1972 SONGS, and IDENTIFY the total

interrogatory "on the grounds that it is vague and ambiguous, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."[35] Capitol's objection lacks merit.

Among other defenses, this interrogatory goes directly to whether Capitol can prove a requisite element – substantial benefit - of its contributory infringement claim against the Individual Defendants. This interrogatory therefore seeks extremely relevant information from Capitol, and the Court should compel Capitol's response. *See Smith v. Cafe Asia*, 256 F.R.D. 247, 251 (D.D.C. 2009) ("Relevance is determined by looking at the elements of plaintiff's claims to see if the information would tend to support or detract from any of those elements.").

## IV.   CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request (1) that the Court permit them to raise, seek discovery, and litigate defenses not already decided by the Court in the partial summary judgment order, and (2) compel Capitol to provide responses to Requests for Production Nos. 10, 17, & 18 and Interrogatory No. 19. Alternatively, the Court should dismiss the Individual Defendants from this action, with prejudice, so as to permit this action to proceed in a timely manner against ReDigi alone.

///
///
///
///
///

---

amount of money YOU contend the INDIVIDUAL DEFENDANTS have made from REDIGI's resale of the ALLEGEDLY COPYRIGHTED SONGS and PRE-1972 SONGS, including through any COMPENSATION that YOU contend the INDIVIDUAL DEFENDANTS have received from REDIGI.

[35] Capitol continued: "Capitol further objects to this interrogatory on the grounds that it seeks information which is exclusively within the possession, custody or control of ReDigi, Ossenmacher and/or Rudolph. Moreover, as majority owners of ReDigi, Ossenmacher and Rudolph were in a position to benefit from the commissions earned from resale of Capitol's recordings."

Dated: December 5, 2014

/s/ James J. Pizzirusso
_____

James J. Pizzirusso (*pro hac vice*)
Seth R. Gassman (SG-8116)
Nathaniel C. Giddings (*pro hac vice*)
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, D.C. 20006
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com
ngiddings@hausfeldllp.com

*Counsel for John Ossenmacher & Larry Rudolph*