```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
CAPITOL RECORDS, LLC, CAPITOL            :    12 Civ. 0095 (RJS)
CHRISTIAN MUSIC GROUP, INC. and
VIRGIN RECORDS IR HOLDINGS, INC.,        :

                                         :
                  Plaintiffs,
                                         :
      -against-
                                         :
REDIGI INC., JOHN OSSENMACHER and
LARRY RUDOLPH a/k/a LAWRENCE S.          :
ROGEL,
                                         :
                  Defendants.
------------------------------------------------------------- X
```

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' PRETRIAL MEMORANDUM

COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

Attorneys for Plaintiffs Capitol Records, LLC,
Christian Music Group, Inc. and Virgin Records IR
Holdings, Inc.

29503/003/2041353.1

Pursuant to the Court's order of October 13, 2015 (Docket No. 177) and Rule 4, E, ii of the Court's individual rules and practices, Plaintiffs respectfully submit this opposition to the legal arguments set forth in Defendants' Pretrial Memorandum.

## I.  Plaintiffs Have Proved Ownership of the Recordings at Issue

As set forth in Plaintiffs' motions *in limine* (Docket No. 195 at 11-14; Docket No. 196), Plaintiffs have established ownership for the recordings at issue, including by explaining and documenting any transfers of ownership from, or corporate changes to, entities that are named in the certificates of registration. Unable to rebut such evidence, Defendants now speculate that the rights to prosecute the causes of action at issue have been assigned away to other entities that later acquired copyrights to some of the recordings at issue.

The long recognized "general rule is that for infringements that occur prior to assignment, it is the assignor and not the assignee who has standing to sue for that infringement." *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317 (S.D.N.Y. 1996). As the Second Circuit explained in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991):

> The legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of its ownership. 17 U.S.C. § 501(b). Thus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them.

*Id.* at 980. *See also Skor-More Prods, Inc. v. Sears, Roebuck & Co.*, 1982 WL 1264, at *3 (S.D.N.Y. May 12, 1982) ("assignment of copyright does not convey existing causes of action for infringement unless expressly included" or part of a comprehensive and unrestricted sale of all assets); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 12.02[C], at 12-66.25 to 12-66.27 (Rev. Ed. 2015).

There is no evidence that Plaintiffs transferred the right to sue for past infringements to any entities, and in point of fact any copyrights that have been assigned did not include the right to sue for accrued infringements. Accordingly, Plaintiffs retain the right to sue for each of the recordings at issue in this case.

## II. Defendants Ignore The Court's Holding That Uploading to the ReDigi Cloud For Purposes of Resale Violates the Reproduction Right Without Any Fair Use Defense

There is a basic fallacy underlying much of Defendants' Pretrial Memorandum. Defendants stubbornly refuse to acknowledge the clear import of the Court's summary judgment ruling that tracks uploaded to the ReDigi cloud for purposes of sale violated Plaintiffs' exclusive right of reproduction, regardless of whether those tracks were ultimately sold to an investigator or to anyone else. Defendants have been repeatedly reminded that the Court's "whole opinion" was predicated on reproduction (Docket No. 116 at 2-3), and that "Plaintiffs may introduce evidence about recordings that were uploaded to the ReDigi server and offered for sale" (Docket No. 186). Defendants nevertheless cling illogically to a theory that an infringing reproduction requires a subsequent distribution. It does not, as the Court has now made clear multiple times.

The Court's summary judgment opinion separately discusses and analyzes the reproduction and distribution rights as different infringing acts. The Court first held that "the reproduction right is necessarily implicated when a copyrighted work is embodied in a new material object," as in the case of a music file transferred to a remote server over the Internet. *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 649-50 (S.D.N.Y. 2013). The Court next concluded "sales occurred on ReDigi's website," constituting infringing distribution. *Id.* at 651. There is no suggestion, express or implied, that a consummated sale (*i.e.*, distribution) is a prerequisite to an infringing reproduction, and there would have been no need to analyze them separately if they were mutually dependent rights, which they clearly are not.

2

Likewise, when the Court disposed of ReDigi's fair use defense, it made clear that the defense shielded neither infringing reproductions nor distributions: "[T]he Court has little difficulty concluding that ReDigi's reproduction and distribution of Capitol's copyrighted works falls well outside the fair use defense." *Id.* at 653. Obviously, had the Court meant that ReDigi retained some aspect of a fair use or any other affirmative defense, it would not have held in such definitive terms that, as a matter of law, ReDigi had no defense to its infringement of either the reproduction or distribution rights.

Defendants nevertheless maintain that the defense survives for the category of tracks offered for sale but not sold. Beyond ignoring the basic distinction between reproduction and distribution, Defendants insist that Plaintiffs' failure to challenge pure file storage implicitly conceded that anything short of a consummated sale is fair use. That argument is a quintessential red herring. Once an uploaded file is offered for sale, it takes on a very different dimension; in fair use terms, the "purpose and character of the use" becomes plainly commercial, as both sellers and ReDigi are now in the role of profit-seeking merchants. In like fashion, once a track is offered for sale, it has an immediate "effect of the use upon the potential market," as it supplants potential sales of new, full-priced sound recordings. *Id.* at 653-64. Both of these features apply regardless of whether any ultimate sale takes place, and neither applies in the case of mere file storage for personal use.[1]

ReDigi's subsidiary suggestion that the Court's reference to uploads "incident to sale" means that an actual sale must have taken place likewise runs counter to the entire thrust of the

---

[1] For similar reasons, Defendants' purported "license" defense is without merit, as there is no basis on which to argue that any purported license would include the right to sell copies of a purchased recording. Moreover, as set out in Plaintiffs' *in limine* motions, any "license" defense has been waived. *See* Docket No. 195 at 9-10; *see also* Docket No. 175 (holding any defenses not asserted by ReDigi to be waived by individual defendants).

3

Court's decision. In context, as respects the reproduction right, "incident to sale" can only mean "for purposes of" sale, or the entire discussion of the reproduction right would have been superfluous. Indeed, throughout the conduct of this case, the parties have fully understood the distinction. Defendants produced separate charts (now trial exhibits) segregating tracks only stored in the cloud, tracks offered for sale, and tracks actually sold. Based on this information, Plaintiffs sought and received leave to amend their complaint to include both tracks offered for sale and those ultimately sold (but not tracks that were only stored). As noted above, the Court also recently confirmed that Plaintiffs may seek damages for tracks "uploaded to the ReDigi server and offered for sale" (Docket No. 186). Indeed, it was only during efforts to reach stipulations and prepare joint pretrial filings that Plaintiffs learned that Defendants continue to press this now twice-rejected argument, and to refuse to engage in a process of attempting to stipulate to ownership with respect to any universe extending beyond recordings actually sold (to individuals other than Capitol's paralegal).

Finally, Defendants now posit that the Court's opinion could not possibly cover tracks "uploaded to the Cloud Locker for storage and later offered for sale," as those two "distinct acts" are separately legal and cannot be conflated to make one infringement. Def's Br. at 7-8. But of course, the Court has already held that a reproduction incident to sale enjoys no fair use defense in the first place. Defendants never produced in discovery any evidence whatsoever of any time lag between upload and offer for sale. Their numerous charts identify only when tracks were offered for sale, and not when they were originally uploaded, so Defendants have produced no evidence in support of this new theory. Regardless, the logic fails anyway, because once the ReDigi user clicks the "offer for sale" button, she deprives herself of any fair use defense. She

4

has gone from the mere personal user to the commercial operator intruding into the market for legitimate sound recordings.

### III. Tracks Purchased By Plaintiffs' Paralegal Were Unlawfully Reproduced Prior to Any Purchase And Also Violate the Distribution Right

Armed with the misunderstanding noted above, Defendants also argue that 134 tracks allegedly purchased by Plaintiffs' paralegal "cannot be unauthorized distributions, reproductions or infringements," because a copyright owner cannot infringe its own copyrights. Def's Br. at 3. For the reasons noted above, the argument is *non-sequitur*. Files uploaded and offered for sale infringed the reproduction right, without regard to whether such files were ultimately purchased. The tracks purchased by Plaintiffs' paralegal had already been infringed – unlawfully copied to the cloud – before any such purchase. They are thus infringing reproductions, subject to statutory damages .

Moreover, even as respects the separate distribution right, ReDigi is simply wrong that investigative purchases cannot establish infringement. "Courts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work." *Arista Records LLC v. Lime Group LLC*, 2011 U.S. Dist. LEXIS 35362 (S.D.N.Y. March 29, 2011).[2] *See also Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994) (defendant infringed by copying works for plaintiff's agent); *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460, 467 (W.D. Pa. 2010) (downloads by investigator "establish[ed] unauthorized distribution as to those nine recordings"); *Arista Records, LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149-150 n. 16 (S.D.N.Y. 2009) ("Courts

---

[2]Although Lexis shows the parallel Westlaw citation to the *Arista* case as 2011 WL 1226277, that citation does not appear to be the same decision to which Plaintiffs are citing. Plaintiffs enclose a copy of the Lexis cited decision with their courtesy copy of this document for the Court's convenience.

5

routinely base findings of infringement on the actions of plaintiff's investigators") (collecting cases); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1216 (D. Minn. 2008) (distribution to investigator based infringement claim), *vacated on other grounds*, 692 F.2d 899 (8th Cir. 2012); *Atlantic Recording Corp. v. Howell*, 554 F. Supp.2d 976, 985 (D. Ariz. 2008) (investigator downloads basis for infringement because "the recording companies obviously did not intend to license [investigator] to authorize distribution or to reproduce copies of their works;" "investigator's assignment was part of … attempt to stop [Defendant's] infringement, and therefore the 12 copies obtained by [investigator] are unauthorized"); *U2 Home Entm't, Inc. v. Wang*, 482 F. Supp. 2d 314, 317-18 (E.D.N.Y. 2007) (infringement based on rentals of copyrighted works to plaintiff's investigator). Indeed, the challenged distributions could not have been made had Defendants not unlawfully reproduced the tracks in the first place. Plaintiffs' investigations both established these infringing reproductions, and also legitimately proved unlawful distribution to boot.

Finally, Defendants alternatively argue that these purchases establish Plaintiffs' failure to "mitigate" statutory damages. In general, mitigation of damages has no application to copyright statutory damages, which are fixed by statute. *See, e.g., Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2013) ("A copyright plaintiff's exclusive pursuit of statutory damages invalidates a failure-to-mitigate defense"); *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411 , 422 (D.N.J. 2005) (mitigation of damages defense not appropriate where plaintiffs sought only statutory damages). Defendants rely on one case that rejected a mitigation defense on multiple grounds, but allowed defendants to put on purported "mitigation" evidence concerning defendants' "attempts to secure future licensing or otherwise cooperate with plaintiffs regarding future infringement." *See UMG Recordings, Inc. v Escape Media Group, Inc.*, 2015

6

WL 1873098, at *8 (S.D.N.Y. Apr. 23, 2015). That narrow holding – described by its author as a "close call" – has no application here, where the failure to mitigate is nothing more than Plaintiffs' legitimate investigation of conduct found to be infringing.

## IV. Defendants Cannot Rely on Section 504(c)(2) to Reduce Statutory Damages

For the reasons already fully explained in Plaintiffs' *in limine* motions, Defendants cannot rely on 17 U.S.C. 504(c)(2) to reduce the amount of statutory damages based on their alleged innocent intent. See Docket No. 195 at 2-7. Rather than repeat those arguments, Plaintiffs respectfully refer the Court to its prior submission on this point.

Dated: New York, New York
      March 18, 2016

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.

By: _____
Richard S. Mandel
Jonathan Z. King
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

7