UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
CAPITOL RECORDS, LLC, CAPITOL : 12 Civ. 0095 (RJS)
CHRISTIAN MUSIC GROUP, INC. and
VIRGIN RECORDS IR HOLDINGS, INC., :

                Plaintiffs, :

    -against- :

REDIGI INC., JOHN OSSENMACHER and
LARRY RUDOLPH a/k/a LAWRENCE S. :
ROGEL,
                Defendants.
------------------------------------------------------------------ X

## PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTIONS *IN LIMINE*

COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

Attorneys for Plaintiffs Capitol Records, LLC, Christian Music Group, Inc. and Virgin Records IR Holdings, Inc.

Plaintiffs Capitol Records, LLC, Capitol Christian Music Group, Inc. and Virgin Records IR Holdings, Inc. (collectively, "Plaintiffs") submit this reply memorandum in further support of their motions *in limine*.

## I. The Court May Consider Plaintiffs' *In Limine* Motions Even if They Address the Merits of Purported Defenses

Defendants argue that the Court should not consider Plaintiffs' motions *in limine* because they have the effect of adjudicating certain defenses and are thus more akin to summary judgment motions. However, the rules regarding *in limine* motions are not as inflexible as Defendants suggest. *See, e.g., Great Earth Int'l Franchising Corp. v. Milks Development*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) ("While dismissing claims is not the prototypical purpose of a motion in limine, such motions have sometimes been addressed on the merits and have sometimes been construed or converted into motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or motions for summary judgment under Rule 56") (internal quotations omitted); *Fournier v. McCann Erickson*, 242 F. Supp. 2d 318, 334-35 (S.D.N.Y. 2003) (collecting cases on different ways *in limine* motions addressing merits have been treated).

In appropriate circumstances, courts will address the merits of underlying claims, defenses or elements in the context *in limine* motions. *See, e.g., Pepe v. Maklansky*, 67 F. Supp. 2d 186, 187 (S.D.N.Y. 1999) (dismissing claims for intentional infliction of emotional distress and punitive damages on in limine motion); *Wright v. Kelly*, 1998 WL 912026, at *2 (W.D.N.Y. Oct. 16, 1998) (dismissing claims on *in limine* motion); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, 1998 WL 665138, at *2-3 (S.D.N.Y. Sept. 25, 1998) (dismissing claims for punitive damages on motion *in limine*). Indeed, as even the *Pavone v. Puglisi* case relied on by Defendants recognizes, courts presumably proceed in such a manner where "they have concluded that a ruling *in limine* is the most effective way to resolve a particular issue." 2013

WL 245745, at *2 (S.D.N.Y. Jan. 23, 2013). *See also Fournier*, 242 F. Supp. 2d at 335 ("For purposes of efficiency, this court will address the merits of [plaintiff's] motion").

The present case presents ideal circumstances in which to reach the merits because the Court has already issued a summary judgment ruling that disposes of many of the issues Defendants seek to raise. With respect to Defendants' various affirmative defenses, a new summary judgment motion with new evidence or 56.1 statements would be entirely superfluous. The Court need only have reference to its own prior decision, which constitutes law of the case, to determine that there is no possible legal basis for a fair use or license defense. *See, e.g., In re Worldcom, Inc.*, 386 B.R. 496, 505 (Bankr. S.D.N.Y. April 30, 2008) (precluding evidence under law of the case where it constituted attempt to reargue positions already disposed of by summary judgment). Likewise, as discussed in further detail in Point II below, the Court's summary judgment opinion also disposes of any possible innocent infringement defense and in fact mandates a finding of willfulness. There is nothing left for a jury to decide on these various points under the Court's prior ruling.

With respect to ownership, the prior procedural history, which is set forth in the accompanying Mandel Reply Declaration, fully supports reaching the merits of that issue. Defendants represented to the Court on multiple occasions that they would attempt to stipulate to a universe of recordings for which ownership was not in dispute in an effort to streamline the presentation of evidence at trial. Mandel Reply Decl. ¶¶ 5-6. However, in the end, they instead adopted an unsupportable view of the Court's prior summary judgment ruling as being limited only to recordings actually sold in a ploy to limit Defendants' potential exposure. *Id.* ¶ 7. Because Defendants have thus far refused to engage on the question of ownership unless Plaintiffs limit their claims to a far narrower group of recordings than are fairly encompassed by

2

the Court's prior summary judgment ruling, substantial amounts of trial time will end up being wasted on issues that should not fairly be subject to dispute unless the Court takes up the issue of ownership before trial. Inasmuch as the entire practice of *in limine* motions "has developed pursuant to the district court's inherent authority to manage the course of trials," see *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984), the Court should here exercise such inherent authority to ensure the efficient management of the trial by considering Plaintiffs' *in limine* motion on ownership and allowing the jury to focus on issues that are truly in dispute.

**II.      The Court's Summary Judgment Ruling as to ReDigi's Constructive Knowledge Establishes Willfulness and Eliminates any Innocence Defense**

As a necessary predicate to finding contributory infringement as a matter of law, this Court held that it "has little difficulty concluding that ReDigi knew or should have known that its service would encourage infringement." In order to disassociate this ruling from the issues of innocence and willfulness for statutory damages, Defendants argue that contributory infringement requires only "objective" knowledge, whereas statutory damages requires consideration only of Defendants' actual "state of mind." See Def's Br. at 5, 7. The reason Defendants cite no case for this false distinction is that it is flatly contradicted by established Second Circuit precedent:

> We have held that for the purpose of awarding enhanced statutory damages under § 504(c)(2), an infringement is "willful" if the defendant had "knowledge that its actions constitute an infringement...." *This knowledge may be "actual or constructive."*

*N.A.S. Import Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (emphasis added; citations omitted). See also *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995) (for purposes of statutory damages, "to show willfulness, Knitwaves was not required to prove Lollytogs' actual knowledge that it was infringing. Knowledge of infringement may be constructive rather than actual"); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110,

3

1115 (2d Cir. 1986) ("Thus, just as the lack of actual or constructive knowledge will establish an innocent intent, so a defendant's actual or constructive knowledge proves willfulness"); *Scafa-Tornabene Art Publ'g Co. v. Pride Prods. Corp.*, 2007 WL 2469453, at *3 (S.D.N.Y. June 04, 2007) (For enhanced statutory damages, "[a]cting 'willfully' means acting with actual or constructive knowledge or 'reckless disregard of the high probability' that one's actions constitute copyright infringement"); *ASA Music Prods. v. Thomsun Electrs.*, 49 U.S.P.Q.2d 1545, 1552 (S.D.N.Y. 1998) ("The increased maximum for statutory damages that is triggered by willfulness applies in this case. Willfulness consists of actual or constructive knowledge that defendants' actions constitute an infringement"). This Court held as a matter of law that ReDigi "knew or should have known" that its conduct encouraged infringement. That finding of, at a minimum, constructive knowledge of infringement, disposes of any innocence defense and establishes conclusively that Defendants are guilty of willful infringement.

### III. There Is No Fair Use Defense Left to Try Under the Court's Summary Judgment Opinion

In trying to salvage a fair use defense rejected three years ago, Defendants argue that the Court's ruling was "not directed" to uploaded tracks "merely offered for sale and never sold," because that "category of works was not part of the Complaint, and thus not at issue, when the summary judgment decision was rendered." Def's Br. at 10. Reference to the original complaint filed at the outset of the case disposes of any such claim:

- "The track 'stored' in and offered to consumers from ReDigi's 'cloud' is necessarily a copy of the user's original file…" (¶ 21).

- "Uploading, by its very nature, can only be accomplished by making an unauthorized copy of the original user's track" (¶ 23).

- "Rather, in violation of Plaintiff's rights of reproduction, ReDigi and its users duplicate digital files both in uploading and downloading discrete copies distinct from the original file that originally resided on a user's computer" (¶36).

4

- "More generally, inspection of ReDigi's website reveals that it is currently offering for 'sale' countless sound recordings owned or controlled by Plaintiff ... A representative list of some of those federally registered, copyrighted sound recordings and the associated artwork is attached as Exhibit A" (¶40).

It is hard to imagine any clearer expression of Capitol's challenge to tracks offered for sale as infringing reproductions, regardless of whether any sale was consummated. And, when the Court held that "[o]n the record before it, the Court has little difficulty concluding that ReDigi's *reproduction and distribution* of Capitol's copyrighted works falls well outside the fair use defense," *Capitol Records LLC v. ReDigi Inc.*, 934 F.Supp. 2d 640, 653 (S.D.N.Y. 2013) (emphasis added), the Court clearly eliminated any lingering argument that fair use protected such infringing reproductions.

Unable to take no for an answer, Defendants revert back to a failed argument they pressed previously by likening tracks offered for sale to those uploaded for only personal use and thus eligible for fair use protection:

> The later "offering for sale" of tracks previously uploaded under the "fair use" exception cannot be an act of infringement ... Indeed, prior to an actual sale being consummated, the only individual with the ability to listen to or download a track is the individual who uploaded the track (i.e., the actual owner of that track). Thus, the only manner in which a track offered for sale may be "used" prior to sale is identical to the manner in which a track not offered for sale may be used.

Def's Br. at 10. This argument is as factually false as it is legally irrelevant. ReDigi stressed on summary judgment that once a track was offered for sale, the seller could no longer download or stream it. *See* Declaration of Larry Rudolph (aka Lawrence S. Rogel) In Support of Defendant's Motion for Summary Judgment (Docket No. 54) ¶33 ("A user may offer one of the songs for sale, in which case it can no longer be downloaded or streamed"). More important, once a track copied to the ReDigi cloud is offered for sale, rather than merely stored, it takes on a commercial purpose that intrudes directly into the marketplace for sound recordings. In disposing of

5

ReDigi's fair use defense, the Court has in fact already rejected this "oblique" argument about "storage and personal use," calling it "a relic of the argument [ReDigi] previously levied that 'copying' to the Cloud Locker is protected as 'space shifting' under the fair use doctrine." *Capitol Records LLC v. ReDigi Inc.*, 934 F.Supp. 2d 640, 653 (2013).

The false distinctions Defendants draw are thrown into relief when ReDigi's marketplace is compared to infringement of physical goods. Imagine the illegal copyist who makes 100 unauthorized copies of CDs he owns, listens to those copies on personal devices for several months, and then brings them to a flea market and offers them for sale. Would any Court excuse his unlawful reproduction because there was a time-lag between the original act of copying and a subsequent offer for sale? Of course not, as the act of trying to sell those copies surely overrides any prior personal use justification. The same logic applies to Defendants, who in any event have not adduced an iota of evidence about any supposed time-lag. Likewise, would fair use immunize any of those unlawful reproductions simply because the copyist did not succeed in selling them? The answer is again negative, as peddling an unlawful copy of a copyrighted work can never be a fair use. ReDigi is no different than the flea market pirate caught with infringing copies on its table, except that ReDigi operates in the digital realm.

Defendants' argument also makes no sense in terms of the practical relief to which copyright owners like Plaintiffs must be entitled. Would Defendants have the Court enjoin only actual consummated sales, but permit Defendants to continue to offer illegal reproductions of Plaintiffs' sound recordings? Such a distinction leads to absurd consequences, whereby merchants could try to sell pirated copies but could never actually consummate those sales. It is for this reason that virtually every injunction against a copyright infringer prohibits both "offering for sale" and "selling" infringing goods.

Defendants have effectively derailed the preparation of this case for trial by clinging to this groundless theory that they have retained the ability to challenge liability at a trial everyone has always understood to be about damages and damages alone. They have cluttered the jury instructions with fair use, proposed a byzantine verdict form that a PhD would have trouble following, and have refused to engage in a process they promised to undertake to reduce disputes about ownership. Plaintiffs respectfully request that this issue of fair use and tracks "offered for sale" be excised from the case, so that the parties can proceed expeditiously to a damages trial.

## IV.   Plaintiffs Have Established Ownership of the Recordings at Issue

Defendants raised one specific challenge to a particular category of works in their response on ownership and another in their Pre-Trial Memorandum. Both are answered in the McMullan Reply Declaration. Because Defendants have not come forward with any other argument or evidence to raise any triable issues on Plaintiffs' ownership of the recordings at issue as of the time of infringement, there is no reason to expend substantial trial time proving ownership in nearly 500 different recordings. If Defendants had any legitimate grounds to dispute Plaintiffs' ownership, surely they would have come forward with them by now rather than instead trying to narrow the universe through failed arguments already rejected by the Court on fair use.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' moving papers, Plaintiffs' motions *in limine* should be granted.

Dated: New York, New York
   March 25, 2016

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.

By: _____
   Richard S. Mandel
   Jonathan Z. King
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

Attorneys for Plaintiffs Capitol Records, LLC, Christian Music Group, Inc. and Virgin Records IR Holdings, Inc.