UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

CAPITOL RECORDS, LLC, CAPITOL          :          12 Civ. 0095 (RJS)
CHRISTIAN MUSIC GROUP, INC. and
VIRGIN RECORDS IR HOLDINGS, INC.,      :

                            Plaintiffs,          :

        -against-                      :

REDIGI INC., JOHN OSSENMACHER and      :
LARRY RUDOLPH a/k/a LAWRENCE S.
ROGEL,                                 :

                            Defendants.
------------------------------------------------------------ X


### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES


COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, New York 10036-6799
(212) 790-9200

Attorneys for Plaintiffs Capitol Records, LLC,
Christian Music Group, Inc. and Virgin Records IR
Holdings, Inc.

## TABLE OF CONTENTS

I.    PROCEDURAL BACKGROUND .................................................................................1

    A.   Commencement of the Instant Litigation ..................................................1

    B.   Pre-Summary Judgment Motion Discovery ..............................................2

    C.   Summary Judgment ...................................................................................3

    D.   Joinder of the Individual Defendants .......................................................4

    E.   Pre-Trial Submissions ...............................................................................8

    F.   Stipulated Final Judgment and Motion for Attorneys' Fees.......................8

    G.   Defendants' Appeal to the Second Circuit and Plaintiffs' Renewed Motion
        for Attorneys' Fees, Including Fees Incurred on Appeal...............................9

II.   THE COPYRIGHT ACT AUTHORIZES THE COURT TO AWARD
    ATTORNEYS' FEES TO THE PREVAILING PARTY .....................................10

III.  UNDER THE NONEXCLUSIVE *FOGERTY* FACTORS, PLAINTIFFS ARE
    PREVAILING PARTIES ENTITLED TO THEIR ATTORNEYS' FEES .........11

    A.   Defendants Asserted Defenses and Adopted Litigating Positions That Were
        Objectively Unreasonable...........................................................................12

    B.   Defendants' Infringement of Plaintiffs' Copyrights Was Willful ..............17

    C.   Considerations of Compensation and Deterrence Support a Fee Award .................20

IV.   PLAINTIFFS STATE THE AMOUNT OF FEES SOUGHT .............................21

CONCLUSION................................................................................................................22

i

Plaintiffs Capitol Records, LLC, Capitol Christian Music Group, Inc. and Virgin Records IR Holdings, Inc. (collectively, "Plaintiffs") respectfully submit this memorandum in support of their motion for attorneys' fees under Section 505 of the Copyright Act, 17 U.S.C. § 505.

# I.    PROCEDURAL BACKGROUND

## A.    Commencement of the Instant Litigation

On January 6, 2012, Plaintiff Capitol Records, LLC ("Capitol") commenced the instant litigation against ReDigi, Inc. ("ReDigi"), asserting claims for direct and secondary copyright infringement based upon ReDigi's operation of a website and online service which invited users to upload their previously purchased digital music files to ReDigi's remote server in order to sell such files to other ReDigi users.  Mandel Decl. ¶ 2; Docket No. 1.  The complaint alleged that ReDigi's operation of the ReDigi website infringed Capitol's copyrights in numerous sound recordings.  Id.

Capitol moved for a preliminary injunction shortly after commencing the litigation. Mandel Decl. ¶ 3.  In opposing the motion, ReDigi conceded that its system "copied" and "deleted" the user's original digital music file before effecting a sale to another user.  Id.  Thus, ReDigi's opposition brief unequivocally acknowledged that copies of Capitol's sound recordings were made during upload to, and download from, the ReDigi cloud:

> The only copying which takes place in the ReDigi service occurs when a a user uploads music files to the ReDigi Cloud, thereby storing copies thereof in the user's personal Cloud Locker, or downloads music files from the user's Cloud Locker, thereby placing copies of the files on his or her computer.

Docket No. 14 at 9.  ReDigi also acknowledged in its answer and in the declaration of Larry Rudolph in opposition to Capitol's preliminary injunction motion that the original file residing on the user's computer was deleted following the upload to the ReDigi server.  See Answer

(Docket No. 6) ¶ 47 ("Upon the upload of an Eligible File to a User's Cloud Locker, <u>such file</u> and all copies thereof residing on the user's computer, and on attached synchronization and storage devices, are deleted therefrom") (emphasis added); Rudolph Declaration in Opposition to Preliminary Injunction Motion (Docket No. 11) ¶ 6 (same).

ReDigi sought to justify its copying by relying on various affirmative defenses, such as fair use and the essential step defense, without ever suggesting that its technology actually operated in such a way as to avoid making a copy.  <u>See</u> ReDigi PI Opp. Br. (Docket No. 14) at 9-14.  Although the Court found that Capitol was likely to succeed on the merits of its infringement claims, it denied a preliminary injunction on the ground that Capitol had not established irreparable harm.  Mandel Decl. ¶ 3; <u>see</u> 2/6/12 Transcript of P.I. Hearing (Docket No. 26).

### B.    Pre-Summary Judgment Motion Discovery

Based on the record developed at the preliminary injunction stage, both sides believed that resolution of the case would likely turn on legal issues rather than any nuances of how ReDigi's technology worked.  Mandel Decl. ¶ 4.  Accordingly, shortly after the preliminary injunction hearing and ruling, they submitted a joint case management plan providing for summary judgment motions to be filed following completion of fact discovery, with any expert disclosures and discovery to be deferred until after resolution of the summary judgment motion:

> The parties both presently contemplate that all or most issues regarding liability can be potentially resolved by summary judgment following completion of fact discovery.  Accordingly, they jointly request that the Court set a schedule for the filing of summary judgment motions following fact discovery and that a schedule for possible expert disclosures and discovery, as well as trial, be deferred until after resolution of the summary judgment motions.

<u>Id.</u>; Docket No. 31.  The Court approved the parties' case management plan on February 15, 2012.  <u>Id.</u>

2

However, during depositions at the end of fact discovery, ReDigi's witnesses sought to backpedal from their prior factual admissions by recasting the upload process as "data migration," in which electronic files are "moved" in "blocks" from one source to another, rather than copied. See Mandel Decl. ¶ 5; Appendix to Mandel Declaration in Support of Motion for Summary Judgment, Rudolph Dep. (Docket No. 52-14) at 57-58, 226-227. Mr. Rudolph claimed first to "disavow" the contrary statement in ReDigi's preliminary injunction brief, while then suggesting perhaps that it was just the "clearest" way of describing ReDigi's "sophisticated" methods. Id. at 76-78. Mr. Rudolph also sought to disavow the statement in ReDigi's patent acknowledging that digital files were first copied before being offered for sale, again urging that ReDigi's upload process involved "data migration" rather than copying. See Plaintiff's Rule 56.1 Statement in Support of Motion for Summary Judgment (Docket No. 50) ¶¶ 27-30; Rudolph Dep. (Docket No. 52-14) at 35, 37, 45, 51-54, 56-57. ReDigi's other witness, Mr. Ossenmacher, disingenuously claimed that the statement in ReDigi's brief admitting copying referenced ReDigi's prior practice of making temporary "archival" copies as back-ups on the user's computer during the upload process. Ossenmacher Dep. (Docket No. 52-14) at 45-46. However, when pressed about the illogic of his explanation, Mr. Ossenmacher could not deny that the statement in the brief – which never references any back-up process – expressly referred to copies stored in the ReDigi cloud. Id. at 52.

### C.     Summary Judgment

In July 2012, following the completion of fact discovery, the parties cross-moved for summary judgment. Mandel Decl. ¶ 6. Although Capitol maintained that ReDigi's revised description of its technology was ultimately irrelevant to resolution of the case, ReDigi's about-face forced Capitol to devote attention in the summary judgment briefing to the argument that

3

ReDigi was bound by its prior judicial admissions. Id.; see Capitol SJ Moving Br. (Docket No. 49) at 7-10, Capitol Reply SJ Moving Br. (Docket No. 87) at 1-4.  In addition, in opposing ReDigi's cross-motion for summary judgment, Capitol was required to engage an expert, Doug Jacobson, to debunk ReDigi's fanciful "data migration" theory.  Mandel Decl. ¶ 6; see Jacobson Decl. (Docket No. 75).  Capitol also incurred unnecessary fees disproving asserted affirmative defenses, such as essential step and DMCA defenses, that ReDigi only abandoned after Capitol was put to the task of briefing them on summary judgment.  Mandel Decl. ¶ 6; see Capitol SJ Moving Br. (Docket No. 49) at 18-20, 23; Summary Judgment Order (Docket No. 109) at 3-4 n.4 (noting defenses abandoned by ReDigi).

On March 30, 2013, the Court granted Capitol's motion for partial summary judgment on the issue of liability and denied ReDigi's cross-motion for summary judgment, holding that ReDigi was liable for direct and secondary copyright infringement and that the affirmative defenses of fair use and first sale did not shield ReDigi from liability.  Mandel Decl. ¶ 7.  In finding ReDigi liable for contributory copyright infringement, the Court held that it had "little difficulty concluding that ReDigi knew or should have known that its service would encourage infringement."  Summary Judgment Order (Docket No. 109) at 15.  Among other facts, ReDigi warned investors that its service might be infringing, received a cease-and-desist letter from the RIAA asserting copyright infringement, knew that copyrighted content was being sold on the website and "understood the likelihood that use of ReDigi's service would result in infringement."  Id.

**D.     Joinder of the Individual Defendants**

After the Court's summary judgment ruling, Capitol sought to amend its complaint to add ReDigi's two principals and founders, John Ossenmacher and Larry Rudolph (collectively, the

4

"Individual Defendants") on the ground that they had been personally involved in the infringing acts and therefore should be held individually liable.[1]  Mandel Decl. ¶ 8.  Capitol also sought to expand the universe of infringed recordings based on discovery identifying the particular Capitol owned tracks that had been sold or offered for sale on the ReDigi site.  Id.; see 8/2/13 letter from Richard Mandel to Court (Docket No. 187).  ReDigi opposed the amendment, arguing that the Court's summary judgment ruling did not extend to recordings offered for sale, but not sold and that the Individual Defendants were not personally liable and should not be added as parties. Mandel Decl. ¶ 8; see 8/7/13 letter from Gary Adelman to Court (Docket No. 187).

The Court held a conference with respect to Capitol's proposed amendment on August 9, 2013 and granted Capitol leave to amend.  Mandel Decl. ¶ 9; see Docket No. 116.  When questioned as to whether the addition of the Individual Defendants would require additional discovery, ReDigi's counsel, Mr. Adelman, indicated he did not believe so.  Id. at 4.  The Court permitted the Individual Defendants to be named, while noting its appreciation for the "candor" of ReDigi's counsel.  Id.  The Court also permitted Capitol to assert claims with respect to recordings that were offered for sale, but not sold.  Explaining that its "whole opinion" on summary judgment was about the reproduction right, the Court agreed with Capitol that recordings that were reproduced and offered for sale on the ReDigi site were "fair game," regardless of whether a subsequent sale could actually be shown to have taken place.  Id. at 2-3. On August 30, 2013, Capitol filed its First Amended Complaint naming the Individual

---

[1]Under the law of this Circuit, a corporate officer who "personally participates" in the infringing activity is personally liable for copyright infringement.  See, e.g., Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 437-38 (S.D.N.Y. 2011).

Defendants as co-defendants and expanding the universe of claimed recordings.[2]  Mandel Decl. ¶

9; see Docket No. 118.

Since the only liability issue that remained to be adjudicated in the case was whether the

Individual Defendants personally participated in the activity already held to be infringing, the

litigation should have reached a conclusion in short order.  However, the Individual Defendants

retained separate counsel and then adopted a scorched earth litigation strategy that repeatedly

sought to derail and unnecessarily delay the resolution of the case.  Despite the fact that the

Individual Defendants were the very people who founded ReDigi, controlled and led it through

each step of the litigation and carried out the activities held infringing in the Court's summary

judgment ruling, they filed a motion to dismiss premised on the notion that the amended pleading

did not fairly put them on notice as to the nature of their wrongful conduct  See Docket Nos.

126, 127.  The motion did not so much as acknowledge the settled standards for their joint and

several liability under the Copyright Act based on their personal participation in the acts at issue.

Mandel Decl. ¶ 11; see n. 1 supra.  When the motion to dismiss was denied (Docket No. 148),

the Individual Defendants moved to reconsider their inevitable loss on that motion by

mischaracterizing both the Court's decision and the basic elements of copyright liability.  Mandel

Decl. ¶ 11; see Docket Nos. 149, 150.  The Court predictably denied that motion as well.  Docket

No. 155.

The Individual Defendants then proceeded to assert some thirty affirmative defenses, the

bulk of which had either been waived or abandoned by ReDigi as groundless or had already been

---

[2]A Second Amended Complaint was filed on October 30, 2014, adding Capitol Christian
Music Group, Inc. and Virgin Records IR Holdings, Inc., the owners of certain infringed
recordings, as additional party plaintiffs.  See Docket No. 161.

decided against ReDigi under the Court's summary judgment opinion.  Mandel Decl. ¶ 12; see

Docket No. 163.  Ignoring the prior acknowledgement of ReDigi's counsel that no further

discovery was needed to adjudicate the Individual Defendants' liability and despite the fact that

ReDigi had itself chosen not to take any damages discovery at all, the Individual Defendants also

served a blizzard of pointless discovery requests ranging from audit reports for music publishing

royalties to generalized demands for all of Plaintiffs' digital "policies" and contracts relating

thereto.  Mandel Decl. ¶ 10 and Ex. A.  Although the Individual Defendants claimed that various

of these requests were somehow related to the new affirmative defenses they wished to assert or

to the damages to be awarded, the Court expressed skepticism at a November 7, 2014 conference

that the discovery was proper even if the affirmative defenses could legally be asserted:

> Look, I think I'm not likely to allow that.  I think the legal question may resolve
> it without me having to do this piecemeal, but I do think at some point we may
> get to the merits of these, and whether this is just designed to inflict pain on the
> other side or whether it is just a fishing expedition or a desire to delay further
> the litigation, so I guess I'm not going to resolve that now, but I'm skeptical.

Mandel Decl. 12 and Ex. B.  Ultimately, the Court ruled on August 27, 2015 that the Individual

Defendants were barred from asserting defenses that ReDigi had itself waived, and accordingly

denied the voluminous discovery sought by the Individual Defendants with respect to such

defenses.  See Docket No. 175.

On November 2, 2015, over *two years* after first being joined in this action, the Individual

Defendants finally agreed to be bound by the Court's summary judgment ruling (subject to an

eventual right of appeal) and stipulated to liability for infringement, thereby clearing the way for

a trial solely on the issue of damages.  Mandel Decl. ¶ 13; Docket No. 178.

### E.     Pre-Trial Submissions

Even after the Individual Defendants stipulated to liability, Defendants continued to resist the import of the Court's summary judgment ruling as the parties engaged in the process of preparing pre-trial submissions.  Despite the Court's summary judgment opinion and the Court's subsequent approval of Capitol's amendment to include recordings offered for sale, Defendants took the position that such recordings were outside the scope of the damages trial.  Mandel Decl. ¶ 14.  The Court rejected Defendant's position in a February 17, 2016 order.  Id.; Docket No. 186.  Undeterred by the Court's ruling, Defendants then asserted that they could maintain defenses such as fair use and implied license with respect to such recordings at trial, needlessly complicating the pre-trial submissions by forcing Plaintiffs to address yet again these "liability" issues in connection with a trial that had long been understood to involve only the question of damages.  Mandel Decl. ¶ 14.

### F.     Stipulated Final Judgment and Motion for Attorneys' Fees

On April 4, 2016, one week before the damages trial was scheduled to commence, the parties advised the Court that a settlement had been reached with respect to the remedy portion of the case.  Mandel Decl. ¶ 15; see Docket No. 211.  On June 3, 2016, the Court endorsed a Stipulated Final Judgment in this case (the "Judgment").  Docket No. 222.  The Judgment sets forth the form of injunction to which the parties agreed, preserves Defendants' right to appeal the Court's prior liability finding on summary judgment and provides in paragraph 4 for stipulated damages to be awarded against Defendants jointly and severally in the amount of three million five hundred thousand dollars ($3,5000,000).  Paragraph 6 of the Judgment provides that Plaintiffs "shall have the right under this Judgment to move for an award of attorneys' fees" up to five hundred thousand dollars.  Following the submission of pre-motion letters concerning

8

Plaintiffs' proposed motion for attorneys' fees and a pre-motion conference on June 29, 2016, the Court ordered Plaintiffs to file their motion seeking attorneys' fees by July 15, 2016.  Docket No. 236.

Plaintiffs filed their motion on July 15, 2016.  Docket Nos. 246-248.  During the pendency of the motion, Defendants ReDigi and Ossenmacher filed for bankruptcy protection, and the Court eventually denied Plaintiffs' attorneys fee motion without prejudice to renewal upon a ruling from the Bankruptcy Court modifying the automatic stay.  Docket No. 266.  The Bankruptcy Court issued orders on November 15, 2016 granting Plaintiffs' motion to modify the automatic stay so as to permit Plaintiffs to pursue their attorneys' fees motion before this Court (Docket No. 268), and this Court granted Plaintiffs' request to renew the attorneys' fee motion and required submission of papers renewing the motion by November 23, 2016.  Docket No. 269.  Plaintiffs filed papers renewing their motion for attorneys' fees on November 23, 2016.  Docket Nos. 270-272.

### G.   Defendants' Appeal to the Second Circuit and Plaintiffs' Renewed Motion for Attorneys' Fees, Including Fees Incurred on Appeal

On June 30, 2016, Defendants filed a Notice of Appeal with respect to the District Court's prior summary judgment ruling in favor of Plaintiffs.  Docket No. 239.  On December 12, 2018, the Second Circuit issued an opinion unanimously affirming the District Court's entry of summary judgment.  Mandel Decl. ¶ 16 and Ex. C.  The Second Circuit issued the mandate on January 2, 2019. Docket No. 314.

Following the Second Circuit's affirmance, this Court issued an order denying without prejudice Plaintiffs' motion for attorneys' fees "[i]n light of the fact that Plaintiffs may wish to supplement their motion for fees to include attorneys' fees incurred on appeal…."  Docket No. 318.  The Court gave Plaintiffs until March 21, 2019 to renew their motion for attorneys' fees.

9

Accordingly, Plaintiffs now bring this motion seeking attorneys' fees, including fees incurred in connection with Defendants' unsuccessful appeal to the Second Circuit.

## II.   THE COPYRIGHT ACT AUTHORIZES THE COURT TO AWARD ATTORNEYS' FEES TO THE PREVAILING PARTY

The Copyright Act expressly provides that the Court may award reasonable attorneys' fees to prevailing parties in copyright actions:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party.... Except as otherwise provided by this title, the court may also award a reasonable attorneys' fee to the prevailing party as part of the costs.

17 U.S.C. § 505.  The decision whether to award attorneys' fees under Section 505 is placed in the Court's sound discretion.  Fogerty v. Fantasy, 510 U.S. 517, 533-34 (1994).  When assessing a fees motion in a copyright case, courts are to consider the following Fogerty factors: "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence."  Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010) (citing Fogerty, 510 U.S. at 534 n.19).   Although nonexclusive, these factors "may be used to guide courts' discretion" and are to be applied in a manner that is "faithful to the purposes of the Copyright Act." Fogerty, 510 U.S. at 534 n.19.

In Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979 (2016), the Supreme Court recently clarified that while the third factor concerning the unreasonableness of the losing party's litigating position should be afforded "substantial weight," it is imperative that the district court "give due consideration to all other circumstances relevant to granting fees."  Id. at 1983.  In finding that the Second Circuit had placed undue emphasis on the third factor, the Supreme Court

underscored that a district court "retains discretion . . . to make an award even when the losing

party advanced a reasonable claim or defense." Id.  The Supreme Court elaborated as follows:

> [O]bjective reasonableness can be only an important factor in assessing fee
> applications—not the controlling one. As we recognized in *Fogerty*, §505 confers
> broad discretion on district courts and, in deciding whether to fee-shift, they must
> take into account a range of considerations beyond the reasonableness of litigating
> positions.... Although objective reasonableness carries significant weight, courts
> must view all the circumstances of a case on their own terms, in light of the
> Copyright Act's essential goals.

Id. at 1998-99.  As the Fogerty Court noted, "[t]he primary objective of the Copyright Act is to

encourage the production of original literary, artistic, and musical expression for the good of the

public." Fogerty, 510 U.S. at 524.

## III.   UNDER THE NONEXCLUSIVE *FOGERTY* FACTORS, PLAINTIFFS ARE PREVAILING PARTIES ENTITLED TO THEIR ATTORNEYS' FEES

Under the Copyright Act, the "prevailing party is one who succeeds on a significant issue

in the litigation that achieves some of the benefits the party sought in bringing suit.'" Warner

Bros., Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1126 (2d Cir. 1989).  Plaintiffs, having

succeeded on their direct and secondary copyright infringement claims on summary judgment,

are clearly prevailing parties.

As set forth more fully below, attorneys' fees are warranted in this case because: (1)

Defendants adopted objectively unreasonable legal and factual positions, which led to wasteful

litigation and an unnecessary increase in Plaintiffs' costs and expenses; (2) Defendants'

infringement of Plaintiffs' copyrighted sound recordings was willful; and (3) a fee award will

vindicate the Copyright Act's dual purposes of compensation and deterrence.

**A.**   **Defendants Asserted Defenses and Adopted Litigating Positions That Were Objectively Unreasonable**

"A defense to a copyright infringement claim is 'objectively unreasonable when the [defense] is clearly without merit or otherwise patently devoid of a legal or factual basis.'" Harrell v. Van Der Plas, 2009 WL 3756327, at *3 (S.D.N.Y. Nov. 9, 2009).  Although not controlling, this factor concerning the unreasonableness of the losing party's litigating positions is still afforded "substantial weight" in the Section 505 analysis.  Kirtsaeng, 118 U.S.P.Q.2d at 1772.

This factor strongly favors a fee award here.  Plaintiffs' argument is not based on the mere fact that the Defendants did not prevail.  Rather, as described above, Defendants chose to defend this case in an objectively unreasonable manner, backpedaling on key factual admissions, variously abandoning and resuscitating pointless defenses and seeking absurd discovery designed only to inflict expense on Plaintiffs.  Defendants' frequent refrain that this case posed "novel" issues of copyright law deliberately skirts the fact that they pursued facially frivolous defenses and engaged in an inexcusable pattern of wasteful litigation conduct whose only purpose was to unnecessarily increase the time and resources expended on this matter.

The parties' preliminary injunction briefs readily defined a narrow set of dispositive legal issues, which were explored in detail in a lengthy oral argument before the Court.  Recognizing that the underlying facts concerning the operation of ReDigi's technology, as described in ReDigi's own preliminary injunction papers, were not in dispute, both sides advised the Court following the preliminary injunction hearing that they believed liability could be decided following a short period of fact discovery, without the need for expert testimony (which would likely have included technology experts).  See p. 2 supra.  However, following a change of counsel, ReDigi apparently had second thoughts about the likely legal impact of its prior

12

admissions concerning the operation of its technology.  Accordingly, Defendants invented a new "data migration" theory, which squarely contradicted statements made in Defendants' prior legal filings, the patent describing ReDigi's technology[3] and on ReDigi's own website.[4]  As the Court observed at the pre-motion conference in connection with this motion, Defendants presumably knew all along what their technology was and that they hadn't really come up with a "Star Trek"-like way of physically moving electronic files through space.[5]  Their insistence to the contrary constituted frivolous, bad faith conduct that needlessly increased the cost of litigation.  See pp. 3-4 supra

Defendants also asserted numerous groundless affirmative defenses that protracted the litigation and increased Plaintiffs' legal fees.  Some of these, such as the DMCA defense and essential step defense, were only abandoned by ReDigi after Capitol's summary judgment moving brief proved them to be groundless.  See p. 4 supra.  Yet remarkably, the Individual Defendants later sought to resuscitate these same frivolous defenses, asserting, for example, that

---

[3] The patent states that for a "digital media object" (elsewhere defined to include music files) "to be offered for sale, it is first copied to the remote server and stored on the disc."  Mandel Moving SJ Decl., Ex. E (Docket No. 52-5) at p. 4, ¶ 71 (emphasis added).  Although Mr. Rudolph claimed at his deposition that the statement did not accurately reflect how ReDigi's service works in practice, his earlier declaration at the preliminary injunction stage specifically touted the fact that ReDigi had applied for a patent to cover the technology being described to the Court.  Docket No. 10 at ¶ 2.

[4] According to ReDigi's own website, the files on the user's computer are deleted when the copy is uploaded to the ReDigi cloud.  See Mandel Moving SJ Decl., Ex. D (Docket No. 52-4) at 1 ("A confirmation display will show you the songs you selected and any copies of those songs located on your computer, all of which will be deleted upon upload to your ReDigi Cloud").

[5] As the Court indicated in its summary judgment opinion, ReDigi's service "was likened to the Star Trek transporter – 'Beam me up, Scotty' – and Willy Wonka's teleportation device, Wonkavision."  Docket No. 109 at 2 n.2.  ReDigi's reliance on such science fiction concepts to describe its service only serves to highlight the frivolous nature of its position.  The desperate attempt to change the obvious facts that it had previously admitted also confirms ReDigi's awareness that its actual conduct was infringing under the governing law.

13

they were somehow entitled to a DMCA defense that ReDigi, an actual Internet service provider, could not itself establish.[6]  To make matters worse, the Individual Defendants added a host of new defenses that ReDigi had itself never even bothered to assert given their obvious lack of merit,[7] while also purporting to re-assert defenses, such as fair use and the first sale doctrine, that the Court had already rejected as a matter of law and that could not possibly be subject to any different determination when asserted by them instead of ReDigi.[8]  Consistent with such a stubborn refusal to acknowledge the reality of the Court's summary judgment ruling, the Individual Defendants filed two groundless pleading motions (a motion to dismiss and motion for reargument) while all of the Defendants also repeatedly sought to excise from this case music files uploaded and offered for sale, despite the Court's repeated and abundantly clear admonitions that such uploads were clearly violations of the reproduction right.  See, e.g., Docket No. 186 ("The Court agrees with Plaintiffs that Plaintiffs may introduce evidence about recordings that were uploaded to the ReDigi server and offered for sale").  Undeterred by the

---

[6]Apart from the fact that the Individual Defendants are not themselves qualifying ISPs, neither they nor ReDigi had designated an agent to received infringement notices, one of several preconditions to protection under the DMCA safe harbor required by 17 U.S.C. § 512(c)(2).  See Mandel Decl. on Motion re Affirmative Defenses (Docket No. 171) ¶ 6 and Ex. E.

[7]For example, the Individual Defendants alleged (a) unclean hands based on Capitol's use of a paralegal to purchase publicly available recordings from ReDigi's website; (b) laches despite the fact that Capitol put ReDigi on notice of its objections within a month of the beta launch of the ReDigi site and brought suit within three months of such launch; and (c) estoppel, waiver and consent despite Capitol's prompt objections to the ReDigi service and Mr. Ossenmacher's own acknowledgement that Capitol had refused to meet with him to hear any pitch about the service.  See Capitol Brief re Affirmative Defenses (Docket No. 170) at 15-17.

[8]The Individual Defendants eventually backpedaled on the fair use and first sale defenses, finally agreeing in connection with briefing on the motion concerning the affirmative defenses that could be asserted, that they only sought to litigate defenses that had not explicitly been ruled upon in the Court's earlier summary judgment opinion.  See Docket No. 175 at 3-4.

14

Court's clear message, Defendants continued to peddle the fiction that they could pursue defenses such as fair use and implied license with respect to recordings offered for sale but not sold right through the pre-trial filings (see, e.g., Defendants' Pre-Trial Memo, Docket No. 198, at 6-9; Jury Verdict Form, Docket No. 197), needlessly complicating such submissions and causing Plaintiffs to incur unnecessary legal fees rebutting contentions that had long since been resolved adversely. See p. 8 supra.

The net result of the manner in which Defendants chose to defend the case was to delay its progress for a period of years. Plaintiffs expended substantial fees addressing legal positions that had no reasonable basis and fending off discovery that served no purpose other than to harass and delay. These kinds of inconsistent, wasteful, and objectively unreasonable machinations supply a compelling ground for an award of fees. See Harrell, 2009 WL 3756327, at *4 (awarding fees where defendant filed "largely frivolous" motion to dismiss and advanced new defense inconsistent with previous position); Close-Up Int'l, Inc. v. Berov, 2007 WL 4053682, at *1 (E.D.N.Y. Nov. 13, 2007) (defendant's pursuit of defense to infringement action that was "entirely without merit" supported fees award); Hofheinz v. AMC Prods., Inc., 2003 U.S. Dist. LEXIS 16940, at *30 (E.D.N.Y. Sept. 1, 2003) (awarding fees to defendant because, inter alia, "plaintiff's arguments throughout this litigation have been largely frivolous and objectively unreasonable"); Video-Cinema Films, Inc. v. Cable News Network, Inc., 2003 WL 1701904, at *2 (S.D.N.Y. Mar. 31, 2003) (awarding fees and costs to defendants, noting that "[t]hroughout the underlying litigation, Plaintiff made objectively unreasonable factual and legal arguments").

Had Defendants confined themselves to the supposedly "novel" issues of copyright law presented by this case, years of delay and hundreds of thousands of dollars in legal fees could have been avoided. Even assuming arguendo that there were some objectively reasonable

defenses available to be asserted, <u>Kirtsaeng</u> makes clear that objective reasonableness is not the "controlling" factor and that the Court must take into account all other circumstances relevant to the case in deciding whether fee-shifting is appropriate. 136 S. Ct. at 1983, 1988-89. Here, the specific manner and method by which Defendants chose to defend this lawsuit was clearly without merit and patently devoid of a legal or factual basis in numerous key respects, thereby forcing Plaintiffs to expend unnecessary resources in seeking to protect their valuable copyrights.

Defendants' appeal to the Second Circuit caused Plaintiffs to incur additional unnecessary legal fees because Defendants never came to grips with the fundamental defect in their position below, namely, that the fixing of a digital music file in a new material object necessarily created a reproduction of Plaintiffs' copyrighted sound recordings. Although Defendants invested substantial efforts on appeal making broad policy arguments and trumpeting the significance of the first sale defense, they had no plausible answer to the fact that their technology violated Plaintiffs' exclusive reproduction rights under the plain language of the Copyright Act. As the Second Circuit succinctly summarized the matter:

> The fixing of the digital file in ReDigi's server, as well as in the new purchaser's device, creates a new phonorecord, which is a reproduction. ReDigi version 1.0's process for enabling the resale of digital files thus *inevitably* involves the creation of new phonorecords by reproduction, even if the standalone digital file is deemed to be a phonorecord.

Mandel Decl. Ex. C at 16-17 (emphasis added).

Because the first sale doctrine only provides a defense to violations of the distribution right, not the reproduction right, the Second Circuit did not even need to reach the first sale defense or most of Defendants' arguments in affirming the summary judgment ruling for Plaintiffs. And Defendants offered only a half-hearted attempt to defend their violation of the reproduction right by resort to the fair use defense, failing in their opening brief even to address

16

the four statutory fair use factors that courts are directed to consider under 17 U.S.C. § 107.  See

Mandel Ex. C at 25 ("ReDigi's argument for fair use in its opening brief did not address the

statutory factors.  Nonetheless, we consider each in turn.").  The Second Circuit found that all

four factors weighed against finding a fair use (id. at 25-31), thus affirming the District Court,

which itself had "little difficulty concluding that ReDigi's reproduction … of Capitol's

copyrighted works falls well outside the fair use defense."  Summary Judgment Order (Docket

No. 109) at 10.  In short, Defendants' appeal failed to raise any serious arguments to counter the

"inevitable" conclusion that they violated Plaintiffs' reproduction right.

### B.    Defendants' Infringement of Plaintiffs' Copyrights Was Willful

"The Second Circuit has held that it is appropriate to award attorneys' fees where the

infringement was willful."  Broad. Music, Inc. v. Prana Hospitality, Inc., 2016 WL 280317, at

*11 (S.D.N.Y. Jan. 21, 2016) (citing Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir.

1999)).  Under the Copyright Act, an infringement is "willful" if: (1) the defendant was actually

aware of the infringing activity, or (2)  the defendant's actions were the result of "reckless

disregard" for, or "willful blindness" to, the copyright holder's rights.  Island Software &

Computer Serv. Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005); see also Capitol

Records, Inc. v. MP3Tunes, LLC, 48 F. Supp. 3d 703, 726 (S.D.N.Y. 2014) ("[w]illfulness may

be shown by proof of a defendant's reckless disregard of the possibility that his conduct is

infringing") (citing Arista Records LLC v. Usenet.com, Inc., 2010 WL 3629688, at *6-7 (S.D.

N.Y. Feb. 2, 2010)).  Accordingly, reckless disregard of a plaintiff's copyright interest constitutes

evidence of willfulness sufficient to support an award of fees.  See Beastie Boys v. Monster

Energy Co., 112 F. Supp. 3d 31, 43 (S.D.N.Y. 2015) ("Courts have awarded fees based on

willfulness even where the infringement was reckless rather than knowing") (collecting cases);

17

Manno v. Tenn. Prod. Ctr., Inc., 657 F. Supp. 2d 425, 435 (S.D.N.Y. 2009) (awarding fees for defendant's "willful disregard of [plaintiff's] copyright interests"). Likewise, where a defendant ignores repeated warnings of copyright infringement, such "willful blindness" favors an award of attorneys' fees. See Broad. Music, Inc. v. Wexford INR LLC, 2014 WL 4626454, at *8-12 (N.D.N.Y. Sept. 15, 2014).

The Court's prior summary judgment ruling has already found as a matter of law that ReDigi and its officers knew or should have known of their infringing conduct. These determinations constitute the law of this case,[9] and leave no doubt that Defendants at a minimum recklessly disregarded the possibility of infringement in a manner that meets the definition of willfulness. First, in finding ReDigi liable for direct infringement as an "active participant … in the process of copyright infringement," the Court ruled that "ReDigi's founders built a service where *only* copyrighted work could be sold." Docket No. 109 at 14 (emphasis in original). The Court further explained that ReDigi played a "fundamental and deliberate role" in providing the "infrastructure for its users' infringing sales" and "affirmatively brokered sales by connecting users who are seeking unavailable songs with potential sellers." Id.

Second, as a necessary predicate to finding contributory infringement as a matter of law, the Court squarely held that "based on the objective facts, ReDigi was aware of its users' infringement." Id. at 16 (emphasis added). The Court further held that it "has little difficulty concluding that ReDigi knew or should have known that its service would encourage

---

[9] See, e.g., Spencer v. Int'l Shoppes, Inc., 902 F. Supp. 2d 287, 288 n.2 (E.D.N.Y. 2012) (factual findings on summary judgment decision were "the law of the case"); Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 716-17 (S.D.N.Y. 1997) ("The doctrine of law of the case dictates that … unreversed factual findings and legal conclusions … in the same case should not

*(footnote continued on following page)*

18

infringement." Id. at 15.  Among other facts relied on in making this ruling, the Court found that

Defendants warned investors that the ReDigi service might be infringing; received a cease-and-

desist letter that its website violated Plaintiffs' copyrights; knew that copyrighted content was

being sold on the website; and "understood the likelihood that use of ReDigi's service would

result in infringement." Id.  The Court's various determinations regarding Defendants' guilty

state of mind establish as a matter of law that Defendants acted in reckless disregard of, or were

willfully blind to, Plaintiffs' rights in the sound recordings copied on the ReDigi site.

In seeking to avoid the effect of the Court's prior rulings, Defendants argued in their pre-

trial submissions that contributory infringement requires only "objective" knowledge, whereas a

finding of willfulness is based on a defendant's actual state of mind.  However, such a position is

flatly contradicted by established Second Circuit precedent:

> We have held that for the purpose of awarding enhanced statutory damages under §
> 504(c)(2), an infringement is 'willful' if the defendant had 'knowledge that its actions
> constitute an infringement....'  This knowledge may be 'actual or constructive.'

N.A.S. Import Corp. v. Chenson Enterprises, Inc., 968 F.2d 250, 252 (2d Cir. 1992) (emphasis

added; citations omitted).  See also Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1010 (2d Cir.

1995) (for purposes of statutory damages, "to show willfulness, Knitwaves was not required to

prove Lollytogs' actual knowledge that it was infringing.  Knowledge of infringement may be

constructive rather than actual"); Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110,

1115 (2d Cir. 1986) ("Thus, just as the lack of actual or constructive knowledge will establish an

innocent intent, so a defendant's actual or constructive knowledge proves willfulness"); Scafa-

_____

*(footnote continued from previous page)*

be disturbed absent changed law, changed circumstances or clear error"), aff'd without op., 159
F.3d 1347 (2d Cir. 1998).

Tornabene Art Publ'g Co. v. Pride Prods. Corp., 2007 WL 2469453, at *3 (S.D.N.Y. June 4, 2007) (For enhanced statutory damages, "[a]cting 'willfully' means acting with actual or constructive knowledge or 'reckless disregard of the high probability' that one's actions constitute copyright infringement"); ASA Music Prods. v. Thomsun Elecs., 49 U.S.P.Q.2d 1545, 1552 (S.D.N.Y. 1998) ("The increased maximum for statutory damages that is triggered by willfulness applies in this case. Willfulness consists of actual or constructive knowledge that defendants' actions constitute an infringement"). The Court's prior finding that Defendants had at least constructive knowledge of infringement is tantamount to a finding of willfulness and militates strongly in favor of a fee award.

### C. Considerations of Compensation and Deterrence Support a Fee Award

In a case such as this, awarding Plaintiffs their attorneys' fees is also essential in vindicating the interests of compensation and deterrence. An award of fees will serve the dual policy purposes of the Copyright Act to "deter future infringers who will be put on notice that they may be called upon to compensate plaintiffs for the expenses" incurred in enforcing legitimate rights. Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 311 (S.D.N.Y. 2009). See also Broad. Music, Inc. v. DFK Entm't, LLC, 2012 WL 893470, at *5 (N.D.N.Y. Mar. 15, 2012) (finding award of attorneys' fees "both appropriate and necessary 'to advance [the] considerations of compensation and deterrence'"). Compensation is warranted here because Defendants adopted unreasonable, frivolous litigation positions that "forced [Plaintiffs] to pursue this lengthy litigation in the face of an obviously losing position on the part of defendants." Miroglio, 629 F. Supp. 2d at 311. Moreover, awarding fees in this case will serve to deter Defendants and other prospective infringers from exploiting new technologies in such a manner as to blithely disregard the valuable exclusive rights granted by the Copyright Act.

20

## IV.   PLAINTIFFS STATE THE AMOUNT OF FEES SOUGHT

Pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), Plaintiffs state that they seek attorneys' fees in connection with the District Court action in the amount of $500,000, the agreed cap on such a fee award pursuant to Paragraph 6 of the Judgment stipulated to by the parties.  Such amount constitutes less than half the actual fees expended by Plaintiffs in prosecuting this case in the District Court.[10]  Mandel Decl. ¶ 16.

Plaintiffs also seek fees incurred in connection with Defendants' appeal in the additional amount of $97,920.12.  See Mandel Decl. ¶ 17; n. 10 supra.  The Judgment in this case expressly provided: "Nothing contained herein shall have any effect on the right of Plaintiffs or the ReDigi Parties to seek an award of attorneys' fees in connection with the appeal of this Stipulated Conditional Final Judgment or any future proceedings in the District Court that may occur following the entry of this Stipulated Conditional Final Judgment."  Docket No. 222 (paragraph 6).  Accordingly, the additional fees incurred by Plaintiffs in connection with Defendants' appeal are not subject to the $500,000 cap.  Such fees are appropriately awarded in the first instance by the District Court.  See L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau County, Inc., 2013 WL 6388633 (E.D.N.Y. Dec. 5, 2013).

---

[10]"[Rule 54(d)(2)] does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees…. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)." Sorenson v. Wolfson, 2016 WL 1089386, at *5 (S.D.N.Y. Mar. 21, 2016) (citing Fed. R. Civ. P. 54 Advisory Committee Notes, 1993 Amendments).  Should the Court grant Plaintiffs' motion, Plaintiffs will submit documentation supporting the amount of fees claimed.

*(footnote continued on following page)*

21

## CONCLUSION

For the foregoing reasons, in the interest of justice, the Court should exercise its discretion in Plaintiffs' favor and award Plaintiffs' attorneys' fees in the amount of $597,920.12 as the prevailing parties in this action.

Dated: New York, New York
      March 14, 2019

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.

By: _____

      Richard S. Mandel
      Jonathan Z. King

114 West 47th Street
New York, New York 10036
(212) 790-9200

Attorneys for Plaintiffs Capitol Records, LLC, Christian Music Group, Inc. and Virgin Records IR Holdings, Inc.

---

*(footnote continued from previous page)*

See Fed. R. Civ. P. 54(d)(2)C) ("The court may decide issues of liability for fees before receiving submissions on the value of services").

29503/003/2667325.1