UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAPITOL RECORDS, LLC, CAPITOL
CHRISTIAN MUSIC GROUP, INC. and
VIRGIN RECORDS IR HOLDINGS, INC.,
                              Plaintiffs,

        -v-

REDIGI INC., JOHN OSSENMACHER and
LARRY RUDOLPH a/k/a LAWRENCE S.
ROGEL,

                              Defendants.

No. 1:12-cv-95 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

        In 2013 and 2016, the Court granted judgments in favor of Plaintiffs Capitol Records, LLC

("Capitol"), Capitol Christian Music Group, Inc., and Virgin Records IR Holdings, Inc.

(collectively, "Plaintiffs") on their copyright infringement claims against ReDigi Inc. ("ReDigi")

and its "founding owners," Larry Rudolph (also known as "Lawrence S. Rogel") and John

Ossenmacher (collectively, the "Individual Defendants," and together with ReDigi,

"Defendants").   *See Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 645

(S.D.N.Y. 2013); (*see also* Doc. Nos. 109, 222).   On December 12, 2018, the Second Circuit

affirmed the Court's judgments.   *See Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 664

(2d Cir. 2018).   Now before the Court is Plaintiffs' motion for attorneys' fees pursuant to 17 U.S.C.

§ 505.   (Doc. No. 319.)   For the reasons set forth below, Plaintiffs' motion is GRANTED IN PART

AND DENIED IN PART.

## I.  Background

The Court presumes the parties' familiarity with the facts and procedural history of this case, which are set out more fully in the Court's March 30, 2013 opinion.  *See ReDigi*, 934 F. Supp. 2d at 644–47.  Here, the Court discusses only those facts and legal conclusions relevant to Plaintiffs' motion for attorneys' fees.[1]

ReDigi describes itself as an online marketplace for "used" music files.  *Id.* at 645.  Launched on October 13, 2011, ReDigi allowed users to upload previously purchased iTunes files from their hard drives to a "[c]loud" server maintained remotely by ReDigi.  *Id.*  Upon upload, files were deleted from the uploader's computer so that the remaining copies were stored only on ReDigi's remote server.  *Id.* at 645–46.  Users were then able to sell their uploaded files to other ReDigi users, for which ReDigi charged a fee.  *Id.* at 646.

Capitol, a recording label, initiated this action on January 6, 2012, claiming that ReDigi had infringed on Capitol's reproduction and distribution rights for numerous digital music files.  *Id.* at 646–47.  After discovery, Capitol filed a motion for summary judgment, and ReDigi cross-moved for summary judgment on all claims.  *Id.* at 647.  The Court granted summary judgment in favor of Capitol on its claims for direct, contributory, and vicarious infringement of Capitol's distribution and reproduction rights, *id.* at 648–61, and the Court denied ReDigi's cross-motion for summary judgment in its entirety, *id.* at 660–61.

---

[1] In deciding this motion, the Court has considered Plaintiffs' memorandum of law in support of their motion for attorneys' fees (Doc. No. 320, "Pl. Mem."), the Individual Defendants' letters to the Court (Doc. Nos. 323, 324), Plaintiffs' reply (Doc. No. 325), and the exhibits and declarations filed in connection with those submissions.  The Court has also considered the documents implicated by those filings, especially those related to the parties' cross-motions for summary judgment.  (*See, e.g.*, Doc. No. 49 (Capitol's Memorandum of Law supporting its motion for summary judgment); Doc. No. 55 (ReDigi's Memorandum of Law supporting its motion for summary judgment); Doc. No. 56 (ReDigi's Rule 56.1 Statement); Doc. No. 76 (Capitol's Memorandum of Law opposing ReDigi's motion for summary judgment); Doc. No. 78 (Capitol's counterstatement to ReDigi's Rule 56.1 Statement); Doc. No 83 (ReDigi's counterstatement to Capitol's Rule 56.1 Statement); Doc No. 87 (Plaintiffs' Reply Memorandum of Law supporting summary judgment).)

The Court reached several conclusions in its summary judgment opinion that are relevant to Plaintiffs' current motion.  First, the Court held that "ReDigi's service infringes Capitol's reproduction rights under any description of the technology."  *Id.* at 650.  Specifically, the Court concluded that ReDigi's software – which copied music files from one digital storage location and fixed them in "a new material object" before deleting the original – necessarily required an act of infringing reproduction regardless of whether only one copy of those files existed at the end of the process.  *Id*. at 651.  Second, the Court held that ReDigi infringed on Capitol's exclusive right of distribution.  *Id.*  Finally, the Court rejected two of ReDigi's affirmative defenses, holding that neither the fair use doctrine nor the first sale doctrine shielded ReDigi from liability.  *Id.* at 652–56.

The Court also determined that ReDigi was both directly and secondarily liable for infringement.  ReDigi was directly liable because "ReDigi's founders built a service where *only* copyrighted work could be sold," as files eligible for ReDigi's service "consist[ed] *solely* of protected music purchased on iTunes."  *Id.* at 657.  As the Court explained, "[t]he fact that ReDigi's founders programmed their software to choose copyrighted content satisfies the volitional conduct requirement" necessary to impose direct liability.  *Id.*  The Court also found ReDigi secondarily liable for its *users'* direct infringement, under the doctrines of contributory infringement and vicarious infringement.  *Id.* at 658–60.  As to contributory infringement, "[t]he Court ha[d] little difficulty concluding that ReDigi knew or should have known that its service would encourage infringement."  *Id.*  at 658.  The Court noted that ReDigi had warned investors as early as 2011 that it might be subject to copyright infringement claims; it had also received a cease-and-desist letter from the Recording Industry Association of America in 2011 and was fully "aware that copyright protected content was being sold on its website."  *Id.* at 659.  ReDigi also

had been involved in a licensing dispute about the use of song clips and cover art on its website, and it had previously consulted with attorneys on copyright issues. *Id.* As to vicarious infringement, the Court found ReDigi liable under that theory because "ReDigi exercised complete control over its website's content, user access, and sales." *Id.* at 660.

Following the Court's summary judgment ruling, Capitol sought to amend its complaint to add the Individual Defendants to the case, arguing that Rudolf and Ossenmacher were corporate officers who had personally participated in the infringing activity. (Doc. No. 118 at 9–10.) After a conference on the motion to amend, the Court allowed Capitol to add the Individual Defendants and to add additional song titles to the infringement allegations. Counsel for both parties represented that no additional discovery would be necessary as a result of these amendments. (Doc. 116 at 3–4.)

Capitol then filed its First Amended Complaint on August 30, 2013. (Doc. No. 118.) In an answer filed on September 16, 2013, ReDigi asserted twenty-one affirmative defenses. (Doc. No. 123 at 10–13.) Many of them were arguments not raised in ReDigi's original answer, such as failure to mitigate damages, estoppel, waiver, unclean hands, lack of volitional conduct, lack of personal jurisdiction, and ReDigi's "innocent intent." (*Id.* at 11–13.) Five defenses, including those based on fair use and the first sale doctrine, were premised on arguments the Court had rejected in its summary judgment opinion, and two defenses had previously been asserted and abandoned by ReDigi. (*Id.*) The Individual Defendants also filed a motion to dismiss Capitol's First Amended Complaint. (Doc. Nos. 126, 127.) The Court denied that motion and the Individual Defendants' subsequent motion to reconsider. (Doc. Nos. 148, 155.)

On October 29, 2014, the Court granted Capitol leave to file a Second Amended Complaint adding Capitol Christian Music Group, Inc., and Virgin Records IR Holdings, Inc., as plaintiffs.[2] (Doc. Nos. 158, 161.)  In an answer to the Second Amended Complaint, ReDigi reasserted all affirmative defenses it had raised in its September 2013 answer.  (Doc. No. 164 at 11–14.)  The Individual Defendants filed a separate answer, asserting thirty affirmative defenses, twenty-one of which mirrored ReDigi's.  (Doc. No. 163 at 14–18.)  Notwithstanding the representations counsel had made to the Court, the Individual Defendants also served multiple interrogatories and discovery requests on Plaintiffs.  (Doc. No. 168, Ex. 1.)

In an August 27, 2015 Opinion and Order, the Court precluded the Individual Defendants from asserting affirmative defenses that ReDigi had failed to timely raise, or had otherwise waived, noting that the Individual Defendants had participated in and effectively controlled ReDigi's prior litigation and were therefore bound by ReDigi's previous waiver and abandonment of the various affirmative defenses.  (Doc. No. 175 at 10.)  In the same Order, the Court noted that the Individual Defendants had subsequently disclaimed any intention of raising the defenses previously considered and rejected in the Court's 2013 summary judgment opinion, despite having listed them in their answer.  (*Id.* at 3–4.)

On November 2, 2015, the Court approved a joint stipulation in which the Individual Defendants waived their right to contest their liability before the Court but preserved their ability to appeal the Court's prior rulings.  (Doc. No. 178 ¶¶ 1–2.)  The scope of appeal was further narrowed in the Stipulated Final Judgment, approved by the Court on June 3, 2016, in which the parties agreed that Defendants would reserve *solely* the right to appeal liability, as addressed in the Court's summary judgement order.  (Doc. No. 222 ¶ 3.)  The parties additionally agreed that

---

[2] The parties stipulated to allowing these additional plaintiffs to be added to the case.  (Doc. No. 165.)

Plaintiffs could move for attorneys' fees (but not costs) in connection with the district court proceedings, capped at $500,000, along with any attorneys' fees incurred on appeal.  (*Id.* ¶ 6.)

On December 12, 2018, the Second Circuit affirmed this Court's determination that ReDigi had infringed on Plaintiffs' reproduction rights, without addressing the issue of whether ReDigi had also violated Plaintiffs' distribution rights.  *See ReDigi*, 910 F.3d at 652 & n.2.  In reaching its decision, the Second Circuit affirmed this Court's conclusion that ReDigi's conduct was not protected by the fair use or first sale doctrines.  *See id.* at 659, 663.

Plaintiffs moved for attorneys' fees prior to the resolution of the appeal (Doc. No. 270), but the Court denied the motion without prejudice to renewal.  (Doc. No. 318.)  Following the Second Circuit's opinion, Plaintiffs renewed their motion for attorneys' fees, and now request a total award of $597,920.12, including $500,000 incurred during the district court proceedings and $97,920.12 incurred in connection with the appeal.  (Doc. No. 319; Pl. Mem. at 21.)

## II.  Entitlement to Attorneys' Fees

Section 505 of the Copyright Act provides that a court may "award a reasonable attorney's fee to the prevailing party" in a copyright action.  17 U.S.C. § 505.  The Supreme Court has identified "several nonexclusive factors" to guide district courts in exercising their discretion under section 505, including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (alterations adopted) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *see also Manhattan Rev. LLC v. Yun*, 765 F. App'x 574, 576 (2d Cir. 2019).  "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals."  *Kirtsaeng*, 579 U.S. at 209.  Courts may award fees even without a finding of

unreasonableness "because of a party's litigation misconduct" or "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims." *Id.* A court may also consider other factors, so long as they are consistent with the Copyright Act's "purpose of enriching the general public through access to creative works," striking a balance between encouraging authors' novel creations and enabling others to build upon that creative work. *Fogerty*, 510 U.S. at 527.

Under section 505, "an award of attorney's fees may be made for services rendered on appeal as well as at the trial level." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10[E], at 14–129 (1992)). While appellate fees may be addressed by a court of appeals, *see, e.g.*, *id.*, they may also be awarded by the district court in the first instance on remand, *see, e.g.*, *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 13-cv-1526 (RJS), 2020 WL 2848232, at *2 (S.D.N.Y. June 1, 2020) (awarding fees for appellate work); *TCA Television Corp. v. McCollum*, No. 15-cv-4325 (JCF), 2017 WL 2418751, at *15–16 (S.D.N.Y. June 5, 2017), *report and recommendation adopted*, No. 15-cv-4325 (GBD), 2018 WL 2932724 (S.D.N.Y. June 12, 2018) (same); *see also Dague v. City of Burlington*, 976 F.2d 801, 803 (2d Cir. 1991). Awarding appellate fees requires a distinct inquiry from awarding district court fees, and courts may award one while declining to award the other. *See, e.g.*, *Twin Peaks Prods.*, 996 F.2d at 1382–83.

Because Plaintiffs seek attorneys' fees incurred both in the district court and on appeal, the Court will address each category of fees in turn.

### A.  Attorneys' Fees in the District Court Proceedings

The Court concludes that Plaintiffs are entitled to attorneys' fees for aspects of the parties' summary judgment litigation before the Court, as well as for litigation in this Court following the Court's March 2013 summary judgment opinion.  With respect to the former, ReDigi repeatedly misrepresented how its technology worked, causing Capitol to spend time, money, and briefing space to refute ReDigi's fabrications.  With respect to the latter, ReDigi's legal contentions following summary judgment were unreasonable, vexatious, and lacking an arguable basis in fact or law.  Although in general, ReDigi's legal positions prior to summary judgment were not objectively unreasonable – the disputed issues implicated complex, novel questions of copyright law – following summary judgment, Defendants continued to assert legal arguments that had been foreclosed by the Court's decision, introduced new affirmative defenses that were clearly without merit, and attempted to burden Plaintiffs and the Court with frivolous motions and discovery requests.  Defendants' post-summary-judgment legal arguments were "objectively unreasonable," and their litigation tactics bordered on "misconduct."  *Kirtsaeng*, 579 U.S. at 208–09.  Applying the Supreme Court's guidance in *Kirtsaeng* that courts should "view all the circumstances of a case on their own terms," the Court finds a fees award appropriate for parts of the summary judgment motions and the entirety of the latter stages of the district court proceedings.  *Id.* at 209.

### 1.  Litigation in Connection with the Parties' Motions for Summary Judgment

At the outset of the case, ReDigi admitted that its service involved the copying of music files belonging to a user.  In its memorandum opposing Capitol's motion for a preliminary injunction, ReDigi noted that "[t]he only copying which takes place in the ReDigi service occurs when a user uploads music files to the ReDigi Cloud, thereby storing copies thereof in the user's personal Cloud Locker, or downloads music files from the user's Cloud Locker, thereby placing

copies of the files on his or her computer."  (Doc. No. 14 at 9.)  Rogel made a nearly identical statement in his declaration submitted in opposition to Capitol's preliminary injunction motion. (*See* Doc No. 11 ¶ 6.)

And yet, in its summary judgment papers, ReDigi reversed course and insisted that its technology did not "copy" anything, but instead "migrated" a single existing file between users' computers and ReDigi's database.  (*See, e.g.*, Doc. No 76 at 3 ("The migration process does not involve reproduction or copying of the Eligible File to the Cloud Locker because the actual Eligible File is what is migrated from the hard drive to the Cloud Locker."); *see also* Doc. No. 83 ¶ 42 ("To the extent that the patent application uses the word 'copied,' this was not meant to describe ReDigi's *migration* process.") (emphasis added); Doc. No. 56 ¶ 35 ("The file is neither on the user's machine nor in the ReDigi cloud because the file itself was in the process of being migrated and there was no reproduction made that could be used to recover it.").)  As the Court observed at oral argument on the cross-motions for summary judgment, ReDigi's representations that it did not copy and delete digital music files were at odds with its prior representations, including those in ReDigi's own patent application.  (*See* Doc. No. 107 at 36.)

As a result, Capitol expended substantial resources contesting ReDigi's recharacterization of its technological processes, and also arguing the related matter that ReDigi's earlier admissions of copying were binding regardless of the veracity of its eleventh-hour recharacterizations.

### 2.  Litigation Following Summary Judgment

Following summary judgment, Plaintiffs filed an amended complaint that added the Individual Defendants (Doc. No. 118), who proceeded to assert *thirty* affirmative defenses on their own behalf, including fair use; failure to mitigate damages; the first sale doctrine; the doctrines of estoppel, waiver, and unclean hands; the Court's lack of personal jurisdiction over them; and many

others.  (Doc. No. 163 at 14–18.)  Many of these defenses were foreclosed by the Court's prior rulings or waived by ReDigi's prior positions in this litigation.  (Doc. No. 175 at 7–9.)  Defendants also made numerous discovery requests after summary judgment, even though the Individual Defendants, prior to being joined to the case, had represented to the Court that no additional discovery would be necessary.  (Doc. No. 116 at 4.)  They went on to serve Plaintiffs with a litany of interrogatories and requests for the production of documents related to their frivolous affirmative defenses.  (Doc. No. 321, Ex. A.)

### 3.  Application of the Section 505 Factors and *Kirtsaeng*

For the reasons set forth below, the Court concludes that Defendants' factual misrepresentations in connection with the parties' cross-motions for summary judgment, and Defendants' conduct following the Court's March 2013 summary judgment opinion, warrant an award of attorneys' fees in Plaintiffs' favor.

#### a.  Objective Unreasonableness of Arguments

"Objective unreasonableness is generally used to describe claims that have no legal or factual support."  *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001) (internal quotation marks omitted); *see also Muller v. Twentieth Century Fox Film Corp.*, No. 08-cv-2550 (DC), 2011 WL 3678712, at *1 (S.D.N.Y. Aug. 22, 2011) ("A copyright infringement claim is objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of a legal or factual basis.") (citation omitted).  Although a position is not unreasonable merely because it is weak, "[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense."  *Kirtsaeng*, 579 U.S. at 207; *see also Leibovitz v. Paramount Pictures Corp.*, No. 94-cv-9144 (LAP), 2000 WL 1010830, at *3 (S.D.N.Y. July 21, 2000) (assessing the reasonableness of competing arguments).

Prior to summary judgment, ReDigi's legal contentions were not objectively unreasonable. The core legal aspects of this case turned on determinations about the scope of copyright protections in the digital sphere.  In the initial stages of this litigation, ReDigi's legal arguments – including those about the scope of reproduction rights, the first sale doctrine, and the fair use doctrine – implicated novel questions at the nexus of copyright law and technology.  The Court acknowledged that such issues were yet unresolved in this Circuit.  *ReDigi*, 934 F. Supp. 2d at 648 (noting "[t]he novel question presented in this action").  ReDigi's defenses were legitimately and vigorously litigated.  Although this Court and the Second Circuit ultimately ruled in favor of Plaintiffs, this did not render ReDigi's initial legal defenses – particularly its reliance on the first sale and fair use doctrines – objectively unreasonable.  Indeed, courts within this Circuit regularly hold that "[a] party's good faith decision to litigate complex or undecided issues of law is not objectively unreasonable." *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JPO), 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29, 2013); *accord, e.g.*, *Insurent Agency Corp. v. Hanover Ins. Co.*, No. 16-cv-3076 (JLC), 2020 WL 86813, at *5 (S.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, No. 16-cv-3076 (LGS), 2020 WL 1080774 (S.D.N.Y. Mar. 6, 2020); *Effie Film, LLC v. Pomerance*, No. 11-cv-7087 (JPO), 2013 WL 1759560, at *2 (S.D.N.Y. Apr. 24, 2013); *Bourne Co. v. Walt Disney Co.*, No. 91-cv-344 (LLS), 1994 WL 263482, at *2 (S.D.N.Y. June 10, 1994) (noting fees may be denied because of "the presence of a complex or novel issue of law that the defendants litigate vigorously and in good faith") (citation omitted). The Court therefore concludes that Defendants' legal arguments *before* summary judgment were not objectively unreasonable, as they pertained to a complex area of unsettled law.

ReDigi's factual contentions prior to and during summary judgment, however, were unreasonable in part.  The factual contentions it put forth in its summary judgment briefing

regarding its data copying (or "migration") process were at odds with the record, and therefore objectively unreasonable. *See Viva Video*, 9 F. App'x at 80. As noted, in its opposition to Capitol's motion for a preliminary injunction, ReDigi admitted that its technology involves copying music files. (*See* Doc. No. 14 at 9.) These "statement[s] made by a party or its counsel" and carrying "sufficient formality or conclusiveness" are "judicial admission[s]" that "ha[ve] the effect of withdrawing a fact from contention and . . . bind[ing] the party making it throughout the course of the proceeding." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (citation omitted). ReDigi simply ignored its prior judicial admissions when, on summary judgment, it attempted to assert that it engaged in no copying at all.

Moreover, the Second Circuit's explanation of ReDigi's technological process clearly reflects that ReDigi's latter set of factual representations before this Court were dubious at best. The Second Circuit "[c]onsider[ed] the evidence in the light most favorable to ReDigi," as was required by the procedural posture of the case. *ReDigi*, 910 F.3d at 652. It nevertheless explained that ReDigi *does* engage in at least limited and temporary copying of parts of music files, *id.* at 653, and that ReDigi's arguments that it guards against a user's retention of duplicate files and that a file can never exist in two places at once were "overclaims," i.e., were "simply not supported by ReDigi's own evidence," *id.* at 658. Aided by the Second Circuit's analysis of ReDigi's technology, but additionally and independently based in its own evaluation of the facts – including ReDigi's own earlier admissions of the "copying [that] takes place in the ReDigi service [and] occurs when a user uploads music files to the ReDigi Cloud" (Doc. No. 14 at 9) – the Court finds that ReDigi engaged in unreasonable descriptions of its technology that were not supported by the facts and were at odds with its prior binding representations to the Court.

ReDigi's willful contradiction of its prior counsel's statements merits more than a shrug. *See Motors Liquidation Co.*, 957 F.3d at 360 (explaining that judicial admissions bind the parties that make them). In analogous contexts, a party's or attorney's signature on a document presented to the court reflects a good-faith belief that the document's contentions "have evidentiary support." Fed. R. Civ. P. 11(b)(3); *see also Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 731 (7th Cir. 1998) (providing that sanctionable conduct may be considered in awarding fees under the Copyright Act). Making knowingly misleading or false assertions is thus sanctionable. *See S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 83 (2d Cir. 1990) (awarding attorneys' fees based on counsel's having "made representations to the [c]ourt that he knew or should have known were untrue"). Accordingly, ReDigi's contradictory assertions about its technological process – which Capitol was compelled to refute at great lengths – amply merit the description "objectively unreasonable."

Defendants' legal arguments and affirmative defenses *after* the Court's summary judgment opinion were also objectively unreasonable. As detailed above, after the Individual Defendants were joined to the case, they asserted dozens of affirmative defenses that, for one reason or another, were frivolous. Five of those defenses (the second, eleventh, twelfth, fifteenth, and twenty-first) were premised on arguments regarding the fair use and first sale doctrines that the Court had already rejected in its summary judgment opinion. (Doc. No. 175 at 7.) The Individual Defendants later disavowed these five defenses of their own accord. (*Id.*) Two others, the essential step defense under section 117 of the Copyright Act (sixteenth) and the safe harbor defense under section 512 of the Digital Millennium Copyright Act (twentieth), had been abandoned by ReDigi in previous stages of this proceeding. (*Id.*) Another five affirmative defenses were never raised in ReDigi's original answer but easily could have been, and were thus forfeited. (*Id.*)

Most importantly, it was patently obvious that the Individual Defendants, as the "founding owners" of ReDigi, were in privity with ReDigi.  (*Id.* at 9.)  The Individual Defendants hardly contested this fact, and "the Court ha[d] little difficulty concluding that [they] participated in and effectively controlled ReDigi's prior litigation."  (*Id.* at 10 (quotation marks omitted).)  As such, the Individual Defendants should have recognized (or did recognize and nevertheless ignored) the fact that they were bound on issues previously decided against or waived by ReDigi.  Ignoring the implications of privity was an "objectively unreasonable" litigating position that led to needless expenditures and the multiplication of proceedings following the Court's entry of partial summary judgment in favor of Capitol.  *Kirtsaeng*, 579 U.S. at 208.

### b.  Litigation Conduct

Defendants' unreasonable litigation tactics are also a relevant consideration under the Copyright Act.  *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 643 (S.D.N.Y. 2018) (noting that "a court may award fees if 'a party's *conduct* is unreasonable'" and that the defendants' "incomprehensible decision to plead 52 affirmative defenses," knowing many had been previously rejected, was unreasonable conduct) (quoting *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 124–25 (2d Cir. 2001)).

As addressed above, Defendants' litigation misconduct began prior to summary judgment when they engineered a last-minute change in the description of how ReDigi's technology worked.  Lulling an adversary into a false sense of complacence by admitting to certain facts, only to later dispute those facts, is not zealous or strategic advocacy; it is unreasonable litigation conduct.  *See Matthew Bender & Co.*, 240 F.3d at 124 (explaining that fees have been awarded in response to "a party['s] conduct[ing] the litigation in a manner calculated to delay a hearing on the merits and to

increase the opposing party's costs") (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10[D][1]).

Moreover, following summary judgment, Defendants' litigation strategy shifted from legitimately contesting issues of unsettled law to engaging in frivolous and burdensome stall tactics. In addition to their many meritless pleadings, Defendants' discovery requests – made after they had assured the Court that no additional discovery would be necessary – were, as Capitol's counsel charged, "way out of bounds and not connected to" any reasonable dispute between the parties. (Doc. No. 166 at 11.) For example, Defendants sought needlessly detailed information about Plaintiffs' use of the songs in dispute; about every copyright infringement claim brought by Plaintiffs based on the disputed songs; and about the results, including settlement amounts, of every prior claim (Doc. No. 321, Ex. A) – prompting the Court to question whether these requests were "designed to inflict pain on the other side" or "just a fishing expedition [designed] to delay further the litigation." (Doc. No. 166 at 15.) This disruptive and unreasonable litigation conduct also weighs heavily in favor of awarding Plaintiffs those fees incurred after the Court's summary judgment decision.

### c.  Motivation

The nature of ReDigi's infringing conduct – that is, ReDigi's good-faith or bad-faith motivation for such underlying conduct – is also relevant to the Court's fees determination. The Second Circuit has held that awarding attorneys' fees under 17 U.S.C. § 505 may be "justified based on the court's finding of willfulness." *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 43 (S.D.N.Y. 2015) (providing that a finding of "willful infringement supports an award of attorneys' fees to a prevailing plaintiff"). "Willfulness in this context means that the defendant recklessly disregarded

the possibility that its conduct represented infringement." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) (citation and quotation marks omitted).  Moreover, a finding of *bad faith* infringement "weighs heavily in favor of an award of costs and fees."  *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).

This Court is particularly mindful of the Second Circuit's determination, in dicta, that Defendants did not act in bad faith when they infringed on Plaintiffs' copyrights.  The Second Circuit determined that instead of "making efforts in the shadows to infringe on copyrights[,] [Defendants] invented a system designed *in good faith* to achieve a goal generally favored by the law of copyright, reasonably hoping the system would secure court approval as conforming to the demands of the Copyright Act."  *ReDigi*, 910 F.3d at 652 n.3 (emphasis added).  In the Second Circuit's view, Defendants were not blatantly disregarding, but rather attempting in good faith to *legally* circumvent the constraints of the Copyright Act.  Nevertheless, ReDigi did not challenge on appeal this Court's finding that ReDigi was both directly liable as an "active participant[]" in the process of copyright infringement and secondarily liable because it knew or should have known that its service encouraged infringement.  *ReDigi*, 934 F. Supp. 2d at 657–58.  ReDigi's motivation for infringing the Plaintiffs' copyrights is therefore neutral, and it neither heavily favors nor heavily disfavors an award of attorneys' fees under section 505.

### d.  Compensation and Deterrence

Lastly, the Court considers the goals of compensation and deterrence in determining whether to award fees.  *See Fogerty*, 510 U.S. at 534 n.19.  This factor modestly favors a fee award.  True, the import of deterrence is often at its maximum in circumstances of willful infringement – circumstances generally not present here.  *See, e.g.*, *Kepner-Tregoe*, 186 F.3d at 289; *ABKCO Music, Inc. v. Sagan*, 500 F. Supp. 3d 199, 214–15 (S.D.N.Y. 2020); *Earth Flag Ltd. v. Alamo*

*Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001).  Nevertheless, courts in this District have also found the goal of deterrence to be served by awarding fees to merely *successful* plaintiffs – even ones victimized by breaches not found to be *willful* – explaining that such fee awards "may encourage copyright holders whose rights are infringed to vindicate meritorious claims." *Beastie Boys*, 112 F. Supp. 3d at 45; *see also Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008) ("An award of attorney's fees will encourage plaintiffs to litigate meritorious claims of copyright infringement.").  Nor is it relevant that Capitol is a profitable and established company, while ReDigi was an upstart challenger.  "[I]n determining whether to award attorney's fees under § 505, the district court should consider not whether the losing party can afford to pay the fees but whether imposition of fees will further the goals of the Copyright Act." *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 843 (11th Cir. 1999).  Here, a fee award would serve the purposes of the Copyright Act by compensating Plaintiffs for litigating a meritorious claim in defense of their copyrights. *See Porto v. Guirgis*, 659 F. Supp. 2d 597, 618 (S.D.N.Y. 2009) ("The primary purpose of the Copyright Act is to 'encourage the origination of creative works by attaching enforceable property rights to them.'") (quoting *Matthew Bender & Co.*, 240 F.3d at 122).

Furthermore, this factor encompasses not only the goal of deterring infringing behavior, but also that of deterring wrongful litigation tactics. *Cf. Arista Records, LLC v. Launch Media, Inc.*, 344 F. App'x 648, 651 (2d Cir. 2009) (explaining that no litigation conduct in that case was flagrant enough that it "would merit deterrence").  Indeed, "the interests of compensation and deterrence[]" support "making a party bear the expenses generated by its unreasonable litigation tactics." *Beastie Boys*, 112 F. Supp. 3d at 45.  Though not all of Defendants' tactics and litigating positions were unreasonable, the Court has identified several swathes of the litigation in which

Defendants engaged in serious misconduct, unreasonably delaying resolution of the case even when Plaintiffs' ultimate triumph had become a forgone conclusion. "[A]n award of attorneys' fees to Plaintiff[s] would rightly compensate Plaintiff[s] for having to litigate a case that Defendant[s] made needlessly complicated." *Crown Awards*, 564 F. Supp. 2d at 295.

Accordingly, the Court finds that this factor at least modestly favors an award of attorneys' fees.

\* \* \*

Two of the governing factors (objective reasonableness and litigation misconduct) strongly support awarding fees; one factor (compensation and deterrence) modestly supports awarding fees; and one factor (motivation) is neutral. Considering the foregoing analysis and all of the factors set forth above in light of "the purposes of the Copyright Act," *Matthew Bender & Co.*, 240 F.3d at 121 (quoting *Fogerty*, 510 U.S. at 534 n.19), the Court concludes that an award of attorneys' fees is proper with respect to a portion of the summary judgment proceedings and all post-summary-judgment proceedings in this Court.[3]

With respect to the factual assertions about its technology that ReDigi made in its summary judgment briefing, the Court notes that Capitol devoted significant resources to establish that the "migration" ReDigi described is merely copying, that it too violates the Copyright Act, that it is not an accurate description of ReDigi's technology, and that in any event ReDigi was bound by its judicial admissions of copying. In making these arguments, Capitol devoted: (1) five pages of a twenty-three-page memorandum supporting its own motion for summary judgment (Doc. No. 49 at 5–10), (2) six pages of a ten-page reply memorandum supporting its motion for summary

---

[3] This conclusion is especially appropriate because of the importance the Supreme Court and the Second Circuit place upon the objective reasonableness factor. *See, e.g.*, *Kirtsaeng*, 579 U.S. at 199–200; *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014); *Matthew Bender & Co.*, 240 F.3d at 122.

judgment (Doc. No. 87 at 1–6), (3) eight pages of a twenty-four-page memorandum opposing ReDigi's motion for summary judgment (Doc. No. 76 at 3–11), and (4) approximately three pages aggregated from various portions of Capitol's twenty-three-page counterstatement of facts following ReDigi's Rule 56.1 statement (Doc. No. 78 at 4–10).  Capitol also engaged an expert, Doug Jacobson, to refute ReDigi's theory of "data migration."  (*See* Doc. No. 75.)  And, unsurprisingly, given the importance of these issues in the parties' briefing, they featured heavily at the oral argument the Court conducted on the parties' cross-motions for summary judgment. (*See generally* Doc. No. 107 (hearing transcript).)

Accordingly, using the above-cited figures as a guide, the Court shall award Capitol: (1) twenty-two percent of the fees incurred in connection with its memorandum of law in support of its motion for summary judgment (Doc. No. 49), (2) sixty percent of the fees incurred in connection with its reply memorandum supporting summary judgment (Doc. No. 87), (3) thirty-three percent of the fees incurred in connection with its opposition to ReDigi's motion to summary judgment (Doc. No. 76), (4) thirteen percent of the fees incurred in connection with its counterstatement of facts (Doc. No. 78), (5) the entirety of the costs associated with engaging Doug Jacobson to refute ReDigi's data migration theory, and (6) twenty-five percent of the fees incurred in preparing for and conducting oral argument before the Court on the parties' summary judgment motions.  Recognizing that it is often impossible to calculate fee awards with surgical precision, the Court concludes that this represents a fair and equitable award under the circumstances.  *See Fogerty*, 510 U.S. at 534 ("'There is no precise rule or formula for making these [fees] determinations,' but instead equitable discretion should be exercised 'in light of the' [factors the Supreme Court identified.]) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)).

**B. Attorneys' Fees on Appeal**

The Court also grants in part Plaintiffs' request for attorneys' fees incurred during Defendants' unsuccessful appeal.  In particular, it grants the motion insofar as Defendants continued to press on appeal factual representations at odds with its admissions before this Court. For the reasons described above, Plaintiffs are entitled to fees because of Defendants' obstinate contradictions of their prior admissions, including on appeal.  *See Motors Liquidation Co.*, 957 F.3d at 360 (explaining that "[a] judicial admission . . . binds the party making it *throughout the course of the proceeding*") (emphasis added).  Because Defendants refused to abide by their judicial admission on appeal, Plaintiffs again had to devote substantial resources to arguing that ReDigi's system did not work as Defendants claimed it did, that it was unlawful copying regardless, and that they were bound in any event by their prior admissions of copying.  *See* 2d Cir. No. 16-2321, Doc. No. 190 at 11, 15, 27–32.  Although only approximately six pages of Plaintiffs' sixty-page appellate brief were devoted directly to these factual contentions, the Court recognizes that, naturally, the facts underpin every aspect of a case, including the legal contentions that can be put forth.  Accordingly, the Court shall award Plaintiffs' fifteen percent of the fees they reasonably incurred defending against Defendants' appeal.

With respect to the remainder of Defendants' legal arguments, however, the Court declines to award appellate fees to Plaintiffs.  As discussed above, where parties litigate complex legal issues that are not yet resolved by binding precedent, and do so in apparent good faith, courts in this Circuit regularly deny attorneys' fees.  *See, e.g., Psihoyos*, 2013 WL 1285153, at *3; *see also Insurent Agency Co.*, 2020 WL 86813, at *5; *Effie Film*, 2013 WL 1759560, at *2; *Bourne Co.*, 1994 WL 263482, at *2.  In this case, Defendants were entitled to appeal an adverse ruling on a novel question of copyright law.  On appeal, Defendants litigated the precise issues addressed by

this Court's summary judgment opinion, namely, whether Defendants' conduct was protected under the first sale doctrine or as fair use.  Defendants' positions on this narrow set of legal issues, while ultimately rejected by the Second Circuit, were nevertheless not so "patently devoid of legal or factual basis" as to be objectively unreasonable.  *Muller*, 2011 WL 3678712, at *1 (citation omitted).  The Second Circuit concluded that ReDigi's underlying conduct was in good faith and that ReDigi was "reasonably hoping [its] system would secure court approval as conforming to the demands of the Copyright Act."  *ReDigi*, 910 F.3d at 652 n.3.  Moreover, the Second Circuit recognized that Defendants' arguments raised timely and difficult policy concerns about the scope of American copyright law – arguments that were echoed in several briefs filed by *amici curiae*. *Id.* at 663–64.  Finally, unlike Defendants' post-summary-judgment litigation before this Court, there is no indication that Defendants engaged in any dilatory tactics before the Second Circuit.

In light of these considerations, the Court concludes that an additional award for attorneys' fees incurred on appeal is warranted only with respect to Defendants' continued factual assertions that contradicted their prior admissions in this Court.

### III.  Reasonableness of Attorneys' Fees

A court's determination that an award of fees is warranted does not end the inquiry.  The court must then assess the prevailing party's requested fees to ensure that they are reasonable.  *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 150 (2d Cir. 2001).  Because Plaintiffs have not provided the Court with adequate documentation to make a reasonableness assessment, the Court reserves final determination of the appropriate fee amount until after it has had an opportunity to review Plaintiffs' itemized time sheets.

In this Circuit, courts calculate a reasonable fee "by determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Id.* at 146 n.3

(citation and quotation marks omitted).  This inquiry "boils down to [asking] what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and quotation marks omitted).  "In making this [determination], the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

In accordance with the parties' Stipulated Final Judgment (Doc. No. 222 at 4), Plaintiffs seek attorneys' fees of $500,000 – the stipulated cap – in connection with proceedings before this Court.  (Doc. No. 319.)  Plaintiffs claim that this amount constitutes less than half of the actual fees expended during the district court proceedings and have agreed to submit more comprehensive documentation should the Court grant their motion for fees.  Plaintiffs are now instructed to submit such records in accordance with the Court's description of how it shall award fees in connection with the summary judgment briefing, as well as for all litigation – both in this Court and on appeal – after the entry of partial summary judgment.  The Court reserves decision on the reasonableness of the total amount of those fees until reviewing contemporaneous records.  *See, e.g., Charles v. Seinfeld*, No. 18-cv-1196 (AJN), 2021 WL 761851, at *5 (S.D.N.Y. Feb. 26, 2021) (deferring consideration of the *amount* of fees to award until the Court could discharge its "independent obligation to conduct a conscientious and detailed inquiry into the reasonableness of a fee award") (quotation marks omitted).

**IV.  Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiffs' motion for attorneys' fees is GRANTED IN PART.   Defendants shall pay attorneys' fees for certain proceedings before this Court in connection with the parties' cross-motions for summary judgment, for fees incurred after the Court's March 30, 2013 summary judgment opinion, and for fifteen percent of Plaintiffs' fees incurred on appeal.  Plaintiffs shall submit a detailed accounting of those fees by May 6, 2022, and Defendants may submit a response by June 6, 2022.  The Court reserves decision on the reasonableness of the total fee amount, pending receipt of those contemporaneous time records.  The Clerk of Court is respectfully directed to terminate the pending motion for attorneys' fees at Doc. No. 319.


SO ORDERED.

Dated:      April 7, 2022
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation